UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| ANNIE OAKLEY ENTERPRISES INC., et al., Plaintiffs, v. AMAZON.COM, INC., Defendant. | ) ) ) ) ) ) ) ) ) ) | No. 1:19-cv-01732-JMS-MJD |

**REPORT AND RECOMMENDATION**

This matter is before the Court on the motion for sanctions filed by Defendant Amazon.com, Inc. ("Amazon"). [Dkt. 160.] On March 8, 2021, District Judge Jane Magnus-Stinson designated the undersigned Magistrate Judge to issue a report and recommendation regarding the disposition of the motion pursuant to 28 U.S.C. § 636(b)(1)(B). [Dkt. 220.] The Magistrate Judge recommends that Amazon's motion be **GRANTED** to the extent and for the reasons set forth below.

## I. Background

Plaintiff Renee Gabet is the owner of United States Trademark Registration No. 2,549,750 in connection with perfumes, body oils, room fragrances and essential oils for personal use and Trademark Registration No. 3,990,283 in connection with shampoos, hair conditioners, body soaps, and body powders. The registered mark, "RISE 'N SHINE," is used on products sold by Plaintiff Annie Oakley Enterprises, Inc., ("Annie Oakley") which is owned by

Gabet. Plaintiffs allege in their Amended Complaint that Defendants Rise N Shine Online, LLC, ("RNSO") and Eric Young sold products on Amazon's website and elsewhere that infringed upon the trademarks owned by Plaintiffs.[1] [Dkt. 12.]

In May 2020, Plaintiffs settled their claims against RNSO and those parties stipulated to the entry of a final judgment as to one claim and entry of a permanent injunction against RNSO, which the Court entered. [Dkt. 61.] The claims against Eric Young and the remaining claims against RNSO were then dismissed with prejudice pursuant to Federal Rule of Procedure 41(a)(2). [Dkt. 64.] The claims against Amazon remain.

On August 7, 2020, the undersigned granted Amazon's motion to compel with regard to Amazon's Interrogatory No. 6. [Dkt. 97.] The Interrogatory sought "plaintiffs' revenues on a quarterly basis for each of Plaintiffs' Products since July 1, 2012." [Dkt. 77-2 at 7.] Plaintiffs lodged various objections to the interrogatory, which the undersigned overruled. Plaintiffs also asserted that they were unable to respond to the interrogatory because they

> [do] not know and cannot calculate its revenues on a quarterly basis for each of Plaintiffs [sic] Products since July 1, 2012. . . . Plaintiffs do not track revenues by Product, and have changed accounting systems during the timeframe specified in the interrogatory.

[Dkt. 77-9 at 9-10.] However, the undersigned held as follows:

> Plaintiffs have alleged lost sales in this case, so they must have a factual basis for that allegation. There is no way for Plaintiffs to demonstrate that they have lost sales for their products if they do not know what their sales of the products at issue actually were. Amazon is entitled to the information that Plaintiffs have regarding those sales.

[1] The term "Plaintiffs" is used to refer to one or both of the Plaintiffs throughout this Order, except in those instances in which the distinction between them is relevant.

[Dkt. 97 at 6.] Accordingly, the undersigned ordered Plaintiffs to provide a complete and unequivocal response to Interrogatory No. 6 within fourteen days of the date of the Order.

Fourteen days later, on August 21, 2020, Plaintiffs served a supplemental response to Interrogatory No. 6, which stated:

> Plaintiffs are not seeking to recover monetary damages comprising lost profits from lost sales, though they do seek to recover the profits of the infringers. Notwithstanding this, Plaintiffs believe that customers who purchased infringing products from Amazon may provide evidence of confusion and/or lost sales by Plaintiffs. Discovery on that issue is proceeding.
>
> Plaintiffs reiterate that they do not know and cannot calculate their revenues on a quarterly basis for each of Plaintiffs' Products since July 1, 2012. However, this does not preclude Plaintiffs from establishing lost sales, and a lost sale has nothing to do with the amount of Plaintiffs' sales. For example, if a customer admits that it did not purchase a product from Plaintiff due to Amazon's infringement, that admission would be evidence of a lost sale, regardless of what Plaintiffs' sales were.
>
> Subject to the foregoing, Plaintiffs state that documents Plaintiffs are able to produce regarding their revenues would include revenues from Plaintiffs' Products (as defined in the interrogatories).

