UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| ANNIE OAKLEY ENTERPRISES INC., et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 1:19-cv-01732-JMS-MJD |
| | ) | |
| AMAZON.COM, INC., a Washington Corporation, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER ON MOTION FOR ATTORNEYS' FEES**

This matter is before the Court on Defendant's motion for attorneys' fees [Dkt. 144]. The motion is fully briefed, and the Court, being duly advised, **GRANTS** the motion for the reasons and to the extent set forth below.

**I.  Background**

Each party in this case filed a motion to compel on July 27, 2020.  [Dkt. 74, Dkt. 76.] Plaintiffs raised four issues relating to Defendant's response to Plaintiffs' discovery requests; Defendant raised eight issues relating to Plaintiffs' responses to its discovery requests.  The Court issued orders on both motions on August 7, 2020.  The Court granted Defendant's motion in its entirety, [Dkt. 97]; the Court denied Plaintiffs' motion as to three of the issues and took under advisement.  [Dkt. 96.]  After conducting an *in camera* review, the Court also denied the Plaintiffs' motion as to the final issue.  [Dkt. 130.]

Plaintiffs filed an objection to both orders, raising one issue with regard to each.  [Dkt. 108.]  By order dated November 12, 2020, Judge Magnus-Stinson overruled the objection as to both issues.  [Dkt. 138.]

## II.  Applicable Law

Federal Rule of Civil Procedure 37(a)(5)(A) provides that if a motion to compel is granted, the court

> must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees. But the court must not order this payment if:
>
> > **(i)** the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action;
> > **(ii)** the opposing party's nondisclosure, response, or objection was substantially justified; or
> > **(iii)** other circumstances make an award of expenses unjust.

Similarly, Rule 37(a)(5)(B) provides that if a motion to compel is denied, the court

> must, after giving an opportunity to be heard, require the movant, the attorney filing the motion, or both to pay the party or deponent who opposed the motion its reasonable expenses incurred in opposing the motion, including attorney's fees.  But the court must not order this payment if the motion was substantially justified or other circumstances make an award of expenses unjust.

A party's position need not be correct in order to be substantially justified; "[r]ather, substantial justification only requires the position to have 'a reasonable basis in law and fact.'" *United States v. Pecore*, 664 F.3d 1125, 1137 (7th Cir. 2011) (quoting *Conrad v. Barnhart,* 434 F.3d 987, 990 (7th Cir. 2006)*,* and citing *Pierce v. Underwood,* 487 U.S. 552, 565 (1988).  "To be 'substantially justified' means, of course, more than merely undeserving of sanctions for frivolousness." *Pierce*, 487 U.S. at 565.  In addition, a "prevailing party can secure an expense sanction award without proving that the losing party acted in bad faith, and proof by the losing party that it acted

in subjective good faith is not sufficient to defeat a request for sanctions." *S.E.C. v. Yorkville Advisors, LLC,* 2015 WL 855796, at *7 (S.D.N.Y. Feb. 27, 2015) (citation omitted).  Further, the "burden of persuasion is on the losing party to avoid assessment of fees, rather than on the winning party to obtain such an award." *Malibu Media, LLC v. Harrison*, 2014 WL 5392097, at *1 (S.D. Ind. Oct. 23, 2014).

If the Court determines that an award of fees is appropriate, it must then determine the amount of the award by applying the "lodestar" method, which requires the Court to multiply a reasonable hourly rate by the number of hours reasonably expended by the successful party in litigating the motion.  *Houston v. C.G. Sec. Servs., Inc.*, 820 F.3d 855, 859 (7th Cir. 2016) ("Our case law provides that the 'starting point in a district court's evaluation of a fee petition is a lodestar analysis; that is, a computation of the reasonable hours expended multiplied by a reasonable hourly rate.'") (quoting *Divane v. Krull Elec. Co.,* 319 F.3d 307, 317-18 (7th Cir. 2003)).  District courts have a great deal of discretion with regard to assessing the reasonableness of the hours expended by counsel.  *See Gautreaux v. Chicago Hous. Auth.*, 491 F.3d 649, 659 (7th Cir. 2007) ("'If ever there were a case for reviewing the determinations of a trial court under a highly deferential version of the "abuse of discretion" standard, it is in the matter of determining the reasonableness of the time spent by a lawyer on a particular task in a litigation in that court.'") (quoting *Ustrak v. Fairman,* 851 F.2d 983, 987 (7th Cir. 1988)).  For the second half of the lodestar calculation, "[t]he reasonable hourly rate used in calculating the lodestar must be based on the market rate for the attorney's work.  The market rate is the rate that lawyers of similar ability and experience in the community normally charge their paying clients for the type of work in question." *Id.* (citations and internal quotation marks omitted).  "The burden of proving the market rate is on the party seeking the fee award.  However, once an attorney

3

provides evidence establishing his market rate, the opposing party has the burden of demonstrating why a lower rate should be awarded." *Id.* (citation omitted).

