UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| ANNIE OAKLEY ENTERPRISES, INC. and RENEE GABET, | ) ) ) | |
| *Plaintiffs*, | ) ) | |
| vs. | ) ) | No. 1:19-cv-1732-JMS-MJD |
| AMAZON.COM, INC., | ) ) | |
| *Defendant*. | ) ) | |

## ORDER

Plaintiffs Annie Oakley Enterprises, Inc. ("Annie Oakley") and its owner, Renee Gabet, initially brought this trademark action against Rise N Shine Online, LLC ("RNSO"), its owner Eric Young, and Amazon.com, Inc. ("Amazon"), alleging that Defendants sold products on Amazon's website that infringed Plaintiffs' trademarks. [Filing No. 12.] Plaintiffs have settled their claims with RNSO and Mr. Young, and those claims were dismissed with prejudice, [Filing No. 64]; only the claims against Amazon remain pending. This litigation has been rife with discovery disputes, resulting in multiple motions to compel by both sides, orders on those motions by Magistrate Judge Mark J. Dinsmore, appeals of Judge Dinsmore's orders to this Court, a request by Amazon to recover attorneys' fees for successfully litigating those issues, and ultimately a motion by Amazon seeking sanctions for Plaintiffs' non-compliance with the Court's discovery orders. Among the matters presently pending before the Court are: Plaintiffs' Objections to Judge Dinsmore's Order awarding Amazon attorneys' fees, [Filing No. 239]; Amazon's Motion for Sanctions, [Filing No. 160]; Judge Dinsmore's Report and Recommendation ("R&R") concerning the Motion for Sanctions, [Filing No. 221]; Plaintiffs' Objections to the R&R, [Filing No. 231]; Amazon's Motion for Leave to File a Surreply in

1

opposition to Plaintiffs' Objection, [Filing No. 242]; and Amazon's Motion to Maintain Document Under Seal relating to the proposed surreply, [Filing No. 244]. Each of these matters have been fully briefed and are ripe for the Court's decision.

# I.
## BACKGROUND

The parties have each served numerous discovery requests in this action. Of particular relevance is Amazon's Interrogatory No. 6, which asked Plaintiffs to "[s]et forth plaintiffs' revenues on a quarterly basis for each of Plaintiffs' Products since July 1, 2012." [Filing No. 77-2 at 7.] On May 1, 2020, Plaintiffs responded to Interrogatory No. 6 as follows:

> Plaintiff does not know its revenues on a quarterly basis for each of Plaintiffs Products since July 1, 2012. To the extent Plaintiff obtains this information, it will supplement this answer. Plaintiff also objects to the interrogatory as not relevant and not proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Plaintiffs do not track revenues by Product, and have changed accounting systems during the timeframe specified in the interrogatory.

[Filing No. 77-5 at 7-8.]

Amazon was unsatisfied with Plaintiffs' responses to Interrogatory No. 6 and to several other discovery requests, and filed a Motion to Compel on July 27, 2020, asking the Court to order Plaintiffs to: (1) respond to Interrogatory No. 3, which sought information about Amazon's laches defense; (2) respond to Interrogatory No. 6; (3) produce documents in response to Requests for Production Nos. 5 and 6 related to the sale and marketing of trademarked products; (4) produce documents in response to Requests for Production Nos. 3 and 8 related to the adoption and prosecution of the trademarks at issue; (5) produce the settlement agreement between Plaintiffs and RNSO ("the Settlement Agreement") in response to Request for

Production No. 21; and (6) provide a complete response to Request for Admission No. 4 concerning evidence of actual confusion.  [Filing No. 77.]  Amazon also asked that the Court deny Plaintiffs' request to withdraw their response to Request for Admission No. 5.  [Filing No. 77 at 28-31.]

With respect to Interrogatory No. 6 specifically, Amazon argued that Plaintiffs' response was incomplete and deficient, and that Plaintiffs' revenues are highly relevant to the issues of damages and trademark dilution.  [Filing No. 77 at 14-16.]  Amazon argued that it was not plausible that Plaintiffs did not have any records relating to sales data and that Plaintiffs failed to demonstrate that they had no way to calculate sales information on a product-by-product basis.  [Filing No. 77 at 14.]  Plaintiffs responded that Interrogatory No. 6 asked for revenues on a quarterly basis, "not for general sales records," and that Plaintiffs could not produce quarterly revenue data because they do not track sales by product.  [Filing 79 at 3.]  Plaintiffs also pointed out that "Amazon can obtain information regarding sales through deposition testimony," including the deposition of Ms. Gabet.  [Filing No. 79 at 4.]

Also in response to Amazon's Motion to Compel, Plaintiffs filed a separate Emergency Motion for Protective Order, asking the Court to order that Plaintiffs are not required to produce the Settlement Agreement or any related documents and to prevent Amazon from reviewing any documents it may receive from Mr. Young or asking Mr. Young any questions during his deposition that related to the Settlement Agreement.  [Filing No. 88.]

After Amazon's Motion to Compel and Plaintiffs' Emergency Motion for Protective Order were fully briefed, Judge Dinsmore granted Amazon's Motion to Compel in its entirety and denied Plaintiffs' Emergency Motion for Protective Order.  [Filing No. 97.]  Regarding Interrogatory No. 6, Judge Dinsmore concluded that sales information is clearly relevant and

discoverable because Plaintiffs allege in their Amended Complaint that they have sustained damage to their sales. [Filing No. 97 at 6.] Judge Dinsmore reasoned:

> What Plaintiffs argue in their response to the instant motion is that they do not have, and **cannot calculate** the information sought in Interrogatory No. 6, while at the same time suggesting that Amazon "can obtain information regarding sales through deposition testimony." But Plaintiffs have alleged lost sales in this case, so they must have a factual basis for that allegation. There is no way for Plaintiffs to demonstrate that they have lost sales for their products if they do not know what their sales of the products at issue actually were. Amazon is entitled to the information that Plaintiffs have regarding those sales. Accordingly, Amazon's motion is **GRANTED** with regard to Interrogatory No. 6. **Within fourteen days of the date of this Order**, Plaintiffs shall provide a complete and unequivocal response to Interrogatory No. 6.

[Filing No. 97 at 6 (emphasis in original).]

Meanwhile, Plaintiffs had filed their own Motion to Compel, also on July 27, 2020. [Filing No. 74.] In that motion, they asked the Court to order Amazon to: (1) provide the names and email addresses for customers in Marion County, Indiana who purchased accused products; (2) fully respond to an interrogatory asking why accused products were made available for purchase; and (3) produce certain documents that were withheld on the basis of "Common-Interest / Joint Defense" privilege. [Filing No. 74.] After the motion was briefed, Judge Dinsmore denied the motion as to the customer names and email addresses and the interrogatory concerning why accused products were made available for purchase, and took the motion under advisement as to the purportedly privileged documents. [Filing No. 96.] The parties subsequently submitted the documents for in camera review, and Judge Dinsmore denied Plaintiffs' request to compel Amazon to produce them, concluding that they were privileged. [Filing No. 130.]

On August 17, 2020 Plaintiffs filed their Objection to Magistrate Judge's Rulings on Motions to Compel, which challenged: (1) Judge Dinsmore's denial of Plaintiffs' Motion to

Compel as it related to the request for Amazon to produce its customers' contact information; and

(2) Judge Dinsmore's grant of Amazon's Motion to Compel as it related to Interrogatory No. 6.

[Filing No. 108.]  In support of their objection relating to Interrogatory No. 6, Plaintiffs argued

that they should not be required to do the "impossible task" of stating their quarterly revenues

because they do not track revenues by product.   [Filing No. 108 at 5-7.]  Plaintiffs maintained

that there "is no contradiction" between alleging lost sales and not knowing what the sales of

their products actually were, because each sale of an infringing product by Amazon represents a

lost sale to Plaintiffs, regardless of Plaintiffs' sales.   [Filing No. 108 at 7.]  Plaintiffs also

contended that they had provided a complete and unequivocal response to Interrogatory No. 6 as

ordered by stating that they do not know and cannot calculate quarterly revenues by product.

[Filing No. 108 at 7.]

On August 21, 2020, while Plaintiffs' Objection was pending, Plaintiffs provided to

Amazon a supplemental response to Interrogatory No. 6, which stated:

> Plaintiffs are not seeking to recover monetary damages comprising lost profits from lost sales, though they do seek to recover the profits of the infringers. Notwithstanding this, Plaintiffs believe that customers who purchased infringing products from Amazon may provide evidence of confusion and/or lost sales by Plaintiffs.  Discovery on that issue is proceeding.
>
> Plaintiffs reiterate that they do not know and cannot calculate their revenues on a quarterly basis for each of Plaintiffs' Products since July 1, 2012. However, this does not preclude Plaintiff from establishing lost sales, and a lost sale has nothing to do with the amount of Plaintiffs' sales.  For example, if a customer admits that it did not purchase a product from Plaintiff due to Amazon's infringement, that admission would be evidence of a lost sale, regardless of what Plaintiffs' sales were.
>
> Subject to the foregoing, Plaintiffs state that documents Plaintiffs are able to produce regarding their revenues would include revenues from Plaintiffs' Products (as defined in the interrogatories).

[Filing No. 190-2 at 6.]  On October 29, 2020, Plaintiffs provided to Amazon a second set of supplemental interrogatory responses, setting forth the same response to Interrogatory No. 6 as was contained in the August 21 responses.  [Filing No. 190-5 at 13-14.]