[Dkt. 190-2 at 6.] Along with the supplemental response, Plaintiffs served 2,632 pages of documents, which Plaintiffs describe as follows:

> Of those pages 1,051 comprised invoices, profit & loss statements, tax returns, sales documents, and dealer lists. Specifically, AO-RSOnline 953-1047 (94 pages) comprised Plaintiff's tax returns; AORSOnline 1172-2117 (945 pages) comprised invoices, sales documents, and dealer lists; and AO-RSOnline 3523-3535 (12 pages) comprised profit & loss statements.

[Dkt. 190-10 at 1.]

In addition to this supplemental response, Plaintiffs filed a timely objection to the undersigned's ruling. [Dkt. 108.] Judge Magnus-Stinson overruled the objection on November 12, 2020. [Dkt. 138.] Judge Magnus-Stinson noted that the undersigned had rejected Plaintiffs' assertion that they "do not have and cannot calculate quarterly revenue figures by product" as

"inconsistent with Plaintiffs' position in this lawsuit that Amazon's sale of allegedly infringing products has resulted in lost sales for Plaintiffs" and found that that conclusion was "certainly not clearly erroneous." *Id.* at 9-10. Judge Magnus-Stinson explained:

> Plaintiffs explicitly allege that, as a result of Amazon's actions, they have "sustained damage to their reputation, goodwill, and *sales*, in an amount to be proven at trial." [Filing No. 12 at 15 (emphasis added).] Although a customer's purchase of a product from Amazon may correspond with the customer's decision not to purchase the same product from Plaintiffs, and therefore amount to a lost sale for Plaintiffs, there is no dispute that both Amazon's potential increase in revenues and Plaintiffs' potential loss of revenues are relevant to determining the extent to which Plaintiffs were damaged by Amazon's alleged infringement. *See, e.g.*, *Coach, Inc. v. Treasure Box, Inc.*, 2014 WL 888902, at *3 (N.D. Ind. Mar. 6, 2014) (stating that factors to be considered in determining the amount of damages awarded include "the profits reaped by the infringer" and "the revenues lost by the plaintiff").
>
> The Court acknowledges that Plaintiffs may not track revenues by product on a quarterly basis in the ordinary course of their record keeping. But Plaintiffs have not demonstrated that they do not possess or maintain any data concerning the sales of their products from which the requested revenues can be calculated. Indeed, Plaintiffs represented in their response in opposition to Amazon's motion to compel that "Amazon can obtain information regarding [Plaintiffs'] sales through deposition testimony." [Filing No. 79 at 4.] The only logical inference that can be drawn from this statement is that the relevant sales data exists, because if it did not exist Amazon could not obtain it through deposition testimony. Apart from this statement, any argument that a business does not maintain records concerning how many of its products are sold, at what prices, and when is entirely implausible on its face.

[Dkt. 138 at 10.]

Plaintiffs have not further supplemented their response to Interrogatory No. 6 since Judge Magnus-Stinson's order.

## II. Discussion

In the instant motion, Amazon asks the Court to dismiss this case as a sanction for Plaintiffs' failure to produce the information sought by Interrogatory No. 6 despite being ordered to do so by the Court. Alternatively, they ask for "dismissal of plaintiffs' claims for damages,

including Amazon's profits." [Dkt. 161 at 19.] In response, Plaintiffs assert that their response to Interrogatory No. 6 is complete and truthful because they do not, in fact, have information from which they could calculate their revenues for each of their products.

**A. Failure to Comply with the Court's Order with Regard to Interrogatory No. 6**

It is axiomatic that "[t]he Court cannot compel a party to disclose that which it does not have," *Slabaugh v. LG Elecs. U.S.A., Inc.*, 2015 WL 420012, at *3 (S.D. Ind. Jan. 30, 2015), and, of course, a party cannot be sanctioned for not disclosing what it does not have. Ordinarily, when, as here, a party's claim that it does not have responsive information seems "entirely implausible on its face," the next step is for the opposing party to conduct "discovery about discovery" in order to fully examine the implausible position. Sometimes, of course, this discovery reveals that the implausible is true; other times, it reveals that a party failed to take reasonable steps to search for responsive information or that the party or its counsel attempted to be too clever by half by, for example, taking an unreasonably narrow view of the discovery requests. To some degree, all of these appear to be true in this case.