### III.  Discussion

Defendant seeks an attorneys' fee award in the amount of $92,626.00, which it asserts is a reasonable fee award for the following:  (1) its defense of Plaintiffs' motion to compel; (2) its litigation of its own motion to compel; (3) its defense of Plaintiffs' objection regarding both motions to compel; (4) its defense of Plaintiffs' motion for discovery regarding fees; and (5) litigating the fees issue.  Plaintiffs argue that the motion should be denied for several reasons, each of which is addressed below.

### A.  Effect of Defendant's "Fixed Fee" Arrangement

In its motion, Defendant arrives at the amount of fees it seeks by utilizing the lodestar method described above.  Relying on *Assessment Technologies v. Wiredata*, 361 F.3d 434, 439 (7th Cir. 2004), Plaintiffs argue that it is improper to use the lodestar method to determine an appropriate fee award in this case because Defendant and its counsel have a fixed fee arrangement.  Counsel explains the arrangement in his declaration as follows:

> As a firm, we provide legal services for multiple intellectual property matters for Amazon.  We have negotiated a flat-fee arrangement covering all of these cases, including this case.  The flat rate is variable annually and is based on existing cases and past and anticipated workload.  For all matters in which we represent Amazon, we track all time spent daily and enter narratives for each task performed, just as we do when billing clients on an hourly basis.  We do so for purposes of internal compensation and reviews, reporting to, and negotiating fees with, Amazon, and for situations where we seek fees and costs, among others.  Amazon's annual flat-fee payment to Klarquist Sparkman, LLP, for 2020 exceeds the fees sought in this motion.[1]

---

[1] Plaintiffs assert that "Amazon elected to withhold from the Court the details of its fixed fee agreement."  [Dkt. 164 at 2.]  The Court finds the details provided to be sufficient for purposes of resolving the instant motion.

4

[Dkt. 145-1 at 3.]

In *Assessment Technologies*, the case relied upon by Plaintiffs, the defendant, which was the prevailing party in a case brought pursuant to the Copyright Act, sought an award of fees pursuant to the fee-shifting provision in the Act, 17 U.S.C. § 505. The Seventh Circuit noted that

> The defendant's lawyer billed the defendant another $7,849.05 for 68.7 hours of work spent challenging the plaintiff's request in the district court for an award of attorneys' fees, plus a flat fee of $7,500 for work on the wording of the injunction and another flat fee of $17,500 for representing the defendant on appeal. The defendant wants us to ignore the flat fees and award a larger fee based on the number of hours that the lawyer actually worked on the two matters.

*Assessment Technologies*, 361 F.3d at 438. The Seventh Circuit noted that "[t]he courts of appeals have split three ways on the question of the weight to be given to the terms of the contract between the party and his lawyer in determining an award of attorneys' fees in a copyright case." *Id.* (comparing *Pinkham v. Camex, Inc.,* 84 F.3d 292, 294 (8th Cir. 1996) (no weight), with *Crescent Publishing Group, Inc. v. Playboy Enterprises,* 246 F.3d 142, 144 (2d Cir. 2001) (some weight), and *Lieb v. Topstone Industries,* 788 F.2d 151, 156 (3d Cir. 1986) (controlling weight in the sense that the contract places a ceiling on what the court can award the lawyer)). The court agreed with the Third Circuit, reasoning that "[t]he best evidence of the value of the lawyer's services is what the client agreed to pay him." *Id.* Therefore, for the specific tasks for which the defendant's attorney had agreed to accept a flat fee, the amount of the agreed-upon fee was the most that the defendant was entitled to recover as the prevailing party.

Plaintiffs cite to no cases outside of the context of the Copyright Act that follow this rule,[2] and the Court's research has not revealed any. Indeed, a recent Seventh Circuit case—

---

[2] Plaintiffs do take issue with a case cited by Defendant for the opposite view. Defendant's brief contains the following passage:

quoted by Plaintiffs—implicitly recognizes that the holding of *Assessment Technologies* is

limited to copyright cases:

> In *Assessment Techs. of WI, LLC v. WIREdata, Inc.*, 361 F.3d 434, 438-39 (7th Cir. 2004), we held that **in a copyright case** "the best value of the lawyer's services is what the client agrees to pay him," and therefore agreed with the Third Circuit in *Lieb v. Topstone Industries*, 788 F.2d 151, 156 (3d Cir. 1986), that the contract between a party and his lawyer places a ceiling on what a court can award the lawyer **in such cases**.

*Bell v. Lantz*, 825 F.3d 849, 854 (7th Cir. 2016) (emphasis added).  The Court declines to expand

the holding of *Assessment Technologies* to apply to the circumstances of this case.  Indeed,

Plaintiffs do not suggest how it could do so, since, unlike in *Assessment Technologies*, the fees

arrangement in this case does not provide for a flat fee for a particular task or case, but rather for

an entire year's worth of legal work.

---

> "As 'the "centerpiece" of attorney's fees determinations,' the lodestar calculation is applied to contingency fees and fixed fee arrangements."  *Eli Lilly & Co. v. Arch Ins. Co.*, No. 1:13-cv-01770-LJM-TAB, 2017 WL 3535135, at *2 (S.D. Ind. Aug. 17, 2017) (citing *Pickett*, 664 F.3d at 639 (citation omitted)).