On November 12, 2020, this Court issued an Order on Plaintiffs' objections to Judge Dinsmore's discovery rulings, concluding that: (1) Judge Dinsmore did not err in denying Plaintiffs' request to compel Amazon to produce customer contact information; and (2) Judge Dinsmore did not err in granting Amazon's request to compel Plaintiffs to respond to Interrogatory No. 6.  [Filing No. 138.]  Regarding the Interrogatory No. 6 issue, the Court concluded that Judge Dinsmore's determination that Plaintiffs' assertion that they cannot calculate revenue figures by product is inconsistent with their position that they have lost sales was "certainly not clearly erroneous" because "there is no dispute that both Amazon's potential increase in revenues and Plaintiffs' potential loss of revenues are relevant to determining the extent to which Plaintiffs were damaged by Amazon's alleged infringement."  [Filing No. 138 at 9-10.]  The Court also stated the following:

> The Court acknowledges that Plaintiffs may not track revenues by product on a quarterly basis in the ordinary course of their record keeping.  But Plaintiffs have not demonstrated that they do not possess or maintain any data concerning the sales of their products from which the requested revenues can be calculated. Indeed, Plaintiffs represented in their response in opposition to Amazon's motion to compel that "Amazon can obtain information regarding [Plaintiffs'] sales through deposition testimony."  The only logical inference that can be drawn from this statement is that the relevant sales data exists, because if it did not exist Amazon could not obtain it through deposition testimony.  Apart from this statement, any argument that a business does not maintain records concerning how many of its products are sold, at what prices, and when is entirely implausible on its face.  Plaintiffs therefore must respond to the interrogatory, and Judge Dinsmore's ruling to that effect is not clearly erroneous or contrary to law.

[Filing No. 138 at 10 (internal citations omitted).]  In addition, the Court gave Amazon 14 days in which to file a motion for attorneys' fees if it desired.  [Filing No. 138 at 11-12.]

On November 25, 2020, Amazon filed its Motion for Attorneys' Fees, pursuant to Federal Rule of Civil Procedure 37(a)(5)(A) and (B), seeking an award of $92,626 for fees incurred in successfully litigating its Motion to Compel, successfully defending against Plaintiffs' Motion to Compel, defending against Plaintiffs' objections to Judge Dinsmore's orders on the motions to compel, defending against Plaintiffs' other motions related to the fee issue,[1] and bringing its Motion for Attorneys' Fees.  [Filing No. 144.]  Judge Dinsmore granted the motion and awarded Amazon $86,448.50 in fees to by paid by Plaintiffs' counsel, Overhauser Law Offices, LLC.  [Filing No. 229.]  In doing so, Judge Dinsmore concluded that the flat fee arrangement between Amazon and its counsel did not preclude Amazon from recovering fees calculated using the lodestar method, and he used that method to calculate the appropriate fee award.  [Filing No. 229.]

Meanwhile, on December 23, 2020, Amazon filed a Motion for Sanctions, asserting that Plaintiffs still had not provided a response to Interrogatory No. 6.  [Filing No. 160.]  In the motion, Amazon requested "that the Court dismiss this action or, alternatively, dismiss plaintiffs' damages claims, including the claim for Amazon's profits."  [Filing No. 160.]  Amazon represented that Plaintiffs had not supplemented their response to Interrogatory No. 6, even after the Court ordered them to do so, and the August 21, 2020 supplement (which was incorporated unchanged into supplemental responses served on Amazon on October 9, 2020) did not contain

---

[1]Amazon initially filed a motion seeking attorneys' fees immediately after Judge Dinsmore's rulings on the motions to compel.  [Filing No. 110.]  Plaintiff responded with a "Motion to: (a) Permit Discovery on Amazon's Attorneys' Fee Motion; (b) Stay Deadline to Respond to Amazon's Motion for Attorneys' Fees, and (c) for Expedited Ruling."  [Filing No. 115.]  As a result, Judge Dinsmore suspended the initial fee motion, [Filing No. 117], and Amazon fully briefed the discovery issue, [Filing No. 125].  Judge Dinsmore subsequently denied Plaintiffs' request to pursue fee-related discovery, denied the initial fee motion as premature, and directed Amazon to file a renewed fee motion within 14 days of this Court's ruling on Plaintiffs' objections to Judge Dinsmore's rulings on the motions to compel, [Filing No. 129].

any revenue figures for any products and did not reference any specific documents in which that information could be found as contemplated by Federal Rule of Civil Procedure 33(d).  [Filing No. 161 at 9.]  An email from Plaintiffs' counsel to Amazon's counsel reflects that, even after the Court's order, Plaintiffs persisted in their "position that they have fully responded to Amazon's interrogatory regarding quarterly revenues with their supplemental responses served on October 9, 2020."  [Filing No. 149-18 at 2.]  In support of the Motion for Sanctions, Amazon pointed to "additional bad faith conduct" by Plaintiffs, arguing that it weighed in favor of sanctions, including: (1) Amazon prevailing on all eight issues raised in its motion to compel and on all four issues Plaintiffs raised in their motion to compel; (2) Plaintiffs withholding the Settlement Agreement with RNSO and Mr. Young, which demonstrates that Plaintiffs encouraged RNSO to continue selling accused products on Amazon while continuing their lawsuit against Amazon concerning the same sales; (3) Plaintiffs pursuing a meritless objection Mr. Young's deposition; and (4) Plaintiffs including false statements in their stipulated judgment pursuant to their settlement with RNSO and Mr. Young.  [Filing No. 161 at 9-14.]

Plaintiffs filed a motion seeking an extension of time to respond to Amazon's Motion for Sanctions.  [Filing No. 165.]  In the motion, Plaintiffs indicated that one of their arguments in response to the Motion for Sanctions would be that the Motion for Sanctions was untimely because it was filed after the dispositive motion deadline established in the Case Management Plan.  [Filing No. 165 at 2-3.]  Amazon opposed Plaintiffs' request for an extension, arguing in relevant part that a motion to strike the Motion for Sanctions as untimely would be frivolous.  [Filing No. 167 at 3-4.]  In reply, Plaintiffs maintained that a motion to strike the Motion for Sanctions as untimely would not be frivolous.  [Filing No. 168 at 2.]  Judge Dinsmore granted Plaintiffs an extension of time to respond to the Motion for Sanctions, and in doing so stated: "In

addition, the Court notes that Plaintiffs' suggestion that Defendant's motion for sanctions should be stricken because it seeks the sanction of dismissal but was filed after the dispositive motion deadline is utterly without merit, and Plaintiffs' counsel is reminded that making frivolous arguments may subject him to sanctions pursuant to 28 U.S.C. § 1927." [Filing No. 169.]

In response to the Motion for Sanctions, Plaintiffs maintained that their response to Interrogatory No. 6 was complete and truthful because they did not know and could not calculate their revenues on a quarterly basis for each of their products since July 1, 2012. [Filing No. 189 at 2.] Plaintiffs asserted that this was confirmed by Ms. Gabet's and Annie Oakley's combined deposition. [Filing No. 189 at 2-4.] During the deposition, Ms. Gabet testified that prior to 2019, Annie Oakley did not have a point of sale system in their studio, but instead conducted sales "the old-fashioned way." [Filing No. 190-6 at 4.] When asked to elaborate, Ms. Gabet stated:

> A: Just a register, and it would add up the receipts and make the -- pay the credit card. Actually, we would do that manually, and we would just give them a receipt of what they bought.
>
> Q: Would the receipt list the particular products that were purchased?
>
> A: No.

[Filing No. 190-6 at 4.] The following exchange occurred regarding Annie Oakley's system for tracking inventory:

> Q: But when you generate products through production, you don't have a system that says now 20 of these products exist?
>
> A: No.
>
> Q: You've never had that system, never had a system like that?
>
> A: No. We tried and it never worked.
>
> Q: Why is that?

A: It just -- the system that we had did not accommodate it.

[Filing No. 190-6 at 6.]  Ms. Gabet explained, "It's much easier to do it the old-fashioned way," and then the following exchange took place:

Q: When you do a hand count, do you generate records?

A: Like inventory on hand?

Q: Yes.

A: Just on my -- no, I don't generate records.  I do a hand count to make purchases for raw materials and when it's done, it's done.

[Filing No. 190-6 at 6.]

Plaintiffs also relied in part on Ms. Gabet's declaration, in which she explained some of Annie Oakley's record keeping procedures as follows.  [*See* Filing No. 190-7.]  Concerning in-store sales, Ms. Gabet explained that prior to 2017, Annie Oakley did not use any kind of point of sale system and did not keep any records of sales because "it was unnecessary, as we could visually see all products, observe when we were getting low on something, and make new products."  [Filing No. 190-7 at 1-2.]  After 2017, Annie Oakley began using a barcode-based point of sale system for in-store sales, but because most of the products using the trademark RISE 'N SHINE do not have barcodes, records from the point of sale system do not reflect all of the sales of RISE 'N SHINE products since 2017.  [Filing No. 190-7 at 2-3.]  For wholesale sales, Annie Oakley did not keep copies of customer invoices, and instead "disposed of them in the normal course of business after they were paid by the customer."  [Filing No. 190-7 at 3.]  In 2019, Annie Oakley updated their bookkeeping system to QuickBooks, but that system does not contain all RISE 'N SHINE branded products because Annie Oakley "was just too busy" to enter them, and in any event the system does not itemize all sales of RISE 'N SHINE branded products.  [Filing No. 190-7 at 6.]  Annie Oakley cannot obtain complete sales data from its

10

previous bookkeeping system because not all RISE 'N SHINE products were entered into that system and because the data in that system was inaccurate or corrupted.  [Filing No. 190-7 at 5-6.]  According to Ms. Gabet, Annie Oakley also does not have complete sales data concerning its website sales, because its storefront solutions system has been discontinued, there is no way to transfer the historical data to the new storefront system, and the entity that maintained the historical data is now defunct.  [Filing No. 190-7 at 6-7.]  Furthermore, while Annie Oakley produced to Amazon reports from their new storefront system showing sales made as of August 2020, that information is incomplete.  [Filing No. 190-7 at 7-8.]