Defendant had the opportunity to conduct discovery about discovery when it took the combined deposition of Gabet and Annie Oakley on September 11, 2020. One of the topics listed for Annie Oakley's deposition was "Plaintiffs' discovery responses." [Dkt. 190-1 at 3.] From the deposition excerpts provided to the Court,[2] it appears that Defendant touched on the subject of to what extent Plaintiffs tracked the sales of their products, but did not delve into the topic in any detail.

---

[2] Plaintiffs filed excerpts of the deposition along with their response brief. Because Defendant did not provide any additional excerpts with its reply brief, the Court assumes that the excerpts provided by Plaintiffs contain the relevant testimony.

Plaintiffs sell their products to customers in their studio in Ligonier, Indiana, and online through their website. They also make wholesale sales to dealers. With regard to sales in the studio, Defendant elicited the following testimony from Plaintiffs:

> A: [P]rior to last year, we did not have a point of sale [system]. We just did it the old fashioned way.
>
> Q: What does that mean?
>
> A: Just a register, and it would add up the receipts and make the—pay the credit card. Actually, we would do that manually, and we would just give them a receipt of what they bought.
>
> Q: Would the receipt list the particular products that were purchased?
>
> A: No.

[Dkt. 190-6 at 4.] With regard to inventory tracking, Defendant elicited the following testimony from Plaintiffs:

> Q: But when you generate products through production, you don't have a system that says now 20 of these products exist?
>
> A: No.
>
> Q: You've never had that system, never had a system like that?
>
> A: No. We tried it, and it never worked.
>
> Q: Why is that?
>
> A: It just—the system that we had did not accommodate it.
>
> Q: Okay.
>
> A: It was never correct. It was always incorrect.
>
> Q: During what periods of time did you try and utilize an inventory system like that?
>
> A: And gave up? Well, I would say probably back in the 2000 time.
>
> Q: And when did you give up?

A: Probably within a year. It's like I spent more time trying to—year, it just didn't work. It didn't work. It's much easier to do it the old-fashioned way. You get an accurate—yeah.

Q: Were you going to add something?

A: No.

Q: When you do a hand count, do you generate records?

A: Like an inventory on hand?

Q: Yes.

A: Just on my—no, I don't generate records. I do a hand count to make purchases for raw materials and when it's done, it's done.

*Id.* at 6.

Plaintiffs provided the following additional information in a declaration from Gabet that they submitted with their response to the instant motion:

- Prior to 2017, Plaintiffs had no point of sale system in their studio. As described in the deposition testimony, Plaintiffs kept no record of what products were sold in the studio during that time.
- At some unspecified time in 2017, Plaintiffs began using a point of sale ("POS System") for their studio sales. The POS System allows for tracking of sales by bar codes. Over a period of months after getting the POS System, Plaintiffs entered the bar codes for some of its products into the system. However, not all of Plaintiffs' products have bar codes, and many of their RISE N SHINE branded products do not.[3] When a product without a

[3] Plaintiffs explain: "Over a period of months after getting the 2017 POS System, we began entering the bar codes that we had into the System [f]or RISE N SHINE branded products to which we assigned bar codes, mainly essential oils. None of our RISE N SHINE branded bath

bar code is sold, it is rung up as a "misc" or "spa" product item. For those bar-coded products that were sold after the bar code was entered into the POS System, it is possible to generate a report showing those sales.

- Prior to July 1, 2019, Annie Oakley used the SBT bookkeeping system ("SBT System") for its wholesale sales to dealers. The SBT System allowed an item number to be associated with a product. Only the most popular versions of RISE N SHINE products were assigned item numbers. The SBT System would generate invoices for each sale, but in the ordinary course of business Annie Oakley would only keep paper copies of the invoices until they were paid by the customer. Annie Oakley never generated reports listing sales of RISE N SHINE branded products in the ordinary course of business.
- Annie Oakley kept a paper copy of one particular invoice: The invoice dated October 6, 2000, showing a sale to Priscilla's that Amazon has pointed to as evidence that Plaintiffs generated such invoices. Plaintiffs kept that invoice in their trademark files, not their bookkeeping files,[4] because the invoice "documented an early interstate sale of a RISE N SHINE product."

---

and beauty products like shampoo, conditioner, lotion, soap, bath salts and the like have bar codes. This is because we have been too busy to put bar codes on all products and have had more important things to do." [Dkt. 190-7 at 2.]