[Dkt. 145 at 13.]  As Plaintiffs concede, Defendant accurately quotes the *Eli Lilly* decision. However, Plaintiffs suggest that it was improper to rely upon the quote, because "with all due respect to the late Judge McKinney, that decision misquotes the Seventh Circuit's *Pickett* decision—*Pickett* does ***not*** include the phrase "and fixed fees"—it  mentions *only* "a contingent fee agreement."  [Dkt. 164 at 5.]  Plaintiffs are incorrect—the only **quoted** phrase in the sentence at issue in Judge McKinney's opinion is "the 'centerpiece' of attorney's fees determinations," which does appear in *Pickett*.  And, in fact, *Pickett* involved a contract that involved both a 33.33% contingent fee **and** a $7500 flat fee.  Plaintiffs' assertion that Defendant "tried to sneak by a misquote to *Pickett*," [Dkt. 164 at 26], is unsupported by the facts.

### B. Substantial Justification[3]

Plaintiffs next argue that an award of fees is not permissible in this case because the positions they took with regard to the discovery disputes raised in the motions to compel were substantially justified.  The Court declines to reexamine in detail each issue that was resolved in its rulings on the motions; suffice it to say that those rulings make it clear that the Court found the vast majority of Plaintiffs' positions to lack justification.  The Court briefly addresses some of Plaintiffs' arguments as follows:

- Plaintiffs argue that Defendant's Interrogatory No. 3 is ambiguous, [Dkt. 164 at 7]; however, the Court found that it "clearly and unequivocally" sought the information in question, [Dkt. 97 at 4].

- With regard to Defendant's Interrogatory No. 6,  the Court notes that this issue— Defendant's request for information about Plaintiffs' revenues—has already been addressed in three different rulings.  *See* [Dkt. 97, Dkt. 138, Dkt. 221.]  In overruling Plaintiffs' objection to the undersigned's ruling on the issue, Judge Magnus-Stinson noted that Plaintiffs' "argument that a business does not maintain records concerning how many of its products are sold, at what prices, and when is entirely implausible on its face" and that "[t]he only logical inference that [could] be drawn" from Plaintiffs' statement in their response to the motion to compel that Defendant could "obtain information regarding

---

[3] The Court notes that Plaintiffs also invoke Rule 37(a)(5)(A)(iii), which provides that the Court may not award fees if "other circumstances make an award of expenses unjust," as well as the parallel prohibition in Rule 37(a)(5)(B).  However, Plaintiffs make no argument with regard to a fee award being unjust independent of their arguments regarding substantial justification.  Thus, they have not demonstrated that there are any "other circumstances" that the Court should consider.

[Plaintiffs'] sales through deposition testimony" was that such information did, in fact, exist.  [Dkt. 138 at 10.]  Further, as the undersigned found in his Report and Recommendation on Defendant's motion for sanctions, while **all** of the information sought in Interrogatory No. 6 does not exist, **some** of the information does.  [Dkt. 221 at 10.]  Plaintiffs failed to acknowledge that in response to the motion to compel and failed to produce the responsive information they did have.  Plaintiffs' actions with regard to this interrogatory were far from substantially justified; indeed, the undersigned has found that those actions were sanctionable.  *Id.*

- With regard to Defendant's Document Request No. 6, in their response to Defendant's motion to compel, Plaintiffs mischaracterized the request by failing to include the "sufficient to show" modifier, then objected that it was "overly broad and burdensome."  *See* [Dkt. 79] ("This request calls for every advertisement that Plaintiffs ever ran for over twenty years.").  In their response to the instant motion, they make an entirely different argument that, based upon their interpretation of the request, they had already fully responded to the request when the motion to compel was filed.  Even if this new argument were correct, the existence of a reasonable argument that Plaintiffs did not make in response to the motion to compel cannot make the position that they actually took in the motion to compel substantially justified.

- With regard to Defendant's Document Request No. 21, Plaintiffs argued in response to the motion to compel that the settlement agreement with the Rise 'N Shine Defendants in this case was not requested and was not relevant.  Those arguments are wholly without merit, and Plaintiffs' decision to advance those arguments was not substantially justified.

- With regard to Defendant's Document Requests Nos. 3, 5, and 8, Plaintiffs argue that their positions were substantially justified because they had already produced all responsive documents before the motion to compel was filed.  However, Plaintiffs' response to the motion to compel failed to convey that fact.  For example, as to Document Request No. 5, Plaintiffs stated that they had produced all responsive documents, but that statement was qualified by their unreasonable position that "[a]t most, this request calls for three documents for each product."  [Dkt. 79 at 5.]   Plaintiffs' inclusion of this apparently irrelevant statement in their brief suggested that they had interpreted the request in an unreasonably narrow way, which led to the motion to compel being granted as to that request.  Similarly, with regard to Document Request No. 3, Plaintiffs' response to the motion to compel simply does not convey what it now claims to be the case—that it did not have any responsive documents beyond those that were produced.  It was unreasonable for Plaintiffs to advance objections to and arguments about these requests if, in fact, they had already fully responded to them.