Plaintiffs also asserted that they had not engaged in any "additional bad faith conduct" as Amazon suggested.  [Filing No. 189 at 9-14.]  Specifically, Plaintiffs maintained that: (1) their positions regarding the various motions to compel were not unreasonable; (2) their decision not to produce the Settlement Agreement and their objection to Mr. Young's deposition were not made in bad faith; and (3) they have not submitted false statements to the Court.  [Filing No. 189 at 9-14.]  Finally, contrary to Judge Dinsmore's admonition, Plaintiffs argued that Amazon's Motion for Sanctions should be denied as untimely because it was filed after the dispositive motions deadline established in the Case Management Plan.  [Filing No. 189 at 14-15.]

Considering all of this information, Judge Dinsmore subsequently issued his R&R recommending that Amazon's Motion for Sanctions be granted.  [Filing No. 221.]  Specifically, Judge Dinsmore concluded:

> [I]t appears that Plaintiffs' assertion that they cannot calculate their revenues on a quarterly basis for each of the relevant products since July 1, 2012, is literally true.  Because of the manner in which Plaintiffs kept their records in the ordinary course of their business, Plaintiffs do not have, and have never had, sales information for each of their products.  But it is equally clear that they have had some revenue information about some of their products for at least some periods of time.  Plaintiffs were obligated to produce that information in response to Interrogatory No. 6.  They did not do so, and, in fact, still have not done so.  They

11

did produce certain reports and other documents that contain responsive information, and the undersigned is satisfied by their explanation of why they do not have additional responsive information.  However, they have not even attempted to demonstrate that the document production satisfied their obligation to respond to the interrogatory.  Therefore, Plaintiffs have failed to comply with the Court's order to provide a complete and unequivocal response to Interrogatory No. 6.

[Filing No. 221 at 10-11 (internal citations omitted).]  Judge Dinsmore found, however, that Plaintiffs' failure to properly respond to Interrogatory No. 6 did not warrant dismissal of the case, noting that Plaintiffs' supplemental response "expressly eliminated any claim for lost profits and provided the responsive information that they had, albeit not in the form of a proper interrogatory answer."  [Filing No. 221 at 12.]  Judge Dinsmore also acknowledged that "[w]hile it certainly would have been preferable for Plaintiffs to provide a complete explanation of why they lacked additional responsive information along with their supplemental response, Plaintiffs have done so now, and presumably would have done so during their deposition if Amazon had pursued that line of questioning."  [Filing No. 221 at 12-13.]  In addition, Judge Dinsmore determined that the prejudice to Amazon related to its lack of knowledge of Plaintiffs' revenues is not the result of Plaintiffs' failure to properly respond to Interrogatory No. 6, "but rather was caused by the manner in which Plaintiffs operated their business," which created records concerning only a small subset of revenue information.  [Filing No. 221 at 13.]  As for the other alleged bad faith conduct, Judge Dinsmore noted: (1) the positions Plaintiffs took regarding the discovery disputes do not justify dismissal because "[t]here is a difference between losing discovery motions and misconduct"; (2) Amazon cited no authority for the proposition that it is improper for parties to stipulate to inaccurate facts in an agreed judgment; and (3) to the extent the facts in the agreed judgment were false, Plaintiffs did not defraud the Court because the false statements were not material to any issue then before the Court and the Court was not misled, rather "the Court

simply performed the ministerial act of entering the judgment stipulated to by the parties."

[Filing No. 221 at 12-15.]  Ultimately, Judge Dinsmore recommended that:

> [T]he appropriate sanction for Plaintiffs' failure to properly respond to Interrogatory No. 6 after being ordered to do so by the Court is to bar Plaintiffs from seeking actual damages of any kind in this case.   Plaintiffs have affirmatively stated that they are not seeking to recover "monetary damages comprising lost profits from lost sales"; to the extent that they intended to seek any other form of actual damages, they may not do so.  In addition, Plaintiffs should also be barred from introducing any evidence, testimony, or argument regarding their own revenues or the quantity of their own sales. . . . Because Plaintiffs have failed to properly provide their revenues data in discovery—in part because they do not have it, and in part because they failed to use the information they do have to craft an appropriate interrogatory response—they will not be permitted to use any such data at trial. Amazon is not required to prove the absence of significant revenues by Plaintiffs, and Plaintiffs will not be able to present evidence about their own revenues.
>
> The undersigned further finds that Amazon should be permitted to recover its attorney's fees for the briefing of the instant motion. This is appropriate because Plaintiffs failed to provide a viable explanation for their assertion that they could not provide a complete response to the interrogatory until their response to the instant motion. In addition, if Amazon can reasonably document the time its counsel spent analyzing the documents provided by Plaintiffs along with their supplemental response—work that Plaintiffs should have done as part of their interrogatory response—Amazon will be permitted to recover for that as well.

[Filing No. 221 at 16-17.]  Finally, Judge Dinsmore observed that Plaintiffs failed to heed his warning not to raise the frivolous argument that the Motion for Sanctions was untimely because it was filed after the dispositive motion deadline.  [Filing No. 221 at 17.]  In doing so, Judge Dinsmore noted that "the sanctions motion would not have been subject to the dispositive motion deadline, which clearly applies only to motions seeking to dispose of some or all of the case on the merits," and he recommended that "pursuant to 28 U.S.C. § 1927, Plaintiffs' counsel, Paul Overhauser, be required to personally pay that portion of any attorney's fees award that can be attributed to responding to this frivolous argument, which counsel advanced after being admonished not to do so."  [Filing No. 221 at 17-18.]

Separately, on April 30, 2021, Judge Dinsmore issued an order granting Amazon's Motion for Attorneys' Fees. [Filing No. 229.] In doing so, Judge Dinsmore rejected Plaintiffs' argument that the holding in *Assessment Technologies v. Wiredata*, 361 F.3d 434, 439 (7th Cir. 2004), rendered it improper to use the lodestar method to determine the appropriate fee award, noting that Plaintiffs cited no cases outside the copyright context that follow that rule and that Plaintiffs provided no suggestion as to how the Court could apply that rule to this case "since, unlike in *Assessment Technologies*, the fees arrangement in this case does not provide for a flat fee for a particular task or case, but rather for an entire year's worth of legal work." [Filing No. 229 at 5-6.] Judge Dinsmore concluded that, "[w]ith one exception, . . . Plaintiffs' position with regard to the discovery disputes addressed in the motions to compel were not substantially justified." [Filing No. 229 at 7-10.] As for the amount of fees, Judge Dinsmore determined that a reasonable hourly rate for Amazon's counsel was $525.00 per hour for attorney Robert Cruzen and $325.00 per hour for attorney Amy Dachtler. [Filing No. 229 at 11-16]. Judge Dinsmore then found, after reviewing the submitted billing records from both attorneys, that the time billed was not excessive given the number and nature of the discovery issues that were litigated. [Filing No. 16-22.] Judge Dinsmore reduced the fees for responding to Plaintiffs' Motion to Compel by fifty percent to account for the fact that Plaintiffs' position regarding the privilege issues, while ultimately unsuccessful, was indeed substantially justified. [Filing No. 229 at 21.] Accordingly, Judge Dinsmore awarded a total fee of $86,448.50. [Filing No. 229 at 21.] Furthermore, because Judge Dinsmore found "there is no indication that Plaintiffs themselves were the driving force behind any of the decisions regarding Plaintiffs' discovery responses and related motions in this case," he ordered the fee to be paid by Plaintiffs' counsel, Overhauser Law Offices, LLC. [Filing No. 229 at 21.]

On May 3, 2021, Plaintiffs filed their Objection to Magistrate Judge's Report and Recommendation on Amazon's Motion for Sanctions. [Filing No. 231.] On May 14, 2021, Plaintiffs filed their Objection to and Motion to Reconsider Magistrate Judge's Ruling on Motion for Attorneys' Fees. [Filing No. 239.] On May 19, 2021, Amazon filed its Motion for Leave to File Surreply in Opposition to Plaintiffs' objection relating to the Motion for Sanctions, [Filing No. 242] and Motion to Maintain Document Under Seal relating to the proposed surreply, [Filing No. 244.] These motions are ripe for the Court's review.

## II.
## MOTION FOR ATTORNEYS' FEES

### A.  Legal Standard

Review of a magistrate judge's decision on a non-dispositive[2] motion is deferential, and the Court may sustain an objection to such an order only where it is "clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a); 28 U.S.C. § 636(b)(1)(A). An order is clearly erroneous "only if the district court is left with the definite and firm conviction that a mistake has been made." *Weeks v. Samsung Heavy Indus. Co., Ltd.,* 126 F.3d 926, 943 (7th Cir. 1997). "An order is contrary to law when it fails to apply or misapplies relevant statutes, case law, or rules of procedure." *Pain Center of SE Ind., LLC v. Origin Healthcare Solutions, LLC,* 2014 WL 6674757, *2 (S.D. Ind. 2014) (citations and quotation marks omitted).