[4] Amazon correctly notes that "[w]hen asked about this specific document in deposition, Annie Oakley's corporate representative did not recall when or why this invoice was printed and never represented that it was maintained in a 'trademark file' or was printed for the purpose of authenticating the first sale of a Rise 'N Shine-branded product." [Dkt. 206 at 10.] However, the deposition testimony in question indicates that the invoice was something that was used in a prior trademark case, not something that was printed for the purpose of the instant case. Thus, Amazon's argument that Gabet's declaration "directly contradicts" her deposition testimony on this issue, [Dkt. 206 at 10], is inaccurate.

- Beginning in 2016, Plaintiffs began to have problems with the SBT System, which was generating inaccurate information. Plaintiffs stopped using the SBT System as of June 30, 2019. During the course of discovery in this case, Plaintiffs accessed the SBT System "and tried to generate whatever reports it could generate about revenues from RISE N SHINE branded products" but "was not able to generate reports showing all sales of RISE N SHINE branded products." Plaintiffs' outside IT consultant was able to use the SBT System to generate reports that "showed sales from a subset of the RISE N SHINE branded products sold by [Annie Oakley] and that were sold to a subset of [Annie Oakley's] customers." Plaintiffs produced this information to Amazon.
- Beginning on July 1, 2019, Annie Oakley used a QuickBooks bookkeeping system for its dealer sales. Historical sales information from the SBT System was not transferred to QuickBooks because the SBT System was corrupt.[5] As with the SBT System, only some RISE N SHINE branded products were entered into the QuickBooks system.
- Finally, with regard to its website sales, Annie Oakley used a system called "Storefront Solutions" provided by a company called Dyda starting in the mid-2000s. In early 2018, Annie Oakley was informed that Storefront Solutions was being discontinued. As a result, on February 26, 2018, Annie Oakley switched to a system called aspdotnet storefront, which was provide by a company called Vortex, for its website and internet

---

[5] In their reply brief, Amazon argues that Gabet's declaration establishes that Plaintiffs spoliated evidence in July 2019, after this case was filed, the Plaintiffs "destroyed years of data from their bookkeeping software." [Dkt. 206 at 9.] The issue of whether Amazon is entitled to an adverse inference because of spoliation of evidence has been raised by Amazon in its summary judgment briefs and is not addressed herein.

sales. It took several months for Annie Oakley to get all of the RISE N SHINE products that it wanted to offer for internet sales loaded onto the website.

- Annie Oakley has produced reports it has obtained in August 2020 showing all of the records of sales of RISE N SHINE products made via the aspdotnet storefront.
- Annie Oakley was unable to have its historical data from Dyda transferred to the aspdotnet storefront system. In 2020, during the course of discovery, Annie Oakley attempted unsuccessfully to contact Dyda to obtain its information. Annie Oakley believes Dyda is now defunct.

[Dkt. 190-7.]

Thus, it appears that Plaintiffs' assertion that they cannot calculate their revenues on a quarterly basis for each of the relevant products since July 1, 2012, is literally true. Because of the manner in which Plaintiffs kept their records in the ordinary course of their business, Plaintiffs do not have, and have never had, sales information for each of their products. But it is equally clear that they have had some revenue information about some of their products for at least some periods of time. Plaintiffs were obligated to produce that information in response to Interrogatory No. 6. They did not do so, and, in fact, still have not done so. They did produce certain reports and other documents that contain responsive information, and the undersigned is satisfied by their explanation of why they do not have additional responsive information. However, they have not even attempted to demonstrate that the document production satisfied their obligation to respond to the interrogatory. *See* Fed. R. Civ. P. 33(d) (party producing business records in response to an interrogatory must show that "the burden of deriving or ascertaining the answer will be substantially the same for either party"); [Dkt. 138 at 11 n.2] (Judge Magnus-Stinson noting "Plaintiffs have not attempted to invoke [Rule 33(d)] or to make

the necessary showing under that Rule.").[6] Therefore, Plaintiffs have failed to comply with the Court's order to provide a complete and unequivocal response to Interrogatory No. 6.

**B. Appropriate Sanction**

Federal Rule of Civil Procedure 37(b)(2) provides that where, as here, a party fails to obey a discovery order, the court "may issue further just orders" that "may include the following":

> (i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;
>
> (ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;
>
> (iii) striking pleadings in whole or in part;
>
> (iv) staying further proceedings until the order is obeyed;
>
> (v) dismissing the action or proceeding in whole or in part;
>
> (vi) rendering a default judgment against the disobedient party; or
>
> (vii) treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination.