- With regard to Plaintiffs' Interrogatory No. 4, as the undersigned noted in its ruling on Plaintiffs' motion to compel, Plaintiffs failed to address Defendant's arguments in their reply in support of their motion and failed to cite any case law regarding the discoverability and/or admissibility of the information at issue.  [Dkt. 96 at 4.]  Judge Magnus-Stinson noted that Plaintiffs did so again when they objected to the undersigned's ruling.  [Dkt. 138 at 6] ("Plaintiffs have not attempted, in their reply brief in support of their motion to compel, [Filing No. 85], or in their brief in support of their objections to Judge Dinsmore's rulings, [Filing No. 108], to distinguish these cases or argue that they are not instructive in this case.  Plaintiffs similarly have not identified any

legal authority supporting their position.  Accordingly, any argument that these cases are distinguishable or not persuasive is waived.") (citation omitted).  In other words, Plaintiffs failed to avail themselves of the opportunity to demonstrate that their position was substantially justified in the face of Defendant's arguments and the cases cited by Defendant in support of those arguments.

- With regard to Plaintiffs' Interrogatory No. 7, Plaintiffs complain that the Court did not read their interrogatory to encompass the information they wanted, rather than the information they asked for.  That is not the role of the Court.  Plaintiffs' comparison to the Court's ruling on Defendant's Interrogatory No. 6 is entirely inapt; the Court did not "expansively construe" that interrogatory "as requiring a reporting about 'lost sales.'"  Rather, the Court required Plaintiffs to provide the information it had regarding its own revenues, which was a subset of the information the interrogatory asked for.

With one exception, the Court finds that Plaintiffs' positions with regard to the discovery disputes addressed in the motions to compel were not substantially justified.  While there may have been arguments that Plaintiffs could have made in the course of briefing the motions to compel that may have been substantially justified—or perhaps might even have carried the day—they did not make those arguments.  The arguments they did make, and the objections underlying those arguments, simply were not "justified to a degree that could satisfy a reasonable person," *Pierce*, 487 U.S. at 565, and therefore were not substantially justified such that an award of attorneys' fees pursuant to Rule 37(a)(5) is not appropriate.  The exception is Plaintiffs' challenge of certain entries in Defendant's privilege log, which the Court finds was reasonable given the information available to Plaintiffs.  The Court has taken this into consideration in arriving at its fee award, as set forth below.

10

**C. Rule 37(a)(5)(A)(i)**

As Plaintiffs correctly note, Federal Rule of Civil Procedure 37(a)(5)(A)(i) prohibits an award of fees for a successful motion to compel if "the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action." Plaintiffs argue that the Court may not award fees with regard to several issues that were raised in Defendant's motion to compel, specifically, Interrogatory No. 6 and Document Requests Nos. 3 and 5, based on a failure to meet and confer.[4] Plaintiffs do not actually assert that the parties did not meet and confer regarding the issues, however; as Defendant sets forth in its reply brief, it is clear that they did. *See* [Dkt. 174 at 13-14]. Rather, Plaintiffs actually assert that the Defendant violated Local Rule 37-1(a), because the issues were not included in the parties' pre-motion discussion with the undersigned. While in some circumstances the failure to comply with the additional requirement of the local rule might be reason to deny a discovery motion, that failure does not implicate Rule 37(a)(5)(A)(i), and therefore does not preclude an award of fees to Defendant.

**D. Amount of Fees**

Plaintiffs advance several arguments with regard to Defendant's calculation of a reasonable fee, each of which is addressed, in turn, below.

*1. Hourly Rates*

Plaintiffs first take issue with the hourly rates sought by defense counsel, Robert Cruzen ($525.00) and Amy Dachtler ($325.00 per hour). The Seventh Circuit has

> defined a reasonable hourly rate as one that is "derived from the market rate for the services rendered." *Denius v. Dunlap*, 330 F.3d 919, 930 (7th Cir. 2003). We

---

[4] Plaintiffs did not raise this issue in their response to Defendant's motion to compel.

presume that an attorney's actual billing rate for similar litigation is appropriate to use as the market rate. *Id.* The fee applicant bears the burden of "produc[ing] satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community." *Blum v. Stenson,* 465 U.S. 886, 895 n.11, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984). If the fee applicant satisfies this burden, the burden shifts to the other party to offer evidence that sets forth "a good reason why a lower rate is essential." *People Who Care v. Rockford Bd. of Educ.,* 90 F.3d 1307, 1313 (7th Cir. 1996) (internal quotation marks omitted) (quoting *Gusman v. Unisys Corp.,* 986 F.2d 1146, 1151 (7th Cir.1993)).

*Pickett*, 664 F.3d at 640; *see also Johnson v. GDF, Inc.*, 668 F.3d 927, 933 (7th Cir. 2012) ("The best evidence of an attorney's market rate is his or her actual billing rate for similar work.").