---

[2] The Court acknowledges that there is a split of authority among district courts in this Circuit concerning whether awarding fees and costs under Rule 37 is a dispositive or a non-dispositive matter, and the Seventh Circuit Court of Appeals has never squarely addressed the issue. *See Cage v. Harper,* 2020 WL 1248685, at *5 (N.D. Ill. Mar. 16, 2020) (collecting cases). However, "[e]very United States Court of Appeals that has examined the issue directly has held that a Rule 37 award of attorneys' fees and costs is a nondispositive order," *id.* at *1, and this Court is among those that have applied the clearly erroneous or contrary to law standard of review when reviewing a magistrate judge's order relating to fees under Rule 37, *see Alerding Castor Hewitt LLP v. Fletcher,* 2019 WL 1746284, at *1-2 (S.D. Ind. Apr. 18, 2019). The Court concludes that this is the appropriate standard of review and, in any event, it is the standard that Plaintiffs invite the Court to apply. [*See* Filing No. 239 at 3.]

### B.  Discussion

Plaintiffs argue that in awarding fees to Amazon on a lodestar basis, Judge Dinsmore misapplied *Assessment Technologies* and ignored its holding that the amount of the flat fee paid to an attorney is the ceiling for what a court can award.  [Filing No. 239 at 4-6.]  According to Plaintiffs, because Amazon did not reveal the amount of the yearly flat fee it pays its counsel, "[i]t is reasonable to assume that this information would be unfavorable to Amazon," and failure to disclose it renders the Motion for Attorneys' Fees "fatally defective."  [Filing No. 239 at 6.] Plaintiffs contend that Judge Dinsmore's failure to properly apply *Assessment Technologies* was error because: (1) it improperly shifted the burden of proof to establish the reasonableness of the fee from Amazon to Plaintiffs; and (2) "it confirms Amazon's failure to specify what portion of the 'entire year's worth of legal work' was attributable to the motion to compel."  [Filing No. 239 at 6 (emphasis omitted).]  Plaintiffs assert that "Amazon was not charged a penny of additional fees for the motion to compel," and "[e]ven if the Court thought it appropriate to allocate some portion of the legal time provided at a fixed-fee for the work on the motion to compel, Amazon had the burden to establish that percentage."  [Filing No. 239 at 6 (emphasis omitted).]

In response, Amazon argues that Plaintiffs do not object to Judge Dinsmore's findings that Plaintiffs were not substantially justified in any but one of their positions argued in the parties' motions to compel or that Amazon is entitled to mandatory attorneys' fees pursuant to Rule 37(a)(5)(A) and (B).  [Filing No. 246 at 5-6.]  Instead, Amazon asserts, Plaintiffs' objection is based only on the incorrect premise that Judge Dinsmore erred in using the lodestar method to calculate the amount of the fee.  [Filing No. 246 at 6.]  Amazon asserts that *Assessment Technologies* does not apply to cases outside the copyright context because it involved the permissive fee-shifting provision of the Copyright Act, and in any event, the facts of that case are

distinguishable because *Assessment Technologies* involved task-specific flat fees as a part of a fee award determined at the end of the case, while the present case involves a yearly flat fee covering all work on this and other cases and a fee award that is specific to particular discovery disputes, rather than based on the success of the case as a whole.  [Filing No. 246 at 6-9.]  Even if *Assessment Technologies* did apply, Amazon contends, it would not change the result because the flat fee exceeds the amount of fees awarded and Plaintiffs point to no authority supporting the argument that failure to disclose the amount of the flat fee renders the motion for fees "fatally defective."  [Filing No. 246 at 11-12.]  Amazon maintains that Plaintiffs do not object to Judge Dinsmore's determinations concerning the reasonableness of its attorneys' hourly rates or the number of hours expended.  [Filing No. 246 at 9-11.]  Amazon further argues that it should be awarded additional attorneys' fees for responding to Plaintiffs' objection if the Court overrules the objection.  [Filing No. 246 at 12-13.]

In reply, Plaintiffs reiterate that *Assessment Technologies* "holds that when a client pays a fixed-fee for legal services, that fee is a 'cap' for an attorney's fee award" and "[t]hus, it is improper to use a lodestar methodology to calculate a fee award."  [Filing No. 251 at 1.]  They argue that Amazon has not met its burden of proof to establish a reasonable fee, and therefore any fee award is improper.  [Filing No. 251 at 1-2.]  Plaintiffs assert that *Assessment Technologies* does not only apply to copyright cases and that Amazon's failure to disclose the amount of the flat fee it pays its counsel is fatal to its claim for fees because "[i]t would have been easy for Amazon's counsel to inform the court of what percentage the value of that time spent on the motion to compel was of the value of the total time that counsel provided for Amazon during the year on a fixed fee basis" based on counsel's records of the time worked on matters related to the motion to compel.  [Filing No. 251 at 2-4.]  According to Plaintiffs, "it is

17

impossible for the Court to calculate a reasonable fee consistent with *Assessment Technologies* because Amazon failed to make a *prima facie* showing that it incurred any additional attorney's fees as a result of the motion to compel." [Filing No. 251 at 4.]  Finally, Plaintiffs argue that Amazon should not be permitted to recover additional fees for responding to Plaintiffs' Objection in the event that the Objection is overruled, because: (1) as a result of the fixed fee arrangement, Amazon did not incur any additional fees in responding to the Objection; and (2) the request for additional fees violates Local Rule 7-1(a), which provides that a motion must not be contained within a brief, response, or reply to a previously filed motion.  [Filing No. 251 at 6.]

In *Assessment Technologies*, a copyright case, the defendant prevailed on the merits and then sought an award of attorneys' fees under the fee-shifting provision of the Copyright Act, 17 U.S.C § 505.[3]  361 F.3d at 435-36.  In relevant part, the defendant's lawyer billed the defendant "$7,849.05 for 68.7 hours of work spent challenging the plaintiff's request in the district court for an award of attorneys' fees, plus a flat fee of $7,500 for work on the wording of [an] injunction and another flat fee of $17,500 for representing the defendant on appeal." *Id.* at 438.  However, the defendant's counsel asked the court to award fees in excess of the flat fees based on the number of hours the lawyer actually worked on the injunction and the appeal.  *Id.*  The Seventh Circuit rejected this approach, concluding that the flat fee amounts set the ceiling for the fees the lawyer could be awarded for the hours spent working on the injunction and on the appeal.  *Id.* at 439.  In other words, regardless of the number of hours spent on each of those tasks, the attorney could only recover up to $7,500 for the time spent working on the wording of the injunction, and up to $17,500 for representing the defendant on appeal.  *Id.*  In reaching this conclusion, the

---

[3] That provision states that "[i]n any civil action under [Title 17], the court in its discretion may allow the recovery of full costs by or against any party," and "may also award a reasonable attorney's fee to the prevailing party as part of the costs."  17 U.S.C.A. § 505.

Seventh Circuit noted that "[t]he best evidence of the value of the lawyer's services is what the client agreed to pay him." *Id.* at 438. Ultimately, the court awarded the defendant's counsel the full amount of both flat fees, plus fees billed at an hourly rate for time spent on other matters. *Id.* at 439.

Plaintiffs have not provided, and the Court's research has not revealed, any case outside of the copyright context applying the flat fee rule established in *Assessment Technologies*. And, as Judge Dinsmore aptly noted, the Seventh Circuit's subsequent discussion of *Assessment Technologies* in a later case—in which, the Court emphasizes, Mr. Overhauser served as counsel—implicitly indicate that its holding is limited to the copyright context. *See Bell v. Lantz*, 825 F.3d 849, 854 (7th Cir. 2016) ("In [*Assessment Technologies*], we held that *in a copyright case* 'the best value of the lawyer's services is what the client agrees to pay him,' and therefore agreed with the Third Circuit . . . that the contract between a party and his lawyer places a ceiling on what a court can award the lawyer *in such cases*." (emphasis added)).

In any event, the argument over whether or not *Assessment Technologies* applies in this context is beside the point. Even assuming it applies, it does not change the result. To the extent that Plaintiffs argue that *Assessment Technologies* establishes that lawyers who are paid a fixed amount per year or per case must (1) disclose that amount and (2) establish what percentage of that amount is equal to the amount of fees that can be recovered for litigating a particular discovery dispute, that is a gross overreading of the case. All that *Assessment Technologies* establishes is that a lawyer who is paid a fixed fee for a particular task cannot recover more than the amount of that fee for work done on that task, regardless of the hours actually spent on that task. That is not the situation here. Amazon's counsel was not paid a flat fee to conduct discovery, or to litigate discovery issues, or to pursue and defend the motions to compel.

Accordingly, the rule that a lawyer may only recover up to the amount of a task-specific flat fee for work performed on a particular task is inapposite.  Nevertheless, Amazon's counsel, Mr. Cruzen, declared under penalty of perjury that the flat yearly fee exceeds the amount of attorneys' fees awarded by Judge Dinsmore.  Given that declaration, the Court need not know any additional information about the fee arrangement, such as the amount of the yearly flat fee, to determine that *Assessment Technologies* does not bar the recovery of attorneys' fees by Amazon in this situation.