The rule makes the issuance of sanctions permissive, rather than mandatory, and "[d]istrict courts have broad discretion in supervising discovery, including deciding whether and how to sanction such misconduct, for they are much closer to the management of the case and the host of intangible and equitable factors that may be relevant in exercising such discretion." *Hunt v.*

---

[6] In fact, it does not appear that Amazon is able to obtain all of the relevant information from the documents that Plaintiffs could. For example, as Amazon points out, one of the invoices lists the item number sold as "GWPRS," [Dkt. 206 at 8]; presumably, Plaintiffs know which product that code refers to, while Amazon does not.

*DaVita, Inc.*, 680 F.3d 775, 780 (7th Cir. 2012) (citing *Park v. City of Chicago*, 297 F.3d 606, 614 (7th Cir. 2002) (finding no abuse of discretion in choice not to impose sanction for discovery failure); *Melendez v. Illinois Bell Telephone Co.*, 79 F.3d 661, 670-71 (7th Cir. 1996) (finding no abuse of discretion in choice to impose sanction for discovery failure)).

In this case, Amazon seeks the sanction of dismissal. Dismissal as a sanction pursuant to Rule 37(b)(2) is appropriate only if the court finds that a party's failure to comply with a discovery order was due to "willfulness, bad faith, or any fault." *Ramirez v. T&H Lemont, Inc.*, 845 F.3d 772, 776 (7th Cir. 2016) (citing *Societe Internationale pour Participations Industrielles et Commerciales, S.A. v. Rogers*, 357 U.S. 197, 212 (1958)). "Fault" in this context "does not require a showing of intent, but presumes that the sanctioned party was guilty of 'extraordinarily poor judgment' or 'gross negligence' rather than mere 'mistake or carelessness.'" *Id.* (citations omitted). In addition, "[a]part from the discovery rule, a court has the inherent authority to manage judicial proceedings and to regulate the conduct of those appearing before it, and pursuant to that authority may impose appropriate sanctions to penalize and discourage misconduct" if the court finds that a party "abused the judicial process or otherwise conducted the litigation in bad faith." *Id.*

The undersigned does not find that Plaintiffs' failure with regard to Interrogatory No. 6 warrants dismissal. When ordered to do so by the undersigned, Plaintiffs provided a supplemental response that expressly eliminated any claim for lost profits and provided the responsive information that they had, albeit not in the form of a proper interrogatory answer, even while pursuing their objection to the undersigned's order. While it certainly would have been preferable for Plaintiffs to provide a complete explanation of why they lacked additional responsive information along with their supplemental response, Plaintiffs have done so now, and

presumably would have done so during their deposition if Amazon had pursued that line of questioning.

Amazon argues that it has been prejudiced by Plaintiffs' failure to comply with the Court's order because it "does not know what plaintiffs contend are their own revenues for their own products bearing their trademarks at issue in this case." [Dkt. 161 at 16.] But even if Plaintiffs had fully complied with the Court's order, Amazon still would not know what those revenues are, because Plaintiffs simply do not have more than the small subsets of revenue information that they have provided. The prejudice described by Amazon in its brief, *see* [Dkt. 161 at 16-18], is not the result of Plaintiffs' discovery violation, but rather was caused by the manner in which Plaintiffs operated their business.

Amazon also argues that the Court should consider certain other instances of what it terms bad faith by the Plaintiffs during the course of this litigation, because it is appropriate for the Court to "weigh not only the straw that finally broke the camel's back, but all the straws that the recalcitrant party piled on over the course of the lawsuit" in determining the proper sanction for a discovery violation. *e360 Insight, Inc. v. Spamhaus Project*, 658 F.3d 637, 643 (7th Cir. 2011).