Defendant has provided the requisite evidence to support the reasonableness of the hourly rates it seeks. Cruzen submitted a declaration in which he established that his 2020 billing rate was $525.00 per hour. [Dkt. 145-1.] Cruzen charged that rate to his clients that, unlike Defendant, did not have a different fee arrangement. Cruzen was paid by clients at that rate for work on trademark matters in 2020.[5] *Id.* Thus, $525.00 per hour is Cruzen's actual billing rate for similar work. Similarly, in her declaration, [Dkt. 145-5], Dachtler establishes that her current

---

[5] Plaintiffs argue that Defendant's statement in its motion that "[t]his is the rate Mr. Cruzen has charged some clients for his legal services in 2020 for other intellectual property matters, including trademark matters," [Dkt. 145 at 25], is "hedging" and "highly suspect" because it "would be consistent with Mr. Cruzen charging two clients $52.50 each for 0.1 hour worth of work, while charging all his other clients $100/hr." [Dkt. 164 at 26.] However, the paragraph of Cruzen's declaration that is cited immediately following that sentence makes its meaning clear. Plaintiffs also argue that it would be better to use a "realization rate" method of determining how much Cruzen's clients have paid him. The Court agrees with Cruzen that requiring that type of analysis would be unnecessarily complex; it would clearly run afoul of the Seventh Circuit's admonition that "the fees tail should not be allowed to wag the merits dog too vigorously." *Assessment Techs.*, 361 F.3d at 438; *see also Platinum Supplemental Ins., Inc. v. Guarantee Tr. Life Ins. Co.*, 989 F.3d 556, 573 (7th Cir. 2021) (noting that "the desirability of avoiding a second major litigation strictly over attorneys' fees is high") (citations and internal quotation marks omitted).

billing rate as a staff attorney is $325.00 per hour and that she was paid that rate by a client whom she represented in a trademark matter in 2019 and 2020.

Defendant also has provided evidence that these rates are in line with those prevailing in the community, in the form of the American Intellectual Property Law Association ("AIPLA") survey of the rates charged by attorneys in intellectual property cases in 2018.[6]  Cruzen has been practicing law since 1999, when he graduated from Stanford Law School.  [Dkt. 145-1.]  He is a partner at Klarquist Sparkman, LLP, in Portland, Oregon, which is the largest boutique intellectual property law firm in the Pacific Northwest.  *Id.*  Pursuant to the AIPLA survey, the mean hourly rate for private firm equity partners in the "Other West" geographical region in 2018 was $496.00 per hour and the third quartile rate was $623.00 per hour.  Nationwide, the mean hourly rate for attorneys with Cruzen's years of experience was $505.00.  Dachtler, who works as a part-time staff attorney at the same law firm as Cruzen, has well over a decade of experience in intellectual property litigation.[7]  According to the AIPLA survey, in 2008, the

---

[6] The AIPLA survey is released every two years; the most recent is from 2019 and compiles data from 2018.  Data from the survey has long been considered by courts in considering fee awards in intellectual property cases.  *See, e.g., In re Personalweb Techs., LLC Pat. Litig.*, 2021 WL 796356, at *15 (N.D. Cal. Mar. 2, 2021) ("In intellectual property cases, federal courts routinely rely on the American Intellectual Property Law Association ('AIPLA') economic survey results published every other year.") (citations omitted); *Eli Lilly & Co. v. Zenith Goldline Pharms., Inc.*, 264 F. Supp. 2d 753, 766 (S.D. Ind. 2003) ("The Federal Circuit has approved use of the American Intellectual Property Law Association's economic survey in awarding fees under § 285.") (citing *Mathis v. Spears*, 857 F.2d 749, 755-56 (Fed. Cir. 1988) (finding that district court properly considered surveys in deciding on reasonable rates) and *View Engineering, Inc. v. Robotic Vision Systems, Inc.*, 208 F.3d 981, 987 (Fed. Cir. 2000) (approving use of AIPLA survey to reduce hourly rates sought as Rule 11 sanctions in patent case)).

[7] Dachtler has spent her entire legal career in intellectual property litigation, working at several large national firms as an associate between 2004 and 2012.  After a short hiatus, during which she had a child, she returned to that work in 2014 and joined her current firm as a part-time staff attorney in April 2017.

median average rate of non-partner track attorneys with 10-14 years of experience was $378.00; for those with 15-24 years of experience, it was $348.00.

Plaintiffs take issue with the fact that the community Defendant compares its attorneys' rates to is the Pacific Northwest, where both Defendant and Plaintiffs are located, rather than the Indianapolis area, arguing that "[l]ocal attorneys could provide the same or better quality of care at a far lower rate." [Dkt. 164 at 26.]   When considering a fee petition involving an attorney from another location,

> if [the] out-of-town attorney has a higher hourly rate than local practitioners, district courts should defer to the out-of-town attorney's rate when calculating the lodestar amount, though if "local attorneys could do as well, and there is no other reason to have them performed by the former, then the judge, in his discretion, might allow only an hourly rate which local attorneys would have charged for the same service."