Furthermore, "[t]he lodestar approach forms the 'centerpiece' of attorneys' fee determinations," *Pickett v. Sheridan Health Care Ctr.*, 664 F.3d 632, 639 (7th Cir. 2011), and this Court has previously observed that "the lodestar calculation is applied to contingency fees and fixed fee arrangements," *Eli Lilly & Co. v. Arch Ins. Co.*, 2017 WL 3535135, at *2 (S.D. Ind. Aug. 17, 2017) (citations omitted).  Plaintiffs provide no authority for their contrived proposition that the appropriate fee should be calculated in some other unspecified way, as some percentage of the yearly flat fee Amazon pays its counsel corresponding to the proportion of time spent on discovery matters relative to time spent on the case as a whole.  *Assessment Technologies* says nothing about the way in which a fee award should be calculated, other than setting a ceiling on certain types of fee awards.  And, more importantly, the Seventh Circuit in *Assessment Technologies* used the lodestar method (number of hours worked multiplied by hourly rate) to calculate the relevant attorneys' fees before reducing them to the ceiling created by the task-specific flat fees.  *See* 361 F.3d at 438.  In sum, there is no support for Plaintiffs' position that the lodestar method may not be used to determine attorneys' fees, even where flat fee arrangements may set a ceiling on recoverable fees.  Judge Dinsmore's rejection of Plaintiffs' *Assessment*

*Technologies* argument and his use of the lodestar method to calculate a reasonable fee were neither clearly erroneous nor contrary to law.

Plaintiffs do not specifically challenge any of Judge Dinsmore's other conclusions, such as the reasonableness of the hourly rates and number of hours worked, or that the fee should be paid by Plaintiffs' counsel rather than by Plaintiffs' themselves. Regardless, the Court finds that these determinations were not clearly erroneous or contrary to law.

For the foregoing reasons, Plaintiffs' Objection to and Motion to Reconsider Magistrate Judge's Ruling on Motion for Attorneys' Fees, [239], is **OVERRULED** and **DENIED**, and Judge Dinsmore's Order on Motion for Attorneys' Fees, [229], is **AFFIRMED**. Amazon is awarded **$86,448.50 in attorneys' fees**, and such award shall by paid by Plaintiffs' counsel, Overhauser Law Offices, LLC, within **30 days** of the date of this Order. If Amazon wishes to recover additional attorneys' fees for time spent responding to Plaintiffs' Objection, Amazon may file a fee motion within **14 days** of this Order. Further briefing on that motion shall be conducted in accordance with Local Rule 7-1.[4]

### III.
### MOTION FOR SANCTIONS AND RELATED MATTERS

#### A. Legal Standard

The Court must review *de novo* a Magistrate Judge's report and recommendation regarding a motion for sanctions. *Retired Chicago Police Ass'n v. City of Chicago*, 76 F.3d 856, 869 (7th Cir. 1996) (noting that "resolution of a sanctions request is a dispositive matter capable of being referred to a magistrate judge only under [28 U.S.C.] § 636(b)(1)(B) or § 636(b)(3)"). When conducting a *de novo* review of the Magistrate Judge's recommendation, "[t]he district

---

[4] In briefing any potential fee motions going forward in this case, the parties should keep in mind the Court's above determinations regarding *Assessment Technologies*. The parties are cautioned not to raise arguments that have already been rejected.

judge may accept, reject, or modify the recommended disposition." Fed. R. Civ. P. 72(b)(3); *see also* 28 U.S.C. § 636(b)(1) ("A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge.").  "However, the Court need only conduct a *de novo* review of objections made to specific portions of the report, findings, or recommendations made by a magistrate judge." *Clark v. Wexford Health Sources, Inc.*, 2019 WL 1375974, at *2 (S.D. Ill. Mar. 27, 2019) (citing, *inter alia*, 28 U.S.C. § 636(b)(1) ("A judge shall make a de novo determination of those *portions* of the report or specified proposed findings or recommendations to which objection is made.") (emphasis added); *Johnson v. Zema Sys. Corp.*, 170 F.3d 734, 741 (7th Cir. 1999) ("[A] litigant [must] specify each issue for which review [of an R&R] is sought.")).

## B.  Discussion

Plaintiffs object to Judge Dinsmore's R&R on Amazon's Motion for Sanctions, arguing that it would be error for the Court to adopt the R&R to the extent that it: (1) imposes any kind of sanction on Plaintiffs related to their response to Interrogatory No. 6; and (2) imposes sanctions on Plaintiffs' counsel, Mr. Overhauser, for arguing that the Motion for Sanctions was untimely. [Filing No. 231 at 1-2.]  The Court will address each issue in turn, and will then separately consider the other allegations of bad faith conduct raised by Amazon.

### 1.  Sanctions Against Plaintiffs

Plaintiffs argue that sanctions are not warranted because they did not fail to comply with any Court order.  [Filing No. 231 at 5-7.]  They argue that Interrogatory No. 6 only sought "revenues on a quarterly basis for each of Plaintiffs' Products since July 1, 2012" and because, as Judge Dinsmore found, they do not have and cannot calculate revenues on a quarterly basis for each product, their responses stating as much were complete and accurate.  [Filing No. 231 at 6.]

According to Plaintiffs, Judge Dinsmore's conclusion that they were obligated to provide "some revenue information about some of their products for at least some periods of time" was incorrect because Interrogatory No. 6 "did not ask for 'some revenue information'" but instead specifically sought complete quarterly revenue figures by product, which do not exist and cannot be determined. [Filing No. 231 at 6.] Plaintiffs argue that they "should not be sanctioned just because [they do] not have information Amazon wishes [they] had," and the Court should not adopt the sanctions suggested in the R&R. [Filing No. 231 at 6-7.] Plaintiffs point out that, in response to other discovery requests, they produced financial information including invoices, profit and loss statements, and corporate and personal tax returns. [Filing No. 231 at 6.] Plaintiffs further observe that although the R&R stated that they have not attempted to comply with the requirements of Federal Rule of Civil Procedure 33(d) to demonstrate that their document production satisfied their obligation to respond to Interrogatory No. 6, "[t]his does not support a sanction because [Plaintiffs] never invoked Rule 33(d)," and therefore "there was never a reason for [Plaintiffs] to demonstrate that the uninvoked document production 'satisfied their obligation to respond to the interrogatory.'" [Filing No. 231 at 7.] Plaintiffs argue that because no sanction is appropriate, it would be error for the Court to adopt the recommendation that attorneys' fees be awarded, and in any event, Amazon's Motion for Sanctions did not seek an award of attorneys' fees. [Filing No. 231 at 2.]

Amazon responds that "Plaintiffs essentially argue that because they could not provide *all* of the information sought by Amazon's Interrogatory No. 6, they were necessarily excused from providing *any* information," and that Judge Dinsmore correctly rejected that argument. [Filing No. 237 at 5 (emphasis in original).] Amazon points out that at the time the Court issued its Order directing Plaintiffs to respond to Interrogatory No. 6, Plaintiffs had already responded

stating that they did not know and could not calculate revenues for each product on a quarterly basis, and therefore the Court had already contemplated that Plaintiffs could not respond fully and instead "ordered [P]laintiffs to respond to the interrogatory with the relevant information they indisputably *do possess*, even providing guidance to invoke Fed. R. Civ. P. 33(d) if needed." [Filing No. 237 at 7] (emphasis original) (discussing Filing No. 108).]  However, Amazon argues, Plaintiffs did not provide any additional information and instead referenced in their supplemental response that documents they were able to produce would include revenue information, although such reference did not identify any specific documents produced as required by Rule 33(d). [Filing No. 237 at 8-9] (citing Filing No. 190-2 at 6).]  Amazon contends that Plaintiffs admit that they possess relevant information responsive to Interrogatory No. 6 but have not provided it. [Filing No. 237 at 10.]  According to Amazon, the financial documents that Plaintiffs produced in response to other discovery requests does not excuse their failure to properly respond to Interrogatory No. 6 because: (1) "the production of documents does not provide in a single response a clean accounting of plaintiffs' own revenues (to the extent they tracked them)"; (2) "the production of documents also carries less weight than an interrogatory response verified by plaintiffs"; and (3) Plaintiffs do not object to Judge Dinsmore's finding that Amazon cannot obtain the same information from the produced documents that Plaintiff can, because the produced documents use internal codes that Amazon cannot decipher.  [Filing No. 237 at 10-11.] Amazon further asserts that Plaintiffs' contention that they were not required to particularly identify the relevant documents because they did not rely on Rule 33(d) to respond to Interrogatory No. 6 is "disingenuous and misleading" because Plaintiffs continually reference their production of financial documents in their supplemental interrogatory responses and in their briefing on the Motion for Sanctions.  [Filing No. 237 at 11-12.]  Amazon argues that the Court

should adopt the recommended sanctions barring Plaintiffs from seeking actual damages or introducing evidence regarding their revenues because Plaintiffs "do not contend that the sanctions ordered are disproportionate or inappropriate if their conduct is found to be sanctionable[,] . . . [or] cite any cases or authority holding that the recommended sanctions are improper." [Filing No. 237 at 13.]  Further, Amazon contends that the sanctions appropriately address the prejudice it suffered as a result of Plaintiffs' failure to respond to Interrogatory No. 6 and relate directly to Plaintiffs' disregard of this Court's orders.  [Filing No. 237 at 13.]  Amazon also argues that an award of attorneys' fees is appropriate under Federal Rule of Civil Procedure 37(b) and pursuant to the Court's inherent authority to impose sanctions because Plaintiffs failed to obey Court orders to provide discovery.  [Filing No. 237 at 14.]  In fact, Amazon argues, Rule 37(b)(2)(C) *requires* a disobedient party to pay attorneys' fees unless there was substantial justification for the failure to comply or other circumstances that would make the award unjust, and Plaintiffs have not addressed this mandatory provision or attempted to show that one of the two exceptions applies.  [Filing No. 237 at 14-15.]