First, Amazon points out that Amazon fully prevailed on both its own motion to compel, [Dkt. 97 and Dkt. 138], and Plaintiffs' motion to compel [Dkt. 96; Dkt. 130; Dkt. 138.] The undersigned also ruled in Amazon's favor with regard to Plaintiffs' objection to the deposition of Eric Young, [Dkt. 177]; Plaintiffs' objection to that ruling remains pending before Judge Magnus-Stinson. [Dkt. 200.] Amazon also argues that Plaintiffs "improperly withheld their settlement agreement with the initial RNSO defendants in this lawsuit" and that Plaintiffs' "attempts to keep the settlement agreement from Amazon was willful and exhibited reckless

disregard for Amazon's rights to discovery in this case." [Dkt. 161 at 23.] But the cases cited by Amazon involve witness tampering, *Ramirez*, 845 F.3d 772, and lying and otherwise hiding relevant evidence, *Negrete v. Nat'l R.R. Passenger Corp.*, 547 F.3d 721 (7th Cir. 2008). Plaintiffs here did not attempt to hide evidence—clearly Amazon knew of the existence of the settlement agreement—they simply attempted, unsuccessfully, to convince the Court that it should not have to produce the agreement to Amazon. Federal Rule of Civil Procedure 37(a)(5) provides for an award of attorney's fees against a party who takes positions that are not substantially justified in a discovery motion, and Amazon has filed an appropriate motion seeking such an award in this case. However, the positions taken by Plaintiffs in the discovery disputes in question do not provide support for the sanctions sought by Amazon in the instant motion. There is a difference between losing discovery motions and misconduct.

The final instance of alleged bad faith pointed to by Amazon involves the stipulated final judgment submitted by Plaintiffs and RNSO to the Court as part of their settlement. [Dkt. 60.] That submission, which was entered by the Court on May 21, 2020, [Dkt. 61], contained the following findings of fact:

> Plaintiffs uses [sic] the advertising ideas of using the words "rise" and "shine" in URLs and social media account names and advertisements, such that persons who search the internet using the terms "rise" and "shine" can be directed to Plaintiffs' webpages to learn more information about engagin [sic] in life fulfilling activities including but not limited to those that may involve Plaintiffs' products, and to using the words "rise" and "shine," or variants thereof such as "rise n shine" or "rise-n-shine" in advertisements.
>
> Defendant Rise N Shine Online LLC has used Plaintiffs' advertising ideas, including Plaintiffs' advertising ideas described above, in defendant Rise N Shine Online LLC's advertisements, including but not limited to URLs, social media account names, webpages for products and on product labels. Those URLs and social media account names have been broadcast to the general public for the first time sometime after April 1, 2019, and were for the purpose of attracting customers, and in fact, did attract customers for Rise N Shine Online LLC.

[Dkt. 61 at 2.] Amazon asserts that, in fact, RNSO had used the website www.risenshineonline.com as early as August 2016 and that Plaintiffs were aware of that fact when they filed the stipulated final judgment.[7] Amazon asserts that the likely explanation for this false statement appearing in the stipulated final judgment is that Plaintiffs wish to use that statement in support of their claim that their judgment against RNSO is a covered advertising injury under an insurance policy purchased by RNSO on March 20, 2019.

Amazon cites to no authority for the proposition that it is improper for parties to stipulate to inaccurate facts in an agreed judgment. In order for the inclusion of a false statement to constitute an attempt to defraud the Court, as Amazon asserts in its reply brief, the statement would have to be material to an issue to be decided by the Court. In this case, it clearly was not. The Court was not misled by the false statement; the Court simply performed the ministerial act of entering the judgment stipulated to by the parties. If Plaintiffs were to represent otherwise in a future suit over insurance coverage, that could constitute fraud on the court in that case, but in any event the judgment and the statements of fact therein are binding only on the parties who agreed to it; those parties might be bound by the statements of fact therein in this or another proceeding, but those factual stipulations are not binding on anyone else. Accordingly, Amazon's assertions regarding the agreed judgment do not bolster their claim that the severe sanctions they seek are appropriate.

---

[7] For purposes of this Order, the undersigned will assume that both of these assertions are true, but notes that "Annie Oakley vigorously denies that it submitted false statements to the Court in a joint stipulation for connection with the settlement." [Dkt. 189 at 12.]