*Mathur v. Bd. of Trustees of S. Illinois Univ.*, 317 F.3d 738, 744 (7th Cir. 2003) (quoting *Chrapliwy v. Uniroyal, Inc.*, 670 F.2d 760, 768 (7th Cir. 1982)).  While the Court may have discretion to look to local (i.e. Indianapolis) market rates rather than defense counsel's actual rates, it does not find it appropriate to do so here.  The Court has no doubt that there are highly qualified attorneys in Indianapolis who could have handled this litigation for Defendant; however, the Court agrees with Defendant that it "has good reasons to continue to hire Mr. Cruzen for intellectual property cases brought against it nationwide, rather than hire local counsel in each location where it is a party to litigation." [Dkt. 174 at 8.]   It is entirely reasonable for Defendant to utilize counsel it is familiar with—and who is familiar with Defendant—rather than searching for and vetting qualified counsel in each location in which it is sued.

In any event, Plaintiffs' suggested comparable local market rates are not supported by the evidence Plaintiffs rely upon.  Plaintiffs assert the following:

> [L]ocal rates for an attorney comparable to Mr. Cruzen are at most $300/hr. and the rate for an associate would be $250.  These were the rates charged by attorneys Schmadeke and Thompson in *Bell v. Powell*, 1:16-CV-02491-TWP-DLP (S.D. Ind. August 21, 2019), in which attorney's fees of $76,200.05 were awarded.  The court approved the proposed rates, which were supplied by Schmadeke's declaration (Exhibit 7).  Like this case, this was a major intellectual property infringement case.  Thus, the local rates are roughly 57% ($525/$300) of what Amazon proposes for Mr. Cruzen.

[Dkt. 164 at 27.]  In fact, the cited declaration includes the following rates, which were charged between May 2016 and July 2018:

| Timekeeper Summary | | | |
|---|---|---|---|
| Timekeeper | Hours | Rate | Total |
| Jim A. Coles | 1.60 | $420.00 | $672.00 |
| Jim A. Coles | 1.00 | 450.00 | 450.00 |
| Jim A. Coles | 0.60 | 475.00 | 285.00 |
| Eric D. Schmadeke | 20.70 | 285.00 | 5,899.50 |
| Eric D. Schmadeke | 69.50 | 300.00 | 20,850.00 |
| Sarah C. Thompson | 4.60 | 180.00 | 828.00 |
| Sarah C. Thompson | 42.50 | 225.00 | 9,562.50 |
| Justin M. Wiser | 22.90 | 250.00 | 5,725.00 |
| Clifford M. Robinson | 35.90 | 250.00 | 8,975.00 |

[Dkt. 163-7 at 2.]  There is no indication in the declaration that the attorney whose rate was $300.00 specializes in intellectual property matters.  Jim Coles, the attorney who the declaration states does specialize in intellectual property matters, charged $475.00 per hour in 2018.  The court found that rate to be reasonable.  *Bell v. Powell*, 2019 WL 3945511, at *4 (S.D. Ind. Aug. 21, 2019).  Further, there is no indication that the three associates on the case had any particular experience in intellectual property matters or that their level of experience was comparable to that of Dachtler; indeed, the court referred to at least some of them as "young, inexperienced associates" in its fee order.  *Id.*  In addition, the Court takes judicial notice of the fact that Plaintiffs' counsel, Paul Overhauser, has himself sought an award of fees based on hourly rates

15

up to $435.00 per hour.  *See Design Basics, LLC v. Kerstiens Home & Designs, Inc.*, 2019 WL

4749916, at *3 (S.D. Ind. Sept. 30, 2019) ("Counsel Paul Overhauser explains that the

[requested] rates range from $165.00 to $435.00 per hour, which are the rates actually charged to

other clients in this market for the same type of work, and other clients have actually paid these

same rates."); *Bell v. Vacuforce, LLC*, 1:16-cv-1257-WTL-DML, Docket Number 15-2

(Overhauser Declaration) (stating in 2016 that he had billed, and his clients had paid, a rate of

$420.00 per hour for himself and $360.00 for another attorney in his firm).  Plaintiffs fail to

explain why the $300.00 rate billed by one attorney in *Bell v. Powell* is the relevant market rate

for Cruzen, when clearly other attorneys in Indianapolis charge far more in intellectual property

cases.[8]  The Court finds that the hourly rates sought by Defendant are reasonable.

### 2. *Number of Hours Expended*

Plaintiffs make several rapid-fire arguments regarding the number of hours expended by

Defendant's attorneys.  First, they argue that

> Amazon also has not attempted to reduce the attorney hours to eliminate time
> devoted to resolving discovery issues; instead, it appears to seek recovery for all
> discovery efforts of both sides, even though the vast majority were resolved
> without court intervention.  The magnitude of resolved issues is evident by
> comparing the original meet and confer letter to the issues ultimately presented to
> the Court.  Amazon's original six-page meet and confer letter of June 29, 2020,
> presented 26 issues. [Dkt. 77-11].  However, Amazon's chart of issues presented
> to the Court per the local rule only presented six issues.  Thus, 76% of the issues

---

[8] The Court rejects Plaintiffs' suggestion that Defendant should not recover rates appropriate for intellectual property work when the work performed involved "predominantly routine litigation issues." [Dkt. 164 at 26.]  This is a trademark case; it is reasonable for it to be litigated by intellectual property attorneys, and Defendant is entitled to a fee award based on the reasonable market rates of its attorneys.  The Court further notes that it has recently found higher hourly rates charged by Indianapolis attorneys in a non-intellectual property case to be reasonable. *Senior Lifestyle Corp. v. Key Benefit Administrators, Inc.*, 2019 WL 5565973, at *5 (S.D. Ind. Mar. 29, 2019) (hourly rates ranging from $315.00 for a junior associate to $570.00 for a partner).