    In reply, Plaintiffs maintain that they should not be barred from seeking actual damages or introducing evidence related to their revenues because they did not violate a Court order.  [Filing No. 241 at 1-2.]  Plaintiffs reiterate that they do not have and cannot calculate quarterly revenues by product, and therefore they completely responded to Interrogatory No. 6 to the extent possible and they were under no obligation to provide additional or incomplete revenue information because Interrogatory No. 6 did not ask for that.  [Filing No. 241 at 2-4.]  Nonetheless, Plaintiffs argue, they provided "other information" showing Annie Oakley's revenues, including its tax returns, and "Amazon never asked for anything further in any meet and confer, so it was reasonable for [Plaintiffs] to believe that Amazon was satisfied."  [Filing

No. 241 at 2.]   According to Plaintiffs, they were not required to comply with Rule 33(d) in referencing these documents because they did not invoke Rule 33(d), and they "should not be sanctioned for calling out [their] other helpful discovery responses." [Filing No. 241 at 3; Filing No. 241 at 6.]   Plaintiffs contend that Amazon "grossly mischaracterize[s] the record" by including in their brief an excerpt of a document produced by Plaintiffs using an internal code, because that document did not show a sale within the period of time for which sales information was sought.   [Filing No. 241 at 4-5.]   As for attorneys' fees, Plaintiffs argue that Amazon's argument regarding attorneys' fees in connection with the Motion for Sanctions "is irrelevant and should be ignored" because the R&R "does not award Amazon attorneys' fees just for bringing its Motion for Sanctions" and "[i]n fact, that Motion did not even request attorney's fees." [Filing No. 241 at 6-7 (emphasis omitted).]

In response to Plaintiffs' reply, Amazon filed a Motion for Leave to File a Surreply, requesting permission to file a surreply addressing Plaintiffs' argument, raised for the first time in their reply brief, that the document cited by Judge Dinsmore in his R&R and by Amazon in its response evidencing the use of internal codes is irrelevant, because it is outside the date range of Interrogatory No. 6 and shows zero revenue.   [Filing No. 242.]   The Court generally disfavors the filing of surreply briefs except for in very limited circumstances, and certainly did not contemplate that a surreply would be necessary here after advising Plaintiffs that no reply brief was necessary in the first place.   [*See* Filing No. 232.]   Nevertheless, in the interest of fully and finally resolving the dispute related to Interrogatory No. 6, which has already consumed an inordinate amount of resources from everyone involved, the Court **GRANTS** Amazon's motion to the extent that it will consider the proposed surreply brief, [Filing No. 243], and the attached exhibits, [Filing No. 243-1; Filing No. 243-2], in evaluating Plaintiffs' Objection.

26

In its surreply, Amazon argues that Plaintiffs produced evidence of numerous sales where the records list an indecipherable product code and where the sales fall within the date range addressed in Interrogatory No. 6 and reflect revenue.  [Filing No. 243 at 3.]  Amazon includes a sales report and a product receipt produced by Plaintiffs during discovery, [Filing No. 243-1 at 243-2], and asserts that these documents show that Plaintiffs' "continued protestations that they possess *no information at all* that would allow them to calculate any revenues by product on a quarterly basis are false, and further warrant the imposition of sanctions."  [Filing 243 at 4 (emphasis in original).]

In its Motion to Maintain Document Under Seal, Amazon requested that the proposed surreply and the exhibits filed therewith "be filed under seal and maintained provisionally under seal until plaintiffs have had the opportunity to provide the Court with their justification for sealing all or part of the document in accordance with Local Rule 5-11," because the exhibits were previously designated as confidential by Plaintiffs.  [Filing No. 244 at 1.]  Plaintiffs have not, however, responded to Amazon's motion or otherwise provided the Court with any justification for sealing the surreply or the exhibits.  Accordingly, Amazon's Motion to Maintain Document Under Seal, [Filing No. 244], is **DENIED** and the Clerk is **DIRECTED** to **UNSEAL** Filing No. 243; Filing No. 243-1; and Filing No. 243-2.

Rule 37(b)(2)(A) authorizes a range of sanctions, including prohibiting the disobedient party from supporting designated claims or introducing designated matters into evidence and the dismissal of a suit, for a party's failure to comply with the court's discovery orders.  Fed. R. Civ. P. 37(b)(2)(A); *see also Ramirez v. T&H Lemont, Inc.*, 845 F.3d 772, 775 (7th Cir. 2016).  The Rule further provides that "[i]nstead of or in addition to" the sanctions listed, "the court must order the disobedient party, the attorney advising that party, or both to pay the reasonable

expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(b)(2)(C). "Apart from the discovery rule, a court has the inherent authority to manage judicial proceedings and to regulate the conduct of those appearing before it, and pursuant to that authority may impose appropriate sanctions to penalize and discourage misconduct." *Ramirez*, 845 F.3d at 776 (citing *Chambers v. NASCO, Inc.*, 501 U.S. 32, 46-50 (1991)).  District courts have considerable discretion in determining the appropriate sanction, and are not required to impose the "least drastic" or "most reasonable" sanction, but "may only impose sanctions that are 'just,' that is, proportionate to the circumstances surrounding a party's failure to comply." *Melendez v. Illinois Bell Tel. Co*., 79 F.3d 661, 670-72 (7th Cir. 1996)

### a. Whether Plaintiffs Failed to Comply with a Court Order

Plaintiffs' principal argument is that they did not in fact fail to comply with any Court order.  To show just how patently incorrect that argument is, the Court begins with a note on appropriate professional conduct.  The preamble to the Standards for Professional Conduct within the Seventh Federal Judicial Circuit, which are incorporated into this Court's Local Rules, advises that "[a] lawyer's conduct should be characterized at all times by personal courtesy and professional integrity in the fullest sense of those terms."  In addition, paragraph 26 of the section titled "Lawyers' Duties to Other Counsel," provides that lawyers "will respond to interrogatories reasonably and will not strain to interpret them in an artificially restrictive manner to avoid disclosure of relevant and non-privileged information."  Underlying the dispute over Interrogatory No. 6 is Plaintiffs' counsel's repeated "straining" to interpret the request in an artificially restrictive manner, despite clear and repeated direction from the Court.

As Plaintiffs have acknowledged many times, there was nothing inherently unreasonable or unexpected about Amazon's request for quarterly revenue information by product.  [*See, e.g.* Filing No. 108 at 6 (Plaintiffs acknowledging that Interrogatory No. 6 "is a perfectly legitimate request by Amazon").]  What was unreasonable, however, was Plaintiffs' insistence that they could not provide any of the requested information.  By the Court's calculation, Plaintiffs have now submitted at least five briefs addressing the issue of their deficient response to Interrogatory No. 6: their response to Amazon's Motion to Compel, [Filing No. 79]; their Objection to Judge Dinsmore's Order on Amazon's Motion to Compel, [Filing No. 108]; their response to Amazon's Motion for Attorneys' Fees, [Filing No. 164]; their response to Amazon's Motion for Sanctions, [Filing No. 189]; and their objection to Judge Dinsmore's R&R on the Motion for Sanctions, [Filing No. 231].  Notably—and inexplicably—it was not until the fourth brief that Plaintiffs finally provided a full and acceptable explanation, backed by evidence in the form of Ms. Gabet's own declaration, of the issues with their data tracking and storage resulting in their inability to produce complete product-by-product revenue data on a quarterly basis.  Also notably—and also inexplicably—that explanation and evidence demonstrated that Plaintiffs do in fact have some revenue information, which they could have provided but still have not.  Plaintiffs' repeated assertion that they were not obligated to provide any of this information because it was not tracked in the specific format requested misses the point.  The Court has explained repeatedly that Plaintiffs were obligated to provide whatever revenue information they had, regardless of whether that information is incomplete.  At this point, the Court is unsure of how it can be any clearer in this instruction.

Plaintiffs are also incorrect in their assertion that, to the extent they pointed to documents produced in response to other discovery requests when responding to Interrogatory No. 6, they

were not required to comply with Rule 33(d).  Plaintiffs expressly stated in their supplemental responses provided to Amazon on August 21 and October 9, 2020 "that documents Plaintiffs are able to produce regarding their revenues would include revenues from Plaintiffs' Products (as defined in the interrogatories)."   [Filing No. 190-2 at 6; Filing No. 190-5 at 13-14.]   If, as Plaintiffs assert, this statement was not intended to invoke Rule 33(d), the statement is utterly meaningless and completely unnecessary, and Plaintiffs' characterization of this statement as a courteous reference to other "helpful" discovery responses is insincere.  The helpful thing to do would have been to use the information contained in the referenced documents to craft an appropriate response to the interrogatory in the first place.  Even after being ordered to do so by the Court, Plaintiffs have persisted in their failure to do so.