The undersigned finds that the appropriate sanction for Plaintiffs' failure to properly respond to Interrogatory No. 6 after being ordered to do so by the Court is to bar Plaintiffs from seeking actual damages of any kind in this case. Plaintiffs have affirmatively stated that they are not seeking to recover "monetary damages comprising lost profits from lost sales"; to the extent that they intended to seek any other form of actual damages, they may not do so.[8] In addition, Plaintiffs should also be barred from introducing any evidence, testimony, or argument regarding their own revenues or the quantity of their own sales. Amazon argues that Plaintiffs' revenues are relevant to issues other than a claim for actual damages. For example, Amazon cites *Sorensen v. WD-40 Co.*, 792 F.3d 712, 731 (7th Cir. 2015), for the proposition that Plaintiffs' "revenues are also relevant to the strength of the claimed trademarks, and thus whether the accused products were likely to confuse consumers into believing they were purchasing Annie Oakley products." [Dkt. 161 at 16.] In fact, the Court in *Sorensen* noted that the plaintiff in that case had not offered "sales data showing that products bearing the mark are so widely sold that a jury could infer that many consumers are aware of the mark" or otherwise offered evidence demonstrating the strength of his mark. Because Plaintiffs have failed to properly provide their revenues data in discovery—in part because they do not have it, and in part because they failed to use the information they do have to craft an appropriate interrogatory response—they will not be permitted to use any such data at trial. Amazon is not required to prove the absence of significant revenues by Plaintiffs, and Plaintiffs will not be able to present evidence about their own revenues.

---

[8] This bar does not preclude Plaintiffs from seeking the equitable remedy of disgorgement of Amazon's profits.

The undersigned further finds that Amazon should be permitted to recover its attorney's fees for the briefing of the instant motion. This is appropriate because Plaintiffs failed to provide a viable explanation for their assertion that they could not provide a compete response to the interrogatory until their response to the instant motion. In addition, if Amazon can reasonably document the time its counsel spent analyzing the documents provided by Plaintiffs along with their supplemental response—work that Plaintiffs should have done as part of their interrogatory response—Amazon will be permitted to recover for that as well.

**C. Counsel's Frivolous Argument**

One additional issue must be addressed. In moving for an extension of time to respond to the instant motion, Plaintiffs argued the following: "Amazon's Motion for Sanctions is a dispositive motion as it seeks dismissal. However, it was filed long after Amazon's dispositive motion deadline, and should be stricken." [Dkt. 165 at 2-3.] In ruling on that motion, the undersigned noted "that Plaintiffs' suggestion that Defendant's motion for sanctions should be stricken because it seeks the sanction of dismissal but was filed after the dispositive motion deadline is utterly without merit, and Plaintiffs' counsel is reminded that making frivolous arguments may subject him to sanctions pursuant to 28 U.S.C. § 1927." [Dkt. 169.]

Unfortunately, Plaintiffs did not heed the undersigned warning. In their response to the instant motion, Plaintiffs advance the same frivolous argument. Plaintiffs argue that Amazon's motion was untimely because it was filed after the deadline for dispositive motions and "[t]he sole relief sought by its *Motion of Sanctions* is that 'this case be dismissed with prejudice' [which] . . . makes it a dispositive motion." [Dkt. 189 at 14-15.] While Amazon does seek dismissal, in fact, as noted above, Amazon also seeks alternative relief of "dismiss[al of] plaintiffs' damages claims, including the claim for Amazon's profits." [Dkt. 160 at 2.] Even if it

had only sought dismissal of the case, however, the sanctions motion would not have been subject to the dispositive motion deadline, which clearly applies only to motions seeking to dispose of some or all of the case on the merits. The undersigned recommends that, pursuant to 28 U.S.C. § 1927, Plaintiffs' counsel, Paul Overhauser, be required to personally pay that portion of any attorney's fees award that can be attributed to responding to this frivolous argument, which counsel advanced after being admonished not to do so.

## III. Conclusion

For the reasons and to the extent set forth above, the undersigned recommends that Amazon's motion for sanctions [Dkt. 160] be **GRANTED** and that the Court bar Plaintiffs from (1) seeking actual damages of any kind in this case and (2) introducing any evidence, testimony, or argument regarding the amount of their own revenues or the quantity of their own sales. The undersigned further recommends that Plaintiffs' counsel, Paul Overhauser, be required to personally pay that portion of any attorney's fees award that can be attributed to responding to responding to the frivolous argument that he advanced after being admonished not to do so. Amazon shall file any motion for attorney's fees related to the motion for sanctions **within fourteen days of the date of this Order**.

Any objections to the Magistrate Judge's Report and Recommendation shall be filed with the Clerk in accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), and failure to timely file objections within fourteen days after service shall constitute a waiver of subsequent review absent a showing of good cause for such failure.

SO ORDERED.

Dated: 29 MAR 2021

Mark J. Dinsmore
United States Magistrate Judge
Southern District of Indiana

Distribution:

Service will be made electronically on all ECF-registered counsel of record via email generated by the Court's ECF system.