> were resolved through the meet and confer process.  Annie Oakley should not
> have to pay Amazon's attorney's fees for resolving 76% of Amazon's discovery
> concerns.

[Dkt. 164 at 28.]  The Court reads this argument as relating to the fees sought by Defendant for

the meet-and-confer process.  However, Plaintiffs then use their 76% figure to reduce **all** of the

fees requested by Defendant by 76%.  [Dkt. 164 at 29.]  This is illogical; the remainder of the

fees sought, by definition, relate only to those matters that were not resolved by the meet-and-

confer process and therefore had to be resolved by the Court.  Further, defense counsel already

has prorated the fees sought for the meet and confer process to account for the fact that only

some of the issues discussed were subsequently litigated.  *See* [Dkt. 145-1 at 4-6].

        Next, Plaintiffs suggest that Defendant should not be permitted to recover fees for any of

the work of Dachtler because she has not appeared in this case and has not "been a party to any

email exchanged with [Plaintiffs' counsel], participated in any phone call with [Plaintiffs']

counsel, or appeared at any deposition."  [Dkt. 164 at 28.]  "In view of this," Plaintiffs' argue, "it

is reasonable to assume that, she is unfamiliar with the day-to-day activities of this case, and was

required to be updated by Mr. Cruzen for any project she has worked on."  *Id.*  This argument is

utterly without merit.  Attorneys' fee awards almost always include hours expended by

individuals who work behind the scenes.[9]  That does not mean they are any less familiar with a

case than those working in more public-facing roles.

---

[9] Indeed, in this case, Defendant "is not seeking expenses or fees for work performed by
paralegals, administrative staff, or in-house counsel for the motion to compel, although each
category of those individuals dedicated substantial time to Amazon's motions and oppositions."
[Dkt. 145 at 21.]

Next, Plaintiffs argue that "the reported hours supposedly devoted to this case cannot be taken at face value" because the flat fee arrangement with Defendant "inherently leads to over-recording of time to pad billable hour requirements because fixed fee time is not subject to rigorous review." *Id.* at 28-29.  Thus, Plaintiffs suggest that the fee request "should be discounted by a significant percentage, such as 33%." *Id.*  Defendant takes umbrage at this argument, and with good reason, as it directly impugns the integrity of defense counsel, who have submitted declarations in support of the fee request.[10]  Given that Plaintiffs do not point to a single entry in defense counsel's billing record that they believe demonstrates "padding," this argument frankly smacks of the type of "throw it all against the wall and see what sticks strategy" that permeated Plaintiffs' approach to litigating the discovery disputes in this case and necessitated the large number of hours spent by defense counsel on them.

Finally, Plaintiffs argue that Defendant's request for $92,626.00 "is clear overreach"[11] and should be rejected out of hand as a result.  As evidence of this assertion, Plaintiffs point to the fee award entered by the undersigned in *FinishMaster, Inc. v. GMP Cars Collision Fairfield,*

---

[10] The same is true of Plaintiffs' argument regarding defense counsel's use of block billing.  *See* [Dkt. 164 at 27] ("While Mr. Cruzen claims that he made attempts to 'pro-rate' his time entries after the fact, the non-contemporaneous nature of that effort makes the result inherently suspect.").  The Court notes that "[a]lthough 'block billing' does not provide the best possible description of attorneys' fees, it is not a prohibited practice." *Farfaras v. Citizens Bank & Tr. of Chicago,* 433 F.3d 558, 569 (7th Cir. 2006); *see also Crissen v. Gupta,* 2014 WL 4449928, at *5 (S.D. Ind. Sept. 10, 2014) (rejecting objection to block billing where movant "weeded out time spent on the other motions").  The declarations submitted by defense counsel thoroughly explain—under penalty of perjury—how each block entry was prorated as necessary to eliminate any unrelated work.  [Dkt. 145-1, Dkt. 145-5.]  There is absolutely nothing other than Plaintiffs' unsupported allegation to suggest that defense counsel did not properly account for the number of hours they spent on each task.

[11] The Court notes that Plaintiffs' suggestion that $3,729.00 would be a "generous" fee award for the multiple motions spawned by the discovery disputes in this case is itself an overreach.