"Rule 37(a)(4) treats an evasive and incomplete answer in discovery as equivalent to no answer, and thus a failure to comply with court-ordered discovery."  *Ramirez*, 845 F.3d at 776. "Evasive" and "incomplete" are certainly appropriate words to describe Plaintiffs' responses to Interrogatory No. 6, including the supplemental responses provided following Court orders. Plaintiffs have demonstrated that they have some information—albeit not complete, product-by-product quarterly revenue figures—responsive to Interrogatory No. 6, and they were required to produce that information, especially after the Court ordered them to do so *twice*.  Contrary to Plaintiffs' repeated protestations, the Court never sought to compel Plaintiffs to produce something they did not have; the Court merely sought to compel Plaintiffs to produce *what they did have* in compliance with the rules that govern discovery and the standards of professional conduct.  As of the writing of this Order, Plaintiffs have still failed to produce that information. Accordingly, the Court does not hesitate to conclude that Plaintiffs failed to comply with a discovery order (in fact, multiple discovery orders) and are therefore subject to sanctions under

Rule 37 and pursuant to the Court's inherent authority to regulate the conduct of those appearing before it.

### b.   Propriety of the Recommended Sanctions

Apart from arguing that their conduct was not sanctionable in the first place, Plaintiffs do not raise specific objections to the recommended sanction that they be barred from seeking actual damages of any kind or introducing evidence related to their own revenues.   Regardless, the Court finds that such sanctions are appropriate.   Rule 37(b)(2)(A)(ii) expressly authorizes the Court to prohibit a disobedient party from supporting designated claims or from introducing designated matters into evidence.   Plaintiffs emphasize that they are not seeking to recover lost profits from lost sales, [*e.g.*, Filing No. 231 at 2], but they are pursuing damages claims including damage to reputation and corrective advertising damages, [Filing No. 136 at 4].   Given Plaintiffs' repeated failure to provide the revenue data that they do possess, and given that at least a portion of the revenue data requested does not exist, Plaintiffs are prohibited from: (1) seeking actual damages of any kind in this case; and (2) introducing any evidence, testimony, or argument relating to the amount of their own revenues or the quantity of their own sales.   Nothing in this Order, however, precludes Plaintiffs from seeking the equitable remedy of disgorgement of Amazon's profits.

As for attorneys' fees, Plaintiffs make much of the fact that Amazon's Motion for Sanctions did not request an award of attorneys' fees and they state that the R&R did not recommend awarding attorneys' fees relating to bringing the Motion for Sanctions.   Plaintiffs are incorrect on both fronts.   Judge Dinsmore did in fact recommend awarding Amazon attorneys' fees in connection with the Motion for Sanctions.   [*See* Filing No. 221 at 17 ("The undersigned further finds that Amazon should be permitted to recover its attorney's fees for the briefing of the

instant motion.").]  Moreover, attorneys' fees are mandatory where a party failed to comply with a discovery order.  If a party fails to obey an order to provide or permit discovery, instead of or in addition to imposing sanctions, "the court *must* order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust."  Fed. R. Civ. P. 37(b)(2)(C) (emphasis added).  *See also Cooke v. Jackson Nat'l Life Ins. Co.*, 919 F.3d 1024, 1029 (7th Cir.), *cert. denied*, 140 S. Ct. 134, 205 L. Ed. 2d 46 (2019) ("Rule 37(b)(2)(C) provides that any litigant who disobeys a judge's order with respect to discovery *must* pay the other side's costs, including attorneys' fees." (emphasis added)).  Amazon is entitled to an award of attorneys' fees related to bringing and pursuing its Motion for Sanctions.

For the foregoing reasons, Plaintiffs' Objection to the R&R relating to sanctions against Plaintiffs is **OVERRULED**, and the R&R is **ADOPTED** to the extent that Plaintiffs will be barred from: (1) seeking actual damages of any kind in this case; and (2) introducing any evidence, testimony, or argument relating to the amount of their own revenues or the quantity of their own sales.  Amazon is entitled to recover attorneys' fees in connection with pursuing its Motion for Sanctions, and must file a fee motion within **14 days** setting forth the amount of requested fees.  Further briefing on that motion shall be conducted in accordance with Local Rule 7-1.

2.   Sanctions Against Mr. Overhauser

Plaintiffs argue that Mr. Overhauser should not be sanctioned because he did not file a motion to strike the Motion for Sanctions as untimely, and arguing in the response brief that the Motion for Sanctions should be denied as untimely was reasonable.  [Filing No. 231 at 8-10.]

Specifically, Plaintiffs assert that counsel heeded judge Dinsmore's warning by not filing a separate motion to strike the Motion for Sanctions, and instead complied with Local Rule 56-1(i), which states that collateral motions are disfavored and directs parties to raise collateral issues in their briefs.  [Filing No. 231 at 9.]  Plaintiffs note that the timeliness argument comprised only seven lines at the end of their response brief and maintain that the argument had merit because the Motion for Sanctions sought dispositive relief based on facts Amazon was aware of when it filed its Cross-Motion for Summary Judgment and the Seventh Circuit has held that all sanctions requests constitute dispositive matters.  [Filing No. 231 at 8-9 (citing *Meece v. Ray's, LLC*, 2016 WL 760950, at *1 (S.D. Ind. Feb. 19, 2016) (quoting *Retired Chicago Police Ass'n*, 76 F.3d at 869)).]  Finally, Plaintiffs assert that the Court's referral of the Motion for Sanctions to Judge Dinsmore was limited to determining the proper disposition of the Motion for Sanctions, which did not seek attorneys' fees or other relief under § 1927, and therefore the recommendation that Mr. Overhauser "be liable for Amazon's fees is beyond the scope of both Amazon's Motion and the referral, and should not be adopted."  [Filing No. 231 at 10 (emphasis omitted).]

Amazon responds that Plaintiffs' argument that Judge Dinsmore's admonition not to raise a timeliness argument applied only to the filing of a formal motion to strike—and not to raising the argument within the brief in opposition to the Motion for Sanctions—"is itself absurd and yet one further example of plaintiffs' counsel multiplying litigation expenses in this case."  [Filing No. 237 at 16.]  Furthermore, Amazon argues, the contention that the Motion for Sanctions was untimely is wrong, both on the facts and the law, because: (1) Amazon did not unduly delay in seeking sanctions; (2) Plaintiffs made the timeliness argument without any citation to authority demonstrating that a motion for sanctions is untimely if filed after the dispositive motions

deadline; (3) the suggestion that all sanctions requests constitute dispositive matters and therefore can never be presented after the dispositive motions deadline is "plainly incorrect" because courts routinely sanction parties for trial and post-trial misconduct; and (4) the "suggestion that the Court could never dismiss an action as a sanction after the dispositive motion deadline no matter how egregious a party's conduct makes no sense" because "[t]here is nothing magical about the deadline for filing summary judgement motions that insulates bad faith conduct in this manner."  [Filing No. 237 at 16-18.]

In reply, Plaintiffs maintain that Amazon did unduly delay in filing its Motion for Sanctions, because it knew by November 27, 2020 (fourteen days after this Court's order overruling Plaintiffs' objection to Judge Dinsmore's order on Amazon's Motion to Compel) that Plaintiffs had not supplemented their response to Interrogatory No. 6 but waited until December 23, 2020 (fifteen days after the dispositive motions deadline) to file the Motion for Sanctions. [Filing No. 241 at 7-8.]  Plaintiffs argue that they were not required to cite any authority to establish that the Motion for Sanctions was untimely, because there is no dispute that a dismissal of the case would be dispositive.  [Filing No. 241 at 8.]  Finally, Plaintiffs assert that while Amazon's brief in support of the Motion for Sanctions sought the alternative relief of lesser sanctions, the Motion itself sought only dismissal and therefore constituted a dispositive motion. [Filing No. 241 at 8-9.]

Section 1927 provides that "[a]ny attorney . . .  who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct."  28 U.S.C. § 1927.  The Seventh Circuit has explained that a court has discretion to impose sanctions under § 1927 when an attorney has: (1) "acted in an 'objectively unreasonable manner' by engaging in

'serious and studied disregard for the orderly process of justice'"; (2) "pursued a claim that is 'without a plausible legal or factual basis and lacking in justification'"; or (3) "'pursue[d] a path that a reasonably careful attorney would have known, after appropriate inquiry, to be unsound.'" *Jolly Grp., Ltd. v. Medline Indus., Inc.*, 435 F.3d 717, 720 (7th Cir. 2006) (quoting *Pacific Dunlop Holdings, Inc. v. Barosh*, 22 F.3d 113, 119 (7th Cir. 1994); *Kapco Mfg. Co. v. C & O Enters., Inc.*, 886 F.2d 1485, 1491 (7th Cir.1989)) (alteration in original).  "[A] district court acting under § 1927 is not bound by the parties' motions and may, in its sound discretion, impose sanctions *sua sponte* as long as it provides the attorney with notice regarding the sanctionable conduct and an opportunity to be heard." *Jolly*, 435 F.3d at 720.  In addition, a court may "take into account all of [the attorney's] conduct in [a particular] case and calibrate sanctions accordingly." *Id.*

Section IV of the Case Management Plan, titled "Discovery and Dispositive Motions," states:

> Plaintiffs believe that this case may be appropriate for summary judgment on the issues of validity and ownership of the marks at issue, liability and willfulness, and expect to move for summary judgment on these issues.  Amazon believes that this case may be appropriate for summary judgment on the issues of Amazon's non-liability and non-willfulness, and it expects to move for summary judgment on these issues.  Laches may be a further subject of dispositive motions, subject to discovery on that issue.