18

*LLC*, 2020 WL 4473001, at *1 (S.D. Ind. Aug. 3, 2020), in the amount of $2,798.10.  Suggesting

that the fee award for a motion to compel in that case is in any way relevant to the fee award in

this case, without making any attempt to compare the relevant circumstances of the two

situations, is, quite frankly, absurd.  Further, Plaintiffs cite to two cases in support of this final

argument, but neither is applicable.  Plaintiffs correctly quote *Budget Rent-A-Car v.*

*Consolidated Equity*, 428 F.3d 717, 718 (7th Cir. 2005), as stating "[w]hen an award of fees is

permissive, denial is an appropriate sanction for requesting an award that is not merely

excessive, but so exorbitant as to constitute an abuse of the process of the court asked to make

the award," inexplicably ignoring the fact that fees under Rule 37(a)(5) are mandatory, not

permissive.  Plaintiffs also cite to *In re Glob. Equity Mgmt. (SA) Pty. Ltd.*, 2020 WL 4732210, at

*1 (N.D. Cal. Aug. 15, 2020), which also involved a motion for fees the resolution of which was

"committed to the discretion of the district court."

      Defendant breaks down its fee request as follows:

- Cruzen's meet and confer activities:  $5,145.00 (9.8 hours)

- Cruzen's drafting Defendant's motion to compel and the reply brief, including his
  conducting supporting legal research:  $19,110.00 (36.4 hours)

- Dachtler's participation in drafting the motion to compel and the reply brief, including
  conducting supporting legal research:  $9,945.00 (30.6 hours)

- Cruzen's drafting Defendant's response in opposition to plaintiffs' motion to compel,
  including his conducting supporting legal research:  $8,715.00 (16.6 hours)

- Dachtler's assistance in drafting Defendant's response in opposition to plaintiffs' motion
  to compel:  $3,640.00 (11.2 hours)

- Cruzen's drafting the initial motion for attorneys' fees:  $5,828.00 (11.1 hours)

- Dachtler's assistance in drafting Defendant's initial motion for attorneys' fees, including her conducting supporting legal research:  $10,790.00 (33.2 hours)

- Cruzen's drafting Defendant's response to plaintiffs' objection to the Magistrate Judge's orders on the parties' respective motions to compel:  $8,925.00 (17.0 hours)

- Dachtler's assistance in drafting Defendant's response to plaintiffs' objection to the Magistrate Judge's order, including her conducting supporting legal research:  $7,313.00 (22.5 hours)

- Cruzen's drafting of Defendant's response in opposition to plaintiffs' motion for discovery on Defendant's attorneys' fees:  $5,513.00 (10.5 hours)

- Dachtler's assistance in drafting Defendant's response in opposition to plaintiffs' motion for discovery on Defendant's attorneys' fees, including her conducting supporting legal research:  $2,568.00 (7.9 hours)

- Cruzen's support in drafting the instant motion:  $683.00[12] (1.3 hours)

- Dachtler's drafting of the instant motion:  $4,453.00 (13.7 hours)

Defendant thus seeks a total of $53,918.00 for Cruzen's work and $38,708.00 for Dachtler's work, for a total of $92,626.00.  As noted previously, Plaintiffs do not make any specific argument regarding the reasonableness of the time spent on any of these items, instead arguing only that the overall total is excessive.  The total is large, to be sure.  It is unfortunate that so much time had to be expended on the discovery issues in this case.  Cognizant of the fact that "trial courts need not, and indeed should not, become green-eyeshade accountants," *Fox v. Vice,*

---

[12] Although Defendant states in its opening brief that it will update this amount to account for the hours spent on the reply in support of this motion, it did not do so.

563 U.S. 826, 838 (2011), the Court has reviewed the billing records and does not find the time

billed to be excessive given the number and nature of the discovery issues that were litigated.  As

discussed above, the Court will reduce the fees awarded for responding to Plaintiffs' motion to

compel by fifty percent, to account for the fact that Plaintiffs' position regarding the privilege

issues, while ultimately unsuccessful, were substantially justified.  This results in a reduction of

$6,177.50.[13]  The Court finds that the remainder— $86,448.50—is a reasonable fee award.

## IV.  CONCLUSION

For the reasons set forth above, the Court **GRANTS** Defendant's motion for attorneys'

fees [Dkt. 144] and awards Defendant fees in the amount of $86,448.50.  Pursuant to Rule

37(a)(5), the Court may order the fee award to be paid by Plaintiffs, Plaintiffs' counsel, or both.

The Court finds that there is no indication that Plaintiffs themselves were the driving force

behind any of the decisions regarding Plaintiffs' discovery responses and related motions in this

case; indeed, recent filings by Plaintiffs have emphasized their relatively unsophisticated nature.

*See* [Dkt. 189 at 6-7] ("Renee Gabet is a sixty-nine year old grandmother trying to run a small

business with five employees—not the world's largest techno-whiz like Amazon.").

Accordingly, the Court orders that the fee award shall be paid by Plaintiffs' counsel, Overhauser

Law Offices, LLC.  Payment shall be made **within thirty days of the date of this Order**.

SO ORDERED.

Dated:  30 APR 2021

_____

Mark J. Dinsmore
United States Magistrate Judge
Southern District of Indiana

---

[13] $8,715.00 + $3,640.00 = $12,355.00.  $12,355.00/2 = $6,177.50.

21

Distribution:

Service will be made electronically on all
ECF-registered counsel of record via email
generated by the Court's ECF system.