[Filing No. 37 at 5.]  Subsequent amendments to the Case Management Plan established the dispositive motions deadlines as follows:

> Plaintiffs shall file any dispositive motion on or before November 10, 2020; Defendant shall respond to Plaintiffs' dispositive motion, and shall include any cross-dispositive motion, on or before December 8, 2020; Plaintiffs shall respond to Defendant's cross-dispositive motion, and shall include any reply in support of Plaintiffs' dispositive motion, on or before January 5, 2021; Defendants shall file any reply in support of cross-dispositive motion on or before January 19, 2021.

[Filing No. 126 at 1-2 (emphasis omitted).]

It is abundantly clear that based on the context in which the phrase is used in the Case Management Plan that the dispositive motions deadline relates to the filing of summary judgment motions.  There is no indication that this deadline also applies to requests for sanctions, and as Judge Dinsmore pointed out, any suggestion that a motion for sanctions filed by Amazon after December 8, 2020 would be untimely is "utterly without merit."  Indeed, it would make absolutely no sense to terminate the parties' ability to seek sanctions at the expiration of the dispositive motions deadline, because sanctionable conduct may be committed at any time—even after the deadline passes—and the Court must retain its ability to handle that conduct appropriately throughout the duration of the entire case.

Moreover, Plaintiffs' citation to *Meece* for the proposition that "[t]he Seventh Circuit Court of Appeals has held that 'all sanctions requests, whether pre- or postdismissal' constitute dispositive matters" is incomplete, inapposite, and ultimately unhelpful.  *Meece* quotes directly from *Retired Chicago Police Association*, which, as already noted in this Order, recognized that "a request for sanctions, regardless of when made, is a dispositive matter capable of being referred to a magistrate judge only under § 636(b)(1)(B) or § 636(b)(3)."  76 F.3d at 869.  When this Court in *Meece* and the Seventh Circuit in *Retired Chicago Police Association* characterized the requests for sanctions as "dispositive," that term was being used at it is used in § 636.  In that context, "dispositive" has a specific meaning.  As another district court has aptly explained:

> [Federal] Rule [of Civil Procedure] 72, which was designed to implement § 636, introduced the terminology 'dispositive' and 'not dispositive' to differentiate those pretrial motions that a magistrate judge can decide by an order having independent effect, subject to reconsideration by the district court on a showing that the order is clearly erroneous or contrary to law, from those that only allow for a recommended disposition through a report and recommendation having no independent effect, with review being *de novo*.

*Cleversafe, Inc. v. Amplidata, Inc*., 287 F.R.D. 424, 426 (N.D. Ill. 2012).

Plaintiffs' argument that Amazon's Motion for Sanctions was untimely is entirely frivolous for these reasons, but there is an even more glaring problem with the argument. The Court, based on its experience handling cases like this one, has developed various practices and procedures designed to achieve an orderly and expedient resolution of cases, including implementing a Case Management Plan (with an incorporated dispositive motions deadline) in each case. The Case Management Plan and its deadlines are not mandated by any statute, rule, or caselaw that the Court must interpret or apply; the Case Management Plan is entirely this Court's creation. In this case, Judge Dinsmore himself signed and implemented the Case Management Plan and each of its amendments. [Filing No. 37; Filing No. 105; Filing No. 126.] So, when Judge Dinsmore expressed to Mr. Overhauser that any contention that the Motion for Sanctions was untimely based on the dispositive motions deadline was frivolous, Mr. Overhauser should have heeded that warning. To persist in the argument that a deadline set by the Court pursuant to procedures devised by the Court has some effect that the Court has already said it does not have is undeniably ludicrous and borderline disrespectful. Without question, this is the type of "objectively unreasonable" conduct, lacking any basis in law or fact or any justification, that a reasonably careful attorney would recognize to be unsound. Indeed, to say that Mr. Overhauser's conduct throughout this case has "unreasonably and vexatiously" multiplied these proceedings is not only accurate, but is likely an understatement. Accordingly, the Court **OVERRULES** Plaintiffs' Objection and **ADOPTS** the R&R to the extent that it recommends that Mr. Overhauser be required to personally pay the portion of Amazon's attorneys' fees that can be attributed to defending against the argument that the Motion for Sanctions was untimely. As noted above, any motion for fees shall be filed by Amazon within **14 days** of this Order and

briefed in accordance with Local Rule 7-1.  That motion shall also address the portion of fees that can be attributed to defending against the timeliness argument.

### 3.   Other Allegations of Misconduct Raised by Amazon

For the reasons described above, Plaintiffs' other alleged "bad faith conduct" not already discussed is not germane to the resolution of the Motion for Sanctions.  Nevertheless, the Court is gravely concerned by Amazon's suggestion that Plaintiffs may have included false statements of fact in their stipulated judgment disposing of their claims against RNSO and Mr. Young in order to make fraudulent future claims against RNSO's insurance company.  The Court expresses no opinion at this time as to the veracity of those allegations, but notes that the allegations do not appear to be entirely unfounded.  While this conduct does not necessarily prejudice Amazon in the present suit and therefore does not necessarily warrant further sanctions against Plaintiffs at this time, Plaintiffs are advised that this conduct may become relevant and may need to be explored further at a later stage in this litigation.  Plaintiffs' counsel are reminded of their professional and ethical obligations, and warned that should it become necessary, the Court will not hesitate to discipline or sanction any party who violates those obligations.  And, in an effort to remove itself from any participation in conduct that may later develop into something nefarious, the Court will amend the stipulated judgment, [Filing No. 61], to clarify that the matters contained therein were agreed upon by the parties and do not constitute factual or legal findings made by the Court.  *See* Fed. R. Civ. P. 60(a) ("The court may correct a . . . mistake arising from oversight or omission whenever one is found in a judgment, . . . on motion or on its own, with or without notice.").  Aside from this clarification, the terms of the stipulated judgment shall remain unchanged.  An amended stipulated judgment shall issue accordingly.

**IV.**

**CONCLUSION**

The litany of discovery issues addressed in this and the many other entries issued by both the undersigned and Judge Dinsmore is staggering, considering that discovery should largely be a self-managed process.  The Court was tempted to annotate this entry with an array of well-placed exploding head emojis, as the frustrating unreasonableness of the positions taken by Plaintiffs is indescribable by words alone, but in an exercise of judicial restraint declined to do so.  As the Court recently noted, 65 motions have been filed in this case, the vast majority of which would have been avoided had Plaintiffs and their counsel conducted discovery in a forthcoming manner, consistent with orders of the Court, the Federal Rules of Civil Procedure and the Standards for Professional Conduct within the Seventh Federal Judicial Circuit.

To summarize, the Court makes the following rulings:

1. Plaintiffs' Objection to Magistrate Judge's Report and Recommendation on Amazon's Motion for Sanctions, [231], is **OVERRULED**.

2. Judge Dinsmore's Report and Recommendation addressing Amazon's Motion for Sanctions, [221], is **ADOPTED** and Amazon's Motion for Sanctions, [160], is **GRANTED** such that:

   a. Plaintiffs are barred from: (1) seeking actual damages of any kind in this case; and (2) introducing any evidence, testimony, or argument relating to the amount of their own revenues or the quantity of their own sales;

   b. Amazon is entitled to recover attorneys' fees in connection with pursuing the Motion for Sanctions, and shall file any fee motion within **14 days** after the date of this Order, with further briefing on that motion to be conducted in accordance with Local Rule 7-1; and

     c.   Pursuant to 28 U.S.C. § 1927, Plaintiffs' counsel, Mr. Overhauser, will be required to personally pay the portion of Amazon's attorneys' fees that can be attributed to defending against the argument that the Motion for Sanctions was untimely.

3.   Plaintiffs' Objection to and Motion to Reconsider Magistrate Judge's Ruling on Motion for Attorneys' Fees, [239], is **OVERRULED** and **DENIED**, and Judge Dinsmore's Order on Motion for Attorneys' Fees, [229], is **AFFIRMED**.  Amazon is awarded **$86,448.50 in attorneys' fees**, and such award shall by paid by Plaintiffs' counsel, Overhauser Law Offices, LLC, within **30 days** of the date of this Order.  If Amazon wishes to recover additional attorneys' fees for time spent responding to Plaintiffs' Objection, Amazon may file a fee motion within **14 days** of this Order.[5] Further briefing on that motion shall be conducted in accordance with Local Rule 7-1.

4.   Amazon's Motion for Leave to File a Surreply, [242], is **GRANTED** to the extent that the proposed surreply brief, [243], and its attached exhibits were considered by the Court in resolving the Motion for Sanctions.

5.   Amazon's Motion to Maintain Document Under Seal, [244], is **DENIED** and the Clerk is **DIRECTED** to **UNSEAL** Filing No. 243; Filing No. 243-1; and Filing No. 243-2.

6.   Pursuant to Rule 60(a), the Court will **AMEND** the stipulated Final Judgment and Permanent Injunction as to Defendant Rise N Shine Online LLC, [Filing No. 61], to clarify that the matters contained therein were agreed upon by the parties and do not

---

[5] Should Amazon decide to file fee motions relating to both pursuing the Motion for Sanctions and responding to Plaintiffs' Objection to Judge Dinsmore's Order on the Motion for Attorneys' Fees, it may combine those motions into a single filing, with further briefing on the combined filing to be conducted in accordance with Local Rule 7-1.

constitute factual or legal findings made by the Court.  Aside from this clarification, the terms of the stipulated final judgment shall remain unchanged.  An amended stipulated final judgment shall issue accordingly.

Date: 6/10/2021

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

**Distribution via ECF only to all counsel of record**