UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

ANNIE OAKLEY ENTERPRISES, INC. and )
RENEE GABET,                       )
                                   )
                    Plaintiffs,    )
                                   )
          vs.                      )        No. 1:19-cv-1732-JMS-MJD
                                   )
AMAZON.COM, INC.,                  )
                                   )
                    Defendant.     )

## ORDER

Plaintiffs Annie Oakley Enterprises, Inc. ("Annie Oakley") and its owner, Renee Gabet, initially brought this trademark action against Rise N Shine Online, LLC ("RNSO"), its owner Eric Young, and Amazon.com, Inc. ("Amazon"), alleging that Defendants sold products on Amazon's website that infringed Plaintiffs' trademarks. [Filing No. 12.]  Plaintiffs have settled their claims against RNSO and Mr. Young, and those claims were dismissed with prejudice, [Filing No. 64]; only the claims against Amazon remain.  Presently pending before the Court are Plaintiffs' Motion for Summary Judgment and Permanent Injunction, [Filing No. 134], Amazon's Cross-Motion for Summary Judgment, [Filing No. 149], Plaintiffs' Motion for Leave to File Additional Authority, [Filing No. 176], and Amazon's Motion to Strike Plaintiffs' Jury Demand, [Filing No. 252].  These motions are fully briefed and ripe for the Court's decision.

## I.
### SUMMARY JUDGMENT STANDARD

A motion for summary judgment asks the Court to find that a trial is unnecessary because there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(a).  As the current version of Rule 56 makes clear, whether

1

a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted

fact by citing to particular parts of the record, including depositions, documents, or affidavits.  Fed.

R. Civ. P. 56(c)(1)(A).  A party can also support a fact by showing that the materials cited do not

establish the absence or presence of a genuine dispute or that the adverse party cannot produce

admissible evidence to support the fact.  Fed. R. Civ. P. 56(c)(1)(B).  Failure to properly support

a fact in opposition to a movant's factual assertion can result in the movant's fact being considered

undisputed, and potentially in the granting of summary judgment.  Fed. R. Civ. P. 56(e).

In deciding a motion for summary judgment, the Court need only consider disputed facts

that are material to the decision.  A disputed fact is material if it might affect the outcome of the

suit under the governing law.  *Hampton v. Ford Motor Co.*, 561 F.3d 709, 713 (7th Cir. 2009).  In

other words, while there may be facts that are in dispute, summary judgment is appropriate if those

facts are not outcome determinative.  *Harper v. Vigilant Ins. Co.*, 433 F.3d 521, 525 (7th Cir.

2005).  Fact disputes that are irrelevant to the legal question will not be considered.  *Anderson v.

Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

On summary judgment, a party must show the Court what evidence it has that would

convince a trier of fact to accept its version of the events.  *Johnson v. Cambridge Indus.*, 325 F.3d

892, 901 (7th Cir. 2003).  The moving party is entitled to summary judgment if no reasonable

factfinder could return a verdict for the non-moving party.  *Nelson v. Miller*, 570 F.3d 868, 875

(7th Cir. 2009).  The Court views the record in the light most favorable to the non-moving party

and draws all reasonable inferences in that party's favor.  *Darst v. Interstate Brands Corp.*, 512

F.3d 903, 907 (7th Cir. 2008).  It cannot weigh evidence or make credibility determinations on

summary judgment because those tasks are left to the factfinder.  *O'Leary v. Accretive Health, Inc.*,

657 F.3d 625, 630 (7th Cir. 2011).  The Court need only consider the cited materials, Fed. R. Civ.

P. 56(c)(3), and the Seventh Circuit Court of Appeals has "repeatedly assured the district courts that they are not required to scour every inch of the record for evidence that is potentially relevant to the summary judgment motion before them." *Johnson*, 325 F.3d at 898. Any doubt as to the existence of a genuine issue for trial is resolved against the moving party. *Ponsetti v. GE Pension Plan*, 614 F.3d 684, 691 (7th Cir. 2010).

The existence of cross-motions for summary judgment does not imply that there are no genuine issues of material fact. *R.J. Corman Derailment Servs., LLC v. Int'l Union of Operating Engineers, Local Union 150, AFL-CIO*, 335 F.3d 643, 647 (7th Cir. 2003). Specifically, "[p]arties have different burdens of proof with respect to particular facts; different legal theories will have an effect on which facts are material; and the process of taking the facts in the light most favorable to the non-movant, first for one side and then for the other, may highlight the point that neither side has enough to prevail" on summary judgment. *Id.* at 648.

## II.
### STATEMENT OF FACTS

At the outset, the Court notes that Plaintiffs failed to comply with this Court's Practices and Procedures for citing to record evidence in their briefs. The Practices and Procedures provide: "It is critically important that exhibits be filed before supporting briefs so that citations in supporting briefs are to the docket numbers of the previously-filed exhibits. This significantly facilitates the Court's review of the motion and briefs as well as the parties' review of the filed materials." [Filing No. 7 at 3.] In addition, "[i]n a supporting brief, [parties must] cite to the docket number, the attachment number (if any), and the applicable .pdf page as it appears on the docket information located at the top of the filed document." [Filing No. 7 at 4.] Plaintiffs' citations do not follow this format, and instead reference the documents' titles, such as "Ex. 11, Gabet Decl., ¶ 3." The proper citation for this material is "Filing No. 136-5 at 1." Failure to follow the proper citation

conventions has made the Court's review of the voluminous record evidence unnecessarily difficult and cumbersome.  Counsel is cautioned to comply with the Court's Practices and Procedures in this and other cases going forward or risk striking of the filing.

In addition, Amazon makes numerous arguments challenging the admissibility of certain evidence, and also argues that its version of the facts should be adopted in its entirety because Plaintiffs' response brief failed to comply with the requirement established in Local Rule 56-1 that responding parties specifically designate which facts remain in dispute.  [*See* Filing No. 151 at 20-34; Filing No. 185 at 8-9.]  The Court need not address each of the evidentiary objections in detail, because the vast majority of the evidence subject to those objections is not material to the resolution of the summary judgment motions and therefore is not recited as fact below.  Relevant objections are addressed as needed throughout the remainder of this Order.  As for Amazon's Local Rule 56-1 argument, the Court acknowledges that Plaintiffs' "Statement of Material Facts in Dispute" in their response brief—which merely incorporates by reference the "Statement of Material Facts Not in Dispute" from their initial Motion for Summary Judgment—is confusing, unhelpful, and does not meet the strict requirements of Local Rule 56-1(b).  Nevertheless, the Court prefers to decide issues on the merits and has done its best to determine the facts truly in dispute based on the parties' briefing.  *See* Local Rule 56-1(*l*) ("The court may, in the interest of justice or for good cause, excuse failure to comply strictly with this rule.").

Turning to the facts themselves, the following factual background is set forth pursuant to the standard detailed above.  The facts stated are not necessarily objectively true, but as the summary judgment standard requires, the undisputed facts and the disputed evidence are presented in the light most favorable to "the party against whom the motion under consideration is made." *Premcor USA, Inc. v. Am. Home Assurance Co.*, 400 F.3d 523, 526-27 (7th Cir. 2005).

### A.  Plaintiffs' Business

Annie Oakley was established in 1980 and makes and sells a variety of health and beauty products including perfumes, lotions, oils, shampoos, and conditioners.  [Filing No. 136-5 at 1.] It sells its products at its storefront in Ligonier, Indiana, over the internet, and "through its world-wide network that has included over 3,100 dealers."  [Filing No. 136-5 at 1.]  Annie Oakley does not sell any products on Amazon's website.  [Filing No. 149-16 at 5.]  Ms. Gabet is the sole owner and principal officer of Annie Oakley and she designs all of its proprietary fragrance blends. [Filing No. 136-5 at 1.]

### B.  The Trademarks

Ms. Gabet has filed over sixty federal trademark applications for the names of her proprietary fragrances.  [Filing No. 136-5 at 2.]  Annie Oakley is the sole licensee of all of those trademarks.  [Filing No. 136-5 at 2.]  Relevant to this case, Ms. Gabet filed two applications to register the mark RISE 'N SHINE ("the Mark").  [Filing No. 136-5 at 2.]  Registration No. 2,549,750 ("the '750 Registration") is for "perfumes, body oils, room fragrances, and essential oils for personal use."  [Filing No. 135-3 at 1; Filing No. 149-8 at 2.]  The date of first use and first use in commerce appearing on the '750 Registration is January 2000, and the registration date is March 19, 2002.  [Filing No. 135-3 at 1; Filing No. 149-8 at 2.]  Registration No. 3,990,283 ("the '283 Registration") is for "shampoos, hair conditioners, body soaps and body powders."  [Filing No. 135-4 at 1; Filing No. 149-9 at 2.]  The date of first use and first use in commerce appearing on the '283 Registration is April 29, 2011, and the registration date is July 5, 2011.  [Filing No. 135-4 at 1; Filing No. 149-9 at 2.]

For both the '750 Registration and the '283 Registration, the United States Patent and Trademark Office ("USPTO") issued a "Notice of Acceptance Under Section 8" of the Lanham

Act, 15 U.S.C. § 1058, and a "Notice of Acknowledgement Under Section 15" of the Lanham Act,

15 U.S.C. § 1065, meaning that the registrations became incontestable for purposes of the act.

[Filing No. 135-3 at 2; Filing No. 135-4 at 2.]  With respect to the '283 Registration specifically,

the Statement of Use Declaration, which was prepared by Ms. Gabet's attorney, George Pappas,

stated that the "Applicant, or the Applicant's related company or licensee is using the mark in

commerce on or in connection with the following goods/services:  Those goods/services identified

in the Notice of Allowance in this application."  [Filing No. 149-9 at 38.]  The Declaration further

stated that "[t]he Applicant, or the Applicant's related company or licensee, or predecessor in

interest, first used the mark on April 29, 2011, and first used the mark in interstate commerce on

April 29, 2011," and that "[t]he mark is used by affixing to the goods, packaging of the goods and

in other ways customary in trade."  [Filing No. 149-9 at 38-39.]

According to Ms. Gabet, "Annie Oakley has continuously used its Rise 'N Shine mark in

nearly every conceivable possible way," including displaying it on product labels and free sample

products, featuring it in catalogs or advertising inserts, displaying it on shelf signs, including it in

web URLs, and featuring it on its webpage and on social media.  [Filing No. 136-5 at 3-4.]  In her

deposition, she testified that her trademark registration application listed the correct date—April

29, 2011—corresponding to when Annie Oakley first used the mark in connection with shampoos,

hair conditioners, body soaps, and body powders.  [Filing No. 150-1 at 16-18.]  However, Ms.

Gabet could not recall the specific details of when or how the mark was first used, and she

acknowledged that she does not possess any documentary or other evidence concerning the first

sales of shampoos, hair conditioners, body soaps, or body powders using the Mark.  [Filing No.

150-1 at 16-19.]

All of Annie Oakey's products, including the RISE 'N SHINE line, are based on a country-western theme.  [Filing No. 150-1 at 7 ("If you live in the country or you are in a rural area or small town USA, you get up in the morning and it's rise and shine.  It's a phrase all of us country people use.  So it was a no-brainer to use Rise 'N Shine for a product line."); Filing No. 150-1 at 9 ("Q: So is a western setting important to Annie Oakley products then?  A: Yes.").]  Examples of the Plaintiffs' products relevant to this lawsuit are shown below:



[Filing No. 12-1 at 1.]



[Filing No. 135-5 at 29.]



[Filing No. 149-29 at 2.]



[Filing No. 149-13 at 2.]

### C. Amazon's Business

Amazon operates a website where tens of millions of products are offered for sale to customers.  [Filing No. 149-2 at 3; Filing No. 149-2 at 5.]  Two different types of transactions occur on Amazon's website: (1) Amazon itself offers products for sale ("direct sales"); and (2) third parties offer products for sale ("third party sales").[1]  [Filing No. 149-2 at 3.]  Every product detail page for products offered for sale by a third party indicates that the product is "Sold By" that party.  [Filing No. 149-2 at 3.]

Before third parties can list their products for sale on Amazon's website, they must accept the terms and conditions of Amazon's Business Solutions Agreement.  [Filing No. 149-2 at 3.]  Among other things, the Business Solutions Agreement requires the third-party sellers to indemnify Amazon for losses resulting from the sellers' non-compliance with applicable laws or any actual or alleged infringement by the seller on the intellectual property rights of another.  [Filing No. 149-3 at 3.]

Third party sellers who offer products for sale on Amazon's website create the product listings.  [Filing No. 149-2 at 4.]  Amazon does not draft product descriptions, choose the title of the product offering, or set the prices of products.  [Filing No. 149-2 at 4.]  Amazon is not responsible for designing, manufacturing, or packaging any of the products sold through third party sales.  [Filing No. 149-2 at 4.]  However, Amazon offers a service called "Fulfilled by Amazon," whereby it provides shipping and storage fulfillment for third party sellers.  [Filing No. 149-2 at 4.]  When offering this service, Amazon never takes title to the products, but stores and delivers

---

[1] In her declaration, Ms. Gabet assigns different labels to the types of sales purportedly conducted by Amazon.  [Filing No. 136-5 at 2-3.]  Amazon objects to this testimony as lacking foundation, [Filing No. 151 at 31], and the Court agrees.  In any event, regardless of what labels are assigned, the substance of the facts concerning Amazon's business are undisputed.

them for the third-party sellers, and may place products contained in original manufacturer packaging into Amazon cardboard boxes or envelopes for shipping.  [Filing No. 149-2 at 4.]

In addition, when customers return products to Amazon that cannot be resold, Amazon can resell those products as "Amazon Warehouse Deals."  [Filing No. 149-2 at 4.]  Relevant to this case, Amazon completed direct warehouse sales of 35 returned RNSO products, resulting in a total profit to Amazon of $262.60.  [Filing No. 149-2 at 4.]

Amazon is able to remove product listings from its website at any time.  [Filing No. 136-3 at 8-9.]  Its general policy is to delist sellers and their products when it can validate a claim of trademark infringement against a seller.  [Filing No. 136-3 at 8-9.]

### D.  RNSO's Business and Sales Through Amazon

RNSO began selling its products on Amazon in 2015 and did so for roughly five years. [Filing No. 149-4 at 5; Filing No. 149-4 at 9.]  According to Eric Young, who started RNSO, a search of Amazon's website during that timeframe using the term "Rise N Shine" would locate RNSO's products.  [Filing No. 149-4 at 8.]  Ninety-five percent of RNSO's sales were conducted through Amazon's website.  [Filing No. 149-4 at 8.]

RNSO sold primarily "do-it-yourself skin care ingredients," including the raw materials used "to make soaps, shampoos, creams, and things of that nature."  [Filing No. 149-4 at 5.]  Their products included cocoa butter, shea butter, argon oil, and African black soap.  [Filing No. 149-4 at 5.]  RNSO never sold any perfumes using the name Rise 'N Shine.  [Filing No. 149-4 at 8.]

RNSO's products feature an acacia tree on the label, and the fact that many of the products were of African origin is a theme of the business.  [Filing No. 149-4 at 5; Filing No. 149-27 at 3.] Some of RNSO's products relevant to this case are pictured below.  The Court will refer to these and the other RNSO products accused in this action collectively as the "Accused Products."



[Filing No. 12-4 at 5.]



[Filing No. 12-4 at 4.]



[Filing No. 12-4 at 3.]



[Filing No. 12-14 at 12.]



[Filing No. 12-4 at 2.]

Amazon did not participate in choosing the name, design, or packaging of RNSO's products and was not involved in drafting the product listings. [Filing No. 149-4 at 6-8.] Sometimes "Rise N Shine Online LLC" was listed on the webpage as the seller, but other times the seller was listed as "E&E Premier Distributors." [Filing No. 149-4 at 9-10.] E&E Premier Distributors is a partnership in which Mr. Young is involved. [Filing No. 149-4 at 9.]

During discovery in this action, Amazon produced 4,299 customer reviews of RNSO products. [Filing No. 149-7 at 3; Filing No. 150-7.] Based on those reviews, the average customer rating of RNSO products was 4.46 stars out of 5, with 86% of sales resulting in either a 4- or 5-star review. [Filing No. 149-7 at 3.] However, some customers did complain about RNSO products. [Filing No. 135-2.] For example, some reviews stated that an RNSO product "caused a

bad irritation to [the] skin" or  "smells like a used ashtray."  [Filing No. 135-2 at 1-2.]   According to Ms. Gabet, she has "never received a complaint from an Annie Oakley customer about the smell, texture or quality of Annie Oakley's authentic Rise 'N Shine products."  [Filing No. 136-5 at 5.]

In 2016, RNSO filed an application with the USPTO, seeking to register the mark "Rise 'N Shine Online."  [Filing No. 149-27 at 5.]  That application was rejected.  [Filing No. 135-6 at 2.] In relevant part, the USPTO noted that registration of Rise 'N Shine Online would create a likelihood of confusion with the marks that were the subject of the '750 Registration and the '283 Registration.  [Filing No. 135-6 at 2.]  In reaching that conclusion, the USPTO focused on the similarity of the marks and the similarity or relatedness of the goods.  [Filing No. 135-6 at 2-3.]

### E.  Amazon's Profits from the Sale of RNSO Products

Using a spreadsheet provided by Amazon and verified by Amazon's representative, Plaintiffs' counsel calculated the total profits made by Amazon from the sale of the Accused Products to be $809,536.96.  [Filing No. 170-1 at 7.]  That total includes $461,193.35 in profits realized between March 29, 2018 and July 14, 2020, and $168,776.31 in profits realized between July 25, 2019 and July 14, 2020.  [Filing No. 170-1 at 8.]  Amazon does not specifically dispute any of these numbers.  [*See* Filing No. 185.]

### F.  Plaintiffs' Prior Allegations of Trademark Infringement Against Entities Not Party to this Lawsuit

Several years ago, Plaintiffs learned that a company called Eden's Garden Essentials ("Eden's Garden") was selling products under the name RISE 'N SHINE.  [Filing No. 150-1 at 22-23.]  On October 4, 2017, Ms. Gabet sent an email to Eden's Garden alleging trademark infringement.  [Filing No. 149-21 at 2.]  That email and other attempts to contact Eden's Garden went unanswered.  [*See* Filing No. 149-21 at 4.]

11

On February 1, 2018, Ms. Gabet sent an email to "Micah," an Amazon employee, asking him to "direct [her] to the trademark department." [Filing No. 135-13 at 1.] In the email, Ms. Gabet stated: "There are some infringements on our products and seller refuses to answer me. I need to report and have them taken down." [Filing No. 135-13 at 1.] According to Ms. Gabet, Micah ignored her email, and through her own investigation she located a "trademark infringement reporting portal" on Amazon's website, which she used to lodge an infringement complaint identifying the '283 and '750 Registrations. [Filing No. 136-5 at 4.] Ms. Gabet states that Amazon removed the infringing listings, but "then re-listed them the very next day," so she submitted three additional complaints through the portal. [Filing No. 136-5 at 4.] Email notices from Amazon on March 23, March 24, March 25, March 28, March 30, and April 11, 2018 confirm that Amazon received Ms. Gabet's complaints. [Filing No. 135-13 at 2-10; Filing No. 135-18.] According to Ms. Gabet, apart from these automated notices, "Amazon did nothing further, and the infringing products remained listed on amazon.com."[2] [Filing No. 136-5 at 4.]

---

[2] The Court notes that this assertion is belied by an April 1, 2018 email from Ms. Gabet to Eden's Garden, stating that Amazon "has taken down Rise n Shine in [Eden's Garden's] company account," and asking that Eden's Garden remove Rise n Shine products from its own website or other sales venues it may use. [Filing No. 149-21 at 4.] Other statements in Ms. Gabet's declaration—which was almost certainly prepared by her counsel—also appear to be inconsistent with the record evidence. For example, she states in her declaration that she learned of Eden's Garden's alleged infringement in February 2018, [Filing No. 136-5 at 4], even though her first email to Eden's Garden was sent in October 2017, [Filing No. 149-21 at 2], and she states that Eden's Garden sold $61,000 in infringing products, settled the case for $300,000, and removed the products from Amazon's website only after the settlement was reached, [Filing No. 136-5 at 4-5], despite her email stating that Amazon removed the products long before the lawsuit was filed. None of these issues make a difference to the outcome of the pending motions, but as with Plaintiffs' counsel's failure to follow proper citation procedures and other misconduct in this litigation, the Court was required to unnecessarily expend additional time and resources discovering and reconciling these inconsistencies. Plaintiffs' counsel is cautioned that such conduct will not be tolerated as these proceedings move forward.

On August 29, 2018, Plaintiffs sued Eden's Garden, but did not name Amazon as a defendant in that action.  [Filing No. 136-6 at 1.]  That matter was ultimately settled.  [Filing No. 136-6.]

Ms. Gabet testified that "[o]thers have acknowledged Annie Oakley's trademark rights and voluntarily agreed to stop offering infringing products."  [Filing No. 136-5 at 5.]  For example, she complained to Walmart and "bbrands Wholesale," and both entities stopped selling RISE 'N SHINE hair products.  [Filing No. 135-20 at 1; Filing No. 136-5 at 5.]

In October 2019, the USPTO denied an application filed by Zotos International, Inc. to register the mark RISE 'N SHINE in connection with "Hair care preparations" and "Hair styling preparations."  [Filing No. 135-21 at 2.]  In doing so, the USPTO concluded that there was a likelihood of confusion between the proposed registration and the marks already registered under the '750 Registration and the '283 Registration.  [Filing No. 135-21 at 2-3.]

### G.  Plaintiffs Discover RNSO's Products on Amazon

On March 7, 2019, Ms. Gabet discovered that RNSO's products bearing the name RISE 'N SHINE were being sold on Amazon's website.  [Filing No. 136-5 at 5.]  Ms. Gabet contacted RNSO, pretending to be a customer.  [Filing No. 149-27 at 5.]  She purchased products from RNSO and asked questions regarding RNSO's business.  [Filing No. 149-27 at 5.]  Plaintiffs admit that at that time they did not submit any notice of alleged infringement relating to any of the Accused Products through Amazon's online reporting portal.  [Filing No. 149-16 at 5.]

### H.  Plaintiffs File the Initial Complaint in this Action

On April 30, 2019, Plaintiffs filed the initial Complaint in this action, naming RNSO, Mr. Young, and E&E Premier Distributors as Defendants.  [Filing No. 1.]  Mr. Young did not inform

Amazon of the lawsuit.  [Filing No. 149-27 at 5.]  Plaintiffs attempted to reach an agreed resolution with the RNSO parties, but were unsuccessful.  [Filing No. 135-17 at 1; Filing No. 149-27 at 5.]

### I.   July 2019 Letter to Amazon

On July 22, 2019, Plaintiffs' counsel sent a letter to Amazon, care of its registered agent, stating that Plaintiffs had been made aware "that Amazon.com, Inc. has been selling products that infringe [the '750 Registration and the '283 Registration], including but not limited to products sold in connection with Amazon accounts 'Rise N Shine Online, LLC' and 'E & E Premier Distributors.'"  [Filing No. 135-14 at 1.]  The letter demanded that Amazon "immediately cease and desist all use of the terms Rise N Shine and/or Rise and Shine in connection with the sale, promotion or advertising of products confusingly similar to those that are the subject of either of the above registrations."  [Filing No. 135-14 at 1.]  The letter further demanded that Amazon stop using certain "advertising ideas" and URLs containing the terms "rise" and "shine."  [Filing No. 135-14 at 1.]  As an example, the letter contained a screenshot of a listing on Amazon's website for a product named "Rise-N-Shine Conditioner Hair-U-Grow."  [Filing No. 135-14 at 2.]  Mr. Young confirmed that the specific product shown in the letter was not an RNSO branded product and was not sold by RNSO.  [Filing No. 149-4 at 11; Filing No. 149-27 at 5.]

During discovery in this case, Plaintiffs asked Amazon to admit that it had received this letter.  [Filing No. 135-16 at 10-12.]  Amazon provided the following response: "Amazon admits that plaintiffs appear to have sent the letter to Amazon's agent for formal service of legal process. Amazon denies that the letter was provided through publicly known channels Amazon uses for providing notice of allegations of infringement, received by Amazon's legal department, evaluated prior to the time suit against Amazon was filed, or that it constituted adequate legal notice of plaintiffs' claims."  [Filing No. 135-16 at 12-13.]

### J.  The Amended Complaint and Amazon's Response

On August 23, 2019, Plaintiffs filed the Amended Complaint, naming RNSO, Mr. Young, and Amazon as Defendants.  [Filing No. 12.]  In relevant part, Plaintiffs asserted claims for trademark infringement, false designation of origin, and unfair competition under the Lanham Act, as well as Indiana common law unfair competition.  [Filing No. 12; *see also* Filing No. 112.]  Amazon was served with the Amended Complaint on November 1, 2019.  [Filing No. 151 at 25.][3]  Amazon filed its Answer on December 27, 2019, denying all of Plaintiffs' claims.  [Filing No. 26.]

Amazon's counsel contacted counsel for RNSO and Mr. Young, requesting assurances that RNSO and Mr. Young would indemnify and defend Amazon in connection with this case pursuant to the Business Solutions Agreement.  [Filing No. 149-23.]  Counsel for RNSO and Mr. Young advised that the parties were attempting to reach a settlement and stated: "If Amazon takes down the products, there is no prospect that our client will be able to settle the suit and its bankruptcy filing will likely be imminent, leaving litigation or settlement of these claims on Amazon's shoulders.  This is not a desirable situation for anyone."  [Filing No. 149-24 at 2.]  Amazon did not remove the Accused Products from its website at that time.

On or around March 4, 2020, Amazon's legal department issued a request to its seller services team to take down the product listings for the Accused Products, when it became clear that RNSO and Mr. Young could not resolve the case and had not agreed to indemnify Amazon.  [Filing No. 136-1 at 19; Filing No. 136-3 at 34 Filing No. 149-2 at 5.]  Some of the Accused Products were "relisted inadvertently" between April 15 and April 26, 2020.  [Filing No. 136-1 at

---

[3] There does not appear to be a proof of service or other document on the docket or in the summary judgment submissions showing the date on which Amazon was served with the Amended Complaint.  However, Plaintiffs do not dispute Amazon's contention that the date of service was November 1, 2019.  [*See generally* Filing No. 172.]

19.]  According to Amazon's Senior Corporate Counsel, Scott Sanford, the reactivation of these listings was not intentional and Amazon "has been unable to determine why [the listings] were reactivated."  [Filing No. 149-2 at 5.]  All Accused Products listings were removed by July 17, 2020, after Amazon had become aware of the inadvertent relisting.  [Filing No. 136-1 at 19.] However, Amazon's records indicate that Accused Products were shipped every day from April 16 to July 12, 2020.  [Filing No. 136-2 at 7.]

Amazon's representative testified that the Accused Products were taken down "at the direction of [Amazon's] legal team," and that it was his understanding "that the legal direction did have something to do with trademark infringement," but he could not say "exactly what the legal team's exact reasons were."  [Filing No. 136-3 at 10; *see also* Filing No. 136-3 at 34 ("To the best of my knowledge, the legal team is the one who gave the guidance to take those-- to delist those items, and to the best of my knowledge, it was the-- due to a case that was-- about trademark infringement.").]  Mr. Sanford stated that Amazon's legal department never made any determination that the Accused Products infringed on Plaintiffs' trademarks and that he, as Senior Corporate Counsel, would have been aware if such a determination had been made.  [Filing No. 149-2 at 5.]

### K.  Plaintiffs' Settlement with RNSO

Plaintiffs settled their claims with RNSO and Mr. Young and dismissed them from this action.  [*See* Filing No. 150-5.]  The Settlement Agreement between Plaintiffs and RNSO did not require RNSO to make any payments, but required that it stop selling its products.  [Filing No. 149-4 at 12.]  However, the agreement allowed Amazon to sell the remaining existing inventory of those products, worth approximately $260,000, for a period of 120 days.  [Filing No. 149-2 at 12; Filing No. 150-5 at 4.]  The Settlement Agreement further provided that the parties would "use

their best efforts to get Amazon to agree to such sales" and that Plaintiffs would attempt to "get Amazon to release any claims or rights for indebtedness and indemnification against [RNSO]" and "get Amazon to allow the existing inventory of accused products . . . , but not additional accused products, to be sold through Amazon, with little or no selling fees from Amazon to be deducted therefrom." [Filing No. 150-5 at 4.] If Amazon agreed to allow the existing inventory to be sold, Plaintiffs and the RNSO parties agreed to jointly request that all proceeds from those sales be paid to Annie Oakley, with some amounts potentially deducted for indebtedness owed by RNSO to Amazon and some amounts potentially remitted to RNSO. [Filing No. 150-5 at 4-6.][4]

### L.  Motions Currently Before the Court

Plaintiffs filed a Motion for Summary Judgment and Permanent Injunction ("Motion for Summary Judgment"). [Filing No. 135.] Amazon then filed a Cross-Motion for Summary Judgment, [Filing No. 149], and accompanying Brief in Opposition to Plaintiffs' Motion for Summary Judgment and Brief in Support of Cross-Motion for Summary Judgment ("Cross-Motion/Response"), [Filing No. 151]. Plaintiffs then filed their Reply in Support of Motion for Summary Judgment and Permanent Injunction and Response to Cross-Motion for Summary Judgment ("Response/Reply"). [Filing No. 172.] Amazon then filed a Reply Brief in Support of its Cross-Motion for Summary Judgment ("Reply"). [Filing No. 185.] Separately, Plaintiffs filed a Motion for Leave to Submit Additional Authority in Support of Motion for Summary Judgment and Permanent Injunction and Response to Cross-Motion for Summary Judgment ("Motion for

---

[4] The settlement resulted in a stipulated judgment on the claims against the RNSO parties, and Amazon accused Plaintiffs of including false statements in the stipulated judgment related to the date on which RNSO began using the words "Rise N Shine" in website URLs and social media account names. [*See* Filing No. 151 at 28-30 (discussing Amazon's allegations).] In its June 10, 2021 Order, the Court expressed that it is "gravely concerned" by these allegations and amended the stipulated judgment to clarify that the facts contained therein were agreed to be the parties and not findings of fact made by the Court. [Filing No. 257 at 38.]

Leave to Submit Additional Authority"). [Filing No. 176.] Amazon has also filed a Motion to Strike Plaintiffs' Jury Demand ("Motion to Strike Jury Demand"). [Filing No. 252.] All of these motions are fully briefed and ripe for the Court's decision.

### III.
#### MOTION FOR LEAVE TO SUBMIT ADDITIONAL AUTHORITY

On January 14, 2021, Plaintiffs filed their Motion for Leave to Submit Additional Authority, directing the Court's attention to an amendment to the Lanham Act made by the Trademark Modernization Act of 2020 ("the Amendment"), which was signed into law on December 27, 2020. [Filing No. 176; Filing No. 176-1; Filing No. 176-2.] The Amendment establishes a presumption of irreparable harm for trademark plaintiffs seeking injunctive relief. [Filing No. 176-1 at 1-2.]

Amazon opposes Plaintiffs' motion, arguing that it is untimely because the Amendment was already in effect when Plaintiffs filed their Motion for Summary Judgment on November 10, 2020. [Filing No. 201 at 2-3.] Amazon also argues that the Amendment is not relevant to this case because it does not apply retroactively and even if it did, it would not change the analysis of Plaintiffs' request for an injunction. [Filing No. 201 at 3-4.]

Plaintiffs reply that the motion is not untimely because they were not aware of the Amendment when they filed their Motion for Summary Judgment, the short delay between the Amendment being signed into law and Plaintiffs discovering the section that applies to their case is "understandable," and in any event the Court has not yet adjudicated their request for an injunction. [Filing No. 209 at 1-2.] Plaintiffs further argue that the Amendment by its own terms applies retroactively. [Filing No. 209 at 203.]

At the outset, the Court notes that the Motion for Leave to Submit Additional Authority is yet another example of unnecessary motion practice in this litigation. The Court appreciates

Plaintiffs' intention to keep the Court apprised of developments in the law that could potentially impact this case.  However, that objective could have been accomplished by filing a notice, which would not have necessitated a response from Amazon or further action by the Court.  In any event, the Court **GRANTS** the Motion for Leave to Submit Additional Authority to the extent that it acknowledges the Amendment, and if and when it becomes necessary, the Court will determine whether and to what extent it applies to the facts of this case.

## IV.
### SUMMARY JUDGMENT MOTIONS

As an initial matter, the Court must define the claims at issue in the summary judgment motions.  In the Amended Complaint, Plaintiffs asserted independent claims for: (1) trademark infringement under the Lanham Act; (2) "use of advertising idea"; (3) trademark dilution under the Lanham Act: (4) false designation of origin and unfair competition under the Lanham Act; and (5) common law unfair competition under Indiana law.  [Filing No. 12.]  In their Statement of Claims, Plaintiffs preserved the following claims only: (1) trademark infringement under the Lanham Act; (2) false designation of origin and unfair competition under the Lanham Act; and (3) Indiana common law unfair competition.  [Filing No. 112.]  *See Jackson v. Regions Bank*, 838 F. App'x 195, 198 (7th Cir. 2021) (affirming this Court's treatment of claims not preserved in the Statement of Claims as abandoned).  In their Motion for Summary Judgment, Plaintiffs seek summary judgment "[t]hat Amazon is liable for infringing [Plaintiffs'] Rise 'N Shine mark (both under the Lanham Act and common law)."  [Filing No. 134; Filing No. 136 at 1.]  The terms "false designation of origin" and "unfair competition" appear nowhere in Plaintiffs' briefing.  [*See generally* Filing No. 136; Filing No. 172.]  Accordingly, the Court concludes that the only claims Plaintiffs are pursuing are: (1) trademark infringement under the Lanham Act; and (2) unfair competition under Indiana common law, based on the alleged infringement on Plaintiffs' marks.

19

The Court finds that all other claims have been abandoned.  Relevant to the remaining claims, the parties raise numerous issues in the Motion for Summary Judgment and Cross-Motion for Summary Judgment.  The Court has reordered the issues and addresses each in turn below.

### A.  Laches

In their Motion for Summary Judgment, Plaintiffs argue that their claims are not barred by laches because: (1) they did not learn of Amazon's infringement until March 7, 2019; (2) they promptly contacted RNSO, but after being unable to reach a resolution, filed their initial Complaint against RNSO on April 30, 2019, notified Amazon on July 24, 2019, and filed their Amended Complaint naming Amazon as a Defendant on August 23, 2020.  [Filing No. 136 at 33.]  Plaintiffs assert that they did not inexcusably delay in acting and that Amazon was not prejudiced.  [Filing No. 136 at 33.]

In its Cross-Motion/Response, Amazon argues that Plaintiffs knew or should have known through the exercise of reasonable diligence that the Accused Products were being sold on Amazon's website beginning in 2015 and that they delayed in bringing this action for more than four years, which is twice the applicable statute of limitations.  [Filing No. 151 at 51-54.]  Amazon asserts that it was prejudiced by the delay because: (1) Plaintiffs now seek disgorgement of profits for a period of over five years, and that period would likely have been shorter had it been made aware of the alleged infringement earlier; and (2) relevant evidence, including Plaintiffs' sales data, has been lost or destroyed within the past two years.  [Filing No. 151 at 54-55.]  Further, Amazon contends that the equities weigh in its favor in light of Plaintiffs' discovery abuses and submission of false statements to the Court in connection with its settlement with RNSO.  [Filing No. 151 at 55-57.]

In their Response/Reply, Plaintiffs reiterate that there was no unreasonable delay in filing this action because they did not find out about the infringement until March 2019. [Filing No. 172 at 37-38.] Plaintiffs distinguish the cases cited by Amazon and assert that they had no reason to know prior to March 2019 that Amazon was selling infringing products. [Filing No. 172 at 37-38.] Plaintiffs assert that Amazon's decision to continue selling Accused Products after being notified that they infringe belies any claim that it would have stopped selling such products had it known earlier of the infringement, and in any event, "because disgorgement of profits is an equitable remedy intended to deter infringing conduct, the concept of prejudice does not apply." [Filing No. 172 at 39.] Plaintiffs further argue that any evidence that has been lost is not relevant because Plaintiffs are not seeking to recover lost profits from their own lost sales. [Filing No. 173 at 39.] Plaintiffs contend that Amazon has not spent time or resources building its brand by selling the Accused Products and therefore has not been prejudiced. [Filing No. 172 at 40.] Finally, Plaintiffs argue that the Court need not weigh the equities because Amazon has not demonstrated that the elements of laches are met. [Filing No. 172 at 40.]

In its Reply, Amazon argues that actual knowledge is not required for laches, but rather constructive knowledge is sufficient, and Plaintiffs do not dispute that they searched Amazon's website five years ago for their marks or that such search would have revealed RNSO's products. [Filing No. 185 at 21.] Amazon also reiterates its arguments that it was prejudiced by the delay and that the equities weigh in its favor in light of Plaintiffs' misconduct during the course of this litigation. [Filing No. 185 at 21-23.]

"The doctrine of laches is derived from the maxim that those who sleep on their rights, lose them." *Chattanoga Mfg., Inc. v. Nike, Inc*., 301 F.3d 789, 792 (7th Cir. 2002). For laches to apply in a trademark case, the defendant must show that: (1) the plaintiff had actual or constructive

knowledge of the defendant's use of an allegedly infringing mark; (2) the plaintiff inexcusably delayed in taking action with respect to the defendant's use of the mark; and (3) the defendant would be prejudiced by allowing the plaintiff to assert its rights at this time. *Id.* at 792-93 (citations omitted). "[A] district court enjoys considerable discretion in determining whether to apply the doctrine of laches to claims pending before it." *Hot Wax, Inc. v. Turtle Wax, Inc.*, 191 F.3d 813, 819 (7th Cir. 1999).

With respect to constructive knowledge, the Supreme Court has explained that "where the question of laches is in issue the plaintiff is chargeable with such knowledge as he may have obtained upon inquiry, provided the facts already known by him were such as to put upon a man of ordinary intelligence the duty of inquiry." *Chattanoga Mfg.*, 301 F.3d at 793 (quoting *Johnston v. Standard Mining Co.*, 148 U.S. 360, 370 (1893)). The Seventh Circuit has held that "a trademark owner is 'chargeable with information it might have received had due inquiry been made.'" *Chattanoga Mfg.*, 301 F.3d at 793 (quoting *Safeway Stores, Inc. v. Safeway Quality Foods, Inc.*, 433 F.2d 99, 103 (7th Cir. 1970)).

In addition to knowledge and unwarranted delay, "[t]here must also be prejudice—reliance, to one's detriment, on a belief that delay signaled approval of the acts in question." *Blue Cross & Blue Shield Ass'n v. Am. Express Co.*, 467 F.3d 634, 640 (7th Cir. 2006). "A delay prejudices a defendant when the assertion of a claim available for some time would be inequitable in light of the delay in bringing that claim and ensues when a defendant has changed his position in a way that would not have occurred if the plaintiff had not delayed." *Chattanoga Mfg.*, 301 F.3d at 795. "Prejudice may be shown if the plaintiff's unexcused failure to exercise its rights caused the defendant to rely to its detriment and build up a valuable business around its trademark." *Id.*

Without deciding whether the fact that the Accused Products could be discovered through a search of Amazon's website—which is likely familiar to most ordinary people in this country and which Ms. Gabet admitted to searching—is sufficient to demonstrate constructive knowledge, the Court concludes that laches does not bar Plaintiffs' claims because Amazon was not sufficiently prejudiced.  Amazon's arguments regarding the spoilation of evidence and Plaintiffs' conduct during this litigation have already been addressed in the Court's order limiting the evidence that Plaintiffs can introduce and the damages that Plaintiffs can recover.  [*See* Filing No. 257.] Furthermore, because disgorgement of profits is an equitable remedy, the Court will be permitted to consider such things as Amazon's ubiquity and Plaintiffs' alleged failure to police their marks in deciding whether and to what extent to disgorge Amazon's profits.  *See Kansas v. Nebraska*, 574 U.S. 445, 464-65 (2015) (observing that "flexibility [is] inherent in equitable remedies," and therefore "disgorgement need not be all or nothing" (alteration in original) (citations omitted)). This is not a case in which Amazon invested time and resources into building a brand around the sale of the Accused Products, or otherwise changed its position in reliance on Plaintiffs' inaction. Accordingly, Plaintiffs' Motion to Summary Judgment is **GRANTED** to the extent that it seeks a judgment in its favor on Amazon's affirmative defense of laches.  Amazon's Cross-Motion is **DENIED** to the extent that it seeks judgment in its favor on that issue.

### B.  Validity of the Trademarks

Plaintiffs seek summary judgment on the issue of validity of the '750 Registration, the '283 Registration, and the trademarks covered by those registrations.  [Filing No. 136 at 21.] Specifically, Plaintiffs assert that registration creates a rebuttable presumption that the marks are valid, and both registrations became incontestable upon the USPTO's acceptance of the declarations filed under Sections 8 and 15 of the Lanham Act.  [Filing No. 136 at 21.]

In its Cross-Motion/Response, Amazon argues that the '283 Registration is invalid because Plaintiffs have submitted no evidence demonstrating that they sold or otherwise used in commerce any shampoos, conditioners, body soaps, or body powders bearing the RISE 'N SHINE mark prior to filing their Statement of Use Declaration in May 2011.  [Filing No. 151 at 57.]  Amazon argues that the label submitted along with the Statement of Use Declaration was not affixed to any product and no evidence exists showing sales of the products described in the '283 Registration prior to the alleged April 2011 date of first use.  [Filing No. 151 at 57-58.]  According to Amazon, the first evidence of use of the mark on the described products was a November 2012 advertisement promoting Rise 'N Shine Body Wash as a "new" product.  [Filing No. 151 at 58.]  Amazon contends that Plaintiffs' failure to respond to Interrogatory No. 6 and produce evidence of their quarterly revenues has hampered Amazon's ability to present its defense of invalidity, because if Amazon had that evidence, it would likely be able to plead and prove that the Statement of Use Declaration was false, and therefore the '283 Registration should be cancelled pursuant to 15 U.S.C. § 1064(3) because it was fraudulently obtained.  [Filing No. 151 at 58.]

In their Response/Reply, Plaintiffs assert that because Amazon does not contest the validity of the '750 Registration, summary judgment should be entered in Plaintiffs' favor on that issue. [Filing No. 172 at 6.]  Regarding the '283 Registration, Plaintiffs reiterate that the registration itself is prima facie evidence of the validity of the mark pursuant to 15 U.S.C. § 1115(a), and in order to survive summary judgment, Amazon must do more than speculate about the evidence of use that Plaintiffs might have designated and must come forward with evidence creating a material issue of fact.  [Filing No. 172 at 6-7.]  Nevertheless, Plaintiffs argue, Mr. Pappas's Statement of Use Declaration—which Amazon itself designated as evidence in support of its Cross-Motion— demonstrates that the mark was used in commerce beginning in April 2011, and therefore "it is

24

utterly frivolous for Amazon to claim that there is no evidence of first use of the mark." [Filing No. 172 at 7.] Plaintiffs assert that the label submitted to the USPTO along with the Statement of Use Declaration was not required to be affixed to any product under the USPTO regulations, and that the November 2012 advertisement does not negate that evidence of earlier use. [Filing No. 172 at 7-8.]

In its Reply, Amazon maintains that the trademark is invalid, noting that "plaintiffs do not dispute that they have submitted *no evidence* that they sold or otherwise used in commerce shampoos, conditioners, body soaps, or body powders prior to the time they filed a last-minute statement of use in May 2011 to salvage their expiring trademark application." [Filing No. 185 at 23 (emphasis in original).] Amazon contends that Plaintiffs cannot rely on Mr. Pappas's Statement of Use Declaration as evidence of use because (1) it is "legal boilerplate"; (2) no product on which the mark was used is identified; (3) it "does not recite how Mr. Pappas would have knowledge regarding sales of products," and if his statement was filed based on representations made by Plaintiffs, there is no evidence that they are true; and (4) the "argument that an attorney's boilerplate declaration forever insulates [Plaintiffs'] mark from a future challenge that a product was sold in commerce before the application expired is untenable" because Amazon cannot prove a negative but can only request proof of sales, which Plaintiffs have not produced. [Filing No. 185 at 23-24; Filing No. 185 at 24 n.21.] Amazon also argues that Plaintiffs do not dispute that they have spoliated evidence, and the Court should conclude that spoliation "gives rise to a negative presumption that lost evidence supports Amazon's claim." [Filing No. 185 at 24.] According to Amazon, Plaintiffs state that earlier sales occurred but acknowledge that they have no supporting evidence, which is insufficient to survive summary judgment. [Filing No. 185 at 24.]

In order to be registered under the Lanham Act, a mark must be capable of distinguishing the applicant's goods from those of others and must have been used in interstate commerce. *CAE, Inc. v. Clean Air Eng'g, Inc.*, 267 F.3d 660, 673 (7th Cir. 2001) (citations omitted). Registration affords the mark a rebuttable presumption of validity. *Id.* (citing 15 U.S.C. § 1115(a) ("[A] mark registered on the principal register . . . shall be prima facie evidence of the validity of the registered mark . . . and of the registrant's exclusive right to use the registered mark in commerce . . . , but shall not preclude another person from proving any legal or equitable defense or defect . . .which might have been asserted if such mark had not been registered.")). *See also Timelines, Inc. v. Facebook, Inc*., 938 F. Supp. 2d 781, 790 (N.D. Ill. 2013) ("When a trademark has been registered with the [US]PTO, under the Lanham Act, it is entitled to a presumption of validity; that is, a registered trademark is presumed to not be merely descriptive or generic; or, if descriptive, the mark has secondary meaning.").

The Lanham Act further provides that a mark used continuously in commerce for five years following the date of registration becomes incontestable. 15 U.S.C. § 1065. Even where a mark has become incontestable, a number of defenses are available to an alleged infringer, including that the registration was obtained fraudulently. *Specialized Seating, Inc. v. Greenwich Indus., LP*, 616 F.3d 722, 724 (7th Cir. 2010) (citing 15 U.S.C. § 1115(b)). However, "[a]ll a finding of fraud does is knock out the mark's 'incontestable' status, and its registration, under § 1115(b)(1). It does not affect the mark's validity, because a trademark need not be registered to be enforceable." *Specialized Seating*, 616 F.3d at 728; *see also Matal v. Tam*, 137 S. Ct. 1744, 1752-53 (2017) (explaining that an unregistered trademark may be enforceable under the Lanham Act and entitled to protection under other federal statutes and state common law). Stated differently, independent of registration status, "[t]he validity of a mark pertains to whether a 'word, term, name, symbol or

26

device' is entitled to protection under trademark law by focusing on whether that mark specifically identifies and distinguishes one company's goods or services from those of its competitors." *Platinum Home Mortg. Corp. v. Platinum Fin. Grp., Inc.*, 149 F.3d 722, 726 (7th Cir. 1998). "In general, the level of trademark protection available corresponds to the distinctiveness of the mark." *Id.* at 727.

Amazon's argument that the '283 Registration is invalid because it was obtained by fraud misses the point. As an initial matter, Amazon ignores Ms. Gabet's testimony suggesting that the mark has been in use in commerce since before the registrations, and used specifically on shampoos, body soap, and body powders since the date indicated on the Statement of Use Declaration, [Filing No. 136-5 at 3-4], which would be sufficient, at the very least, to create an issue of material fact concerning the validity of the '283 Registration. Regardless, even if Amazon can demonstrate that the '283 Registration was obtained fraudulently, all that "does is knock out the mark's 'incontestable' status, and its registration," it would not render the mark invalid. *See Specialized Seating*, 616 F.3d at 728. Amazon makes no argument, aside from the registration issue, that the RISE 'N SHINE mark is not a protectable trademark as it relates to shampoos, conditioners, body soaps, or body powders based on its distinctiveness or use. Furthermore, the evidence demonstrates that Annie Oakley currently sells, at the least, shampoo and conditioner using the RISE 'N SHINE mark, and did so during times relevant to this litigation.[5] [E.g., Filing No. 149-13 at 2.] Amazon's incomplete argument on the issue of validity therefore does not

---

[5] The Court acknowledges Amazon's position that Plaintiffs have not preserved records of their sales, which complicates many of the issues involved in this lawsuit. Having already accounted for the lack of evidence in imposing sanctions against Plaintiffs and limiting their ability to recover damages, [Filing No. 257], and given Ms. Gabet's testimony that the Mark has been in use, the Court rejects Amazon's suggestion that the Court should "hold that [Plaintiffs' spoliation of evidence] gives rise to a negative presumption that lost evidence supports Amazon's claim," [Filing No. 185 at 24].

demonstrate that the Mark, as used on any product relevant to this case, is not entitled to trademark protection.

Accordingly, the Court **GRANTS** Plaintiffs' Motion for Summary Judgment to the extent that the Court concludes that the '283 Registration and the '750 Registration are both valid and the RISE N' SHINE mark is protectable as a trademark with respect to the kinds of goods covered by both registrations.  The Court **DENIES** Amazon's Cross-Motion for Summary Judgment to the extent that it seeks an opposite finding relating to the '283 Registration.

### C.  Whether the Accused Products Infringe: Likelihood of Confusion

In their Motion for Summary Judgment, Plaintiffs argue that the Accused Products infringe on their trademarks because the likelihood of confusion is high.  [Filing No. 136 at 22-24.]  In addition to discussing each of the likelihood of confusion factors, Plaintiffs rely upon the USPTO's rejection of RNSO's and others' trademark applications as evidence of likelihood of confusion.  [Filing No. 136 at 22-24.]  Plaintiffs also assert that Amazon admitted infringement, pointing to statements made by Amazon's representative during his deposition.  [Filing No. 136 at 15-16.]

In its Cross-Motion/Response, Amazon argues that there is no likelihood of confusion.  [Filing No. 151 at 35-46.]  In addition, Amazon contends that the USPTO's rejections of RNSO's and others' trademark applications are not evidence of likelihood of confusion because the trademark examiner did not consider in each case the seven likelihood of confusion factors and was not presented with the evidence that is currently before the Court.  [Filing No. 151 at 36.]  Amazon also maintains that Plaintiffs' contentions that Amazon's legal department concluded that infringement occurred or that Amazon admitted infringement are false.  [Filing No. 151 at 31-32.]

In their Response/Reply, Plaintiffs reiterate their arguments concerning the likelihood of confusion factors and maintain that the likelihood of confusion is high.  [Filing No. 172 at 14-27.]

Plaintiffs also reiterate that the USPTO's findings of likelihood of confusion in denying RNSO's and others' trademark applications are evidence of likelihood of confusion.  [Filing No. 172 at 12-13.]  In addition, Plaintiffs rely upon what they deem a "smoking gun," and attach an email produced by Amazon and dated July 17, 2020.  [Filing No. 172 at 2-3.]  According to Plaintiffs, this email demonstrates that Amazon had concluded internally that the Accused Products infringed upon Plaintiffs' trademarks, and that the admission is further evidence of infringement.  [Filing No. 172 at 2-3; Filing No. 172 at 11-12.]

Amazon maintains in its Reply that no likelihood of confusion exists.  [Filing No. 185 at 10-17.]  It reiterates that the USPTO's findings are not dispositive because the trademark examiner did not consider the same evidence or all of the relevant factors.  [Filing No. 185 at 18.]  Amazon further asserts that it never admitted infringement and that removing products from its website did not amount to an admission that infringement occurred, its legal department never decided that infringement occurred, and the July 17, 2020 email did not constitute a determination that infringement occurred.  [Filing No. 185 at 17-18.]

Plaintiffs' federal and state claims are analyzed under the same standard.  *See Fortres Grand Corp. v. Warner Bros. Ent. Inc.*, 763 F.3d 696, 701 n.4 (7th Cir. 2014) ("[A]ll relevant authority we have found analyzes Indiana unfair competition claims based on trademarks the same as Lanham Act trademark claims, so we analyze all the claims together." (emphasis removed)); *Dwyer Instruments, Inc. v. Sensocon, Inc.*, 873 F. Supp. 2d 1015, 1040 (N.D. Ind. 2012) ("The analysis under the Lanham Act for unfair competition also applies to claims for unfair competition under Indiana common law.")[6]

---

[6] It is true that the common law tort of unfair competition is broadly defined and can encompass acts other than those alleged in this lawsuit.  *See Panther Brands, LLC v. Indy Racing League, LLC*, 126 N.E.3d 898, 908 (Ind. Ct. App.) ("Although the law of unfair competition has been

To prevail on either of these claims, a plaintiff must establish that: (1) its mark is protectable; and (2) the defendant's use of the mark is likely to cause confusion among consumers. *CAE, Inc.*, 267 F.3d at 673-74 (citations omitted). "This circuit uses the following seven factors to determine the likelihood of confusion: (1) the similarity between the marks in appearance and suggestion; (2) the similarity of the products; (3) the area and manner of concurrent use; (4) the degree of care likely to be exercised by consumers; (5) the strength of the plaintiff's mark; (6) any evidence of actual confusion; and (7) the intent of the defendant to 'palm off' his product as that of another." *Sorensen v. WD-40 Co.*, 792 F.3d 712, 726 (7th Cir. 2015).

"Likelihood of confusion is a question of fact, usually reserved for the jury." *Id.* "[T]he question of whether likelihood of confusion exists may be resolved on summary judgment 'if the evidence is so one-sided that there can be no doubt about how the question should be answered.'" *CAE, Inc.*, 267 F.3d at 677 (quoting *Door Sys., Inc. v. Pro–Line Door Sys., Inc.*, 83 F.3d 169, 173 (7th Cir. 1996)).

After reviewing the evidence, the Court concludes that a genuine issue of material fact remains as to whether Amazon's sale of Accused Products is likely to cause confusion among consumers. Although both parties appear to believe that the evidence "is so one-sided" in their respective directions that there can be no doubt as to how the likelihood of confusion question should be resolved, the Court disagrees. That determination must be reserved for a factfinder.

---

defined as the palming off of one's goods or services as that of someone else, and the attempt thereof, the tort of unfair competition is much broader and also includes actions for the interference with a contract or business relationship, as well as for predatory price cutting.") But because Plaintiffs' Indiana unfair competition claim is limited to alleged trademark infringement and Plaintiffs make no separate arguments relating to their state law claim, the Court will treat the state and federal claims the same.

Two matters warrant further comment.  First is Plaintiffs' repeated assertion that Amazon admitted infringement.  Plaintiffs' interpretation of the email that they deem a "smoking gun" is, at best, a stretch.  The July 17, 2020 email is from Amazon's Seller Performance Team to RNSO's owner, Mr. Young.  [Filing No. 170-2.]  It begins with the following line: "We removed some of your listings because we received a report from a rights owner that they *may* infringe the following trademark."  [Filing No. 170-2 at 2 (emphasis added).]  The email further states that the listings were removed because "[o]ne or more of [Mr. Young's] listings *may* be infringing the intellectual property rights of others."  [Filing No. 170-2 at 2 (emphasis added).]  Further down in the email, there is a line that reads "Infringement type: Trademark" and the subsequent line lists a complaint ID number.  [Filing No. 170-2 at 2.]  Nothing in this email states that any definitive determination had been made as to whether the Accused Products infringe upon Plaintiffs' trademarks.  Plaintiffs' repeated suggestion otherwise is misleading.

Plaintiffs' characterization of the Amazon representative's deposition testimony is likewise inaccurate.  The representative testified that he was unsure about why Amazon removed the listings for RNSO's products, but that the legal team made the decision to do so, that decision "did have something to do with trademark infringement," and to his knowledge the decision was "due to a case that was-- about trademark infringement."  [Filing No. 136-3 at 10; Filing No. 136-3 at 34.] These statements show that Amazon was reacting to the possibility of trademark infringement, not that it had determined or admitted that trademark infringement had in fact occurred.

The other issue worthy of comment is the USPTO's findings regarding likelihood of confusion.  Plaintiffs cite no authority for the proposition that these findings are dispositive or binding on this Court.  Indeed, courts have concluded that "the initial rejections by the USPTO's trademark examining attorneys are not evidence of a likelihood of confusion." *Ellington v. Gibson*

31

*Piano Ventures, Inc.*, 2005 WL 1661729, at *6 (S.D. Ind. June 24, 2005) (citing *A & H Sportswear, Inc. v. Victoria's Secret Stores, Inc.*, 237 F.3d 198, 220 (3rd Cir. 2000) (finding that while an "initial [US]PTO determination by an examining attorney may be considered, it need not be given weight when the [US]PTO attorney did not review all the evidence available to the District Court")); *see also RGB Plastic, LLC v. First Pack, LLC*, 184 F. Supp. 3d 649, 664 (N.D. Ill. 2016) (noting that an examiner's out-of-court statement was hearsay and that "[t]he other problem with offering the examiner's rejection into evidence is a foundation-type concern over the basis of the rejection: what exactly did the [US]PTO examiner consider in arriving at the conclusion? If the examiner considered evidence that is not presented to the factfinder during the trial, or the examiner did not consider evidence that the factfinder will consider, then the probative value of the examiner is questionable.").

In sum, Plaintiffs' Motion for Summary Judgment is **DENIED** to the extent that it seeks a determination that the Accused Products infringe.  Amazon's Cross-Motion is **DENIED** to the extent that it seeks a determination that the Accused Products do not infringe.  This issue must be resolved by the factfinder, and Plaintiffs' claims for trademark infringement under the Lanham Act and unfair competition under Indiana law remain for adjudication at trial.

In an attempt to streamline the other issues that remain to be resolved at trial, the Court will assume for the remainder of this Order, without deciding, that the Accused Products do infringe, solely for purposes of determining the scope of Amazon's potential liability.  Plaintiffs' various theories of liability are addressed in turn below.

### D. Amazon's Liability for Potential Infringement

#### 1. Direct Infringement and Liability for Third Party Sales

In their Motion for Summary Judgment, Plaintiffs' argument in support of a theory of direct infringement, in its entirety, is as follows: "Amazon also directly infringed by selling Accused Products, at the very least, through its warehouse sales." [Filing No. 136 at 26 (citations omitted).]

In its Cross-Motion/Response, Amazon argues that it is not liable for RNSO's sales of Accused Products, because Amazon was not the seller in those transactions and did not take title to any products that were sold. [Filing No. 151 at 46.] In a footnote, Amazon states that "[t]he only exception is the handful of used products that were returned to, and re-sold by, Amazon, totaling $262.60 in profits." [Filing No. 151 at 47 n.1.] With respect to its argument that it is not the seller and is therefore not liable for RNSO's alleged infringement, Amazon cites *Milo & Gabby, LLC v. Amazon.com, Inc*., 2015 WL 4394673, at *6 (W.D. Wash. July 16, 2015), *aff'd*, 693 F. App'x 879 (Fed. Cir. 2017). [Filing No. 151 at 46.] Amazon argues that it had no role in naming RNSO's products, designing their packaging, or creating the sales listings for them, and merely storing and shipping products is not sufficient to make Amazon the seller for purposes of intellectual property laws. [Filing No. 151 at 47.]

In their Response/Reply, Plaintiffs argue that Amazon's "not the seller" argument is not persuasive because "the tide is turning" and courts are beginning to recognize Amazon as a seller for purposes of trademark infringement actions. [Filing No. 172 at 2-3 (citing *State Farm Fire & Cas. Co. v. Amazon.com Servs., Inc*., 137 N.Y.S.3d 884 (N.Y. Sup. Ct. 2020); *Papataros v. Amazon.com, Inc*., 2019 WL 4011502, at *1 (D.N.J. Aug. 26, 2019).] Plaintiffs also assert that the "not the seller" argument does not allow Amazon to escape liability in this case because: (1) Amazon is vicariously and contributorily liable; and (2) Amazon admits it was the seller for its

warehouse sales, and therefore is directly liable for infringement based on those sales.  [Filing No. 172 at 3.]

Amazon argues in its Reply that Plaintiffs neither address nor dispute the argument that Amazon is not liable for sales by third parties under the *Milo & Gabby* line of cases.  [Filing No. 185 at 9.]  Amazon distinguishes the cases cited by Plaintiffs for the proposition that Amazon is the seller, arguing that those cases involved irrelevant issues of state law and that federal intellectual property law makes clear that title is determinative for purposes of deciding whether Amazon is a seller.  [Filing No. 185 at 9 n.2.]  Amazon further argues that it did not admit that its warehouse sales constituted direct infringement, but instead admitted that $262.60 "would be the limit of liability for direct infringement," if Plaintiffs could demonstrate that infringement occurred.  [Filing No. 185 at 9 n.3.]

At the outset, the Court observes that Amazon's "not the seller" argument is largely unresponsive to Plaintiffs' claims.  Plaintiffs assert that Amazon was the seller with respect to the warehouse sales totaling $262.60 in profits, and Amazon does not dispute that assertion. Accordingly, if it is later determined by the factfinder that the Accused Products infringe Plaintiffs' trademarks, Amazon may be directly liable for infringement resulting from the warehouse sales.

Regarding all other sales of Accused Products made by RNSO through Amazon's website, Plaintiffs do not assert that Amazon is directly liable as a seller of the products.  Instead, Plaintiffs pursue theories of indirect liability, discussed further below, which do not depend upon Amazon being deemed the seller.  The Court need not address Amazon's "not the seller" argument or determine whether the *Milo & Gabby* line of cases controls the question of Amazon's status as the seller (or not the seller), because those issues are not raised by this lawsuit.

34

In sum, the only direct liability at issue is liability stemming from the warehouse sales.  It is undisputed that Amazon was the seller in those transactions and therefore could be liable if the Accused Products do indeed infringe Plaintiffs' trademarks.  However, because the Court has already determined that genuine issues of material fact remain as to whether the Accused Products infringe, Amazon's potential direct liability cannot be determined on summary judgment. Plaintiffs' Motion for Summary Judgment is **DENIED** to the extent that it seeks a judgment that Amazon directly infringed its trademarks through warehouse sales.  Amazon's Cross-Motion for Summary Judgment is **DENIED** to the extent that it seeks a judgment that it did not directly infringe Plaintiffs' trademarks, but Amazon's Motion is **GRANTED** to the extent that the Court will limit Amazon's potential liability for direct infringement to the warehouse sales totaling $262.60 in profits.

### 2. *Indirect Infringement*

#### a.  Vicarious Liability

Plaintiffs did not argue in support of their Motion for Summary Judgment that Amazon is vicariously liable for RNSO's infringement, instead arguing that Amazon is contributorily liable. [*See* Filing No. 136.]  Amazon argued in its Cross-Motion/Response that it is not vicariously liable, [Filing No. 151 at 47-48], and Plaintiffs then argued in their Response/Reply that Amazon is vicariously liable.  [Filing No. 172 at 10.]  Amazon argued in its Reply that Plaintiffs waived any argument that Amazon is vicariously liable by failing to raise the issue in their opening brief and, in any event, it is not vicariously liable.  [Filing No. 185 at 19-20.]

It is well-settled in this Circuit that "arguments raised for the first time in a reply brief are waived." *Wonsey v. City of Chicago*, 940 F.3d 394, 398 (7th Cir. 2019); *see also O'Neal v. Reilly*, 961 F.3d 973, 974 (7th Cir. 2020) ("[W]e have repeatedly recognized that district courts are

entitled to treat an argument raised for the first time in a reply brief as waived.").  Because Plaintiffs did not assert vicarious liability in their opening brief, any argument that Amazon is vicariously liable, or that summary judgment should be entered in favor of Plaintiffs on that issue, is waived.[7] To the extent that Plaintiffs sought summary judgment on the issue of vicarious liability, their Motion for Summary Judgment is **DENIED**.  To the extent Amazon sought a judgment that Plaintiffs may not pursue a theory of vicarious liability, Amazon's Cross-Motion is **GRANTED**.

> b. Contributory Liability

Plaintiffs argue that Amazon is liable for contributory infringement based on RNSO's sale of infringing products on Amazon's website, relying on the Seventh Circuit's decision in *Hard Rock Cafe Licensing Corp. v. Concession Services, Inc*., 955 F.2d 1143, 1145 (7th Cir. 1992). [Filing No. 136 at 24-25.]  Plaintiffs assert that Amazon is comparable to the flea market operator found to be liable for a vendor's infringement in the *Hard Rock Café* case, because Amazon makes virtual storefronts available for vendors and provides the software, services, systems, and technology to support vendors.  [Filing No. 136 at 25.]  Plaintiffs further argue that Amazon was "more than 'willfully blind'" to RNSO's infringement because Amazon was informed about the '283 Registration and the '750 Registration in 2018, again in July 2019, and yet again in August

---

[7] The Court recognizes that to the extent that Amazon raised vicarious liability in the Cross-Motion portion of its combined Cross-Motion/Response, Plaintiffs were permitted to respond to that argument in the Response portion of their combined Response/Reply.  Although the combined nature of the briefing complicates the issue slightly in that Plaintiffs' Response/Reply is not strictly a reply brief as contemplated by the caselaw on waiver, the fact remains that Plaintiffs may not rely on a ground not raised in their opening brief to seek summary judgment in their favor.  And although the Court can understand Amazon's desire to thoroughly address alternative possibilities, the Court can see no sensible reason why Amazon would have brought up a theory not raised by Plaintiffs, thereby prompting a response from Plaintiffs, only to then take issue with Plaintiffs' response because Plaintiffs never raised the issue in the first instance.

2019 when the Amended Complaint was filed in this action, but nonetheless continued to sell infringing products. [Filing No. 136 at 25.]

In its Cross-Motion/Response, Amazon argues that liability for contributory infringement requires that the alleged infringer have actual knowledge of or be willfully blind to the infringement, and Plaintiffs cannot establish either of those things. [Filing No. 151 at 48-49.] Specifically, Amazon asserts that it had no notice of Plaintiffs' contention that the Accused Products infringe until November 2019, when it was served with the Amended Complaint in this case. [Filing No. 151 at 48.] It further argues that it had no affirmative duty to monitor the tens of millions of products listed on its website for potential infringement and that Plaintiffs' previous infringement complaints regarding products not at issue in this case were not sufficient to give Amazon notice of the potential infringement related to the Accused Products specifically identified in the Amended Complaint. [Filing No. 151 at 48-49.]

In their Response/Reply, Plaintiffs reiterate that Amazon received notice of the alleged infringement in the July 24, 2019 cease and desist letter, and again when it was served with the Amended Complaint in November 2019. [Filing No. 172 at 9.] Plaintiffs contend that, although Amazon had the power to remove the infringing listings from its website, it chose not to do so and continued to sell infringing products through at least July 2020. [Filing No. 172 at 9.] Accordingly, Plaintiffs argue, they are entitled to summary judgment on the issue of Amazon's contributory liability. [Filing No. 172 at 9-10.]

Amazon replies that no pre-suit liability can exist because the July 2019 letter identified only products that are not accused in this case. [Filing No. 195 at 20.] Amazon also argues that it should not be held liable for sales that occurred after RNSO re-listed its products at Plaintiffs'

request, because Amazon was not aware that RNSO had re-listed the products or that sales had resumed as a result.  [Filing No. 185 at 20.]

In *Hard Rock Café*, the Seventh Circuit considered the extent to which the owner/operator of a flea market was liable for trademark infringement committed by a vendor.  955 F.2d at 1148-50.  In doing so, the Court acknowledged that "[i]t is well established that 'if a manufacturer or distributor intentionally induces another to infringe a trademark, or if it continues to supply its product to one whom it knows or has reason to know is engaging in trademark infringement, the manufacturer or distributor is contributorially responsible for any harm done as a result of the deceit.'"  *Id*. at 1148 (quoting *Inwood Laboratories, Inc. v. Ives Laboratories, Inc*., 456 U.S. 844, 854 (1982)).  Applying that standard to the flea market owner/operator, the Court concluded that the flea market owner/operator "may be liable for trademark violations by [the vendor] if it knew or had reason to know of them." *Hard Rock Café*, 955 F.2d at 1149.[8]

---

[8] Other courts have noted that the *Inwood Laboratories* test for contributory infringement on its face applies only to manufacturers and distributors of goods, but nonetheless have applied it to providers of services like Amazon.  *See, e.g.*, *Tiffany (NJ) Inc. v. eBay Inc*., 600 F.3d 93, 104 (2d Cir. 2010) (recognizing that courts have "extended the test to providers of services," and citing the Seventh Circuit's decision in *Hard Rock Café* as one example of such extension); *Lockheed Martin Corp. v. Network Sols., Inc*., 194 F.3d 980, 984 (9th Cir. 1999) (opining that *Hard Rock Café* "teach[es] us that when measuring and weighing a fact pattern in the contributory infringement context without the convenient 'product' mold dealt with in *Inwood Lab*., we consider the extent of control exercised by the defendant over the third party's means of infringement" and "[d]irect control and monitoring of the instrumentality used by a third party to infringe the plaintiff's mark permits the expansion of *Inwood Lab*.'s 'supplies a product' requirement for contributory infringement").  The *Hard Rock Café* Court did not lend much discussion to this products/services distinction, the Seventh Circuit does not appear to have addressed it since, and this Court need not do so now.  Neither party suggests that a different standard should apply, and in any event the Court concludes that Amazon's marketplace website is sufficiently analogous to the flea market in *Hard Rock Café* to apply that caselaw to the facts here.  To the extent that Amazon is required to exercise some degree of control over the instrumentality of infringement, as suggested by *Lockheed Martin* and by other courts, Amazon's operation of its website would certainly meet that standard.

The *Hard Rock Café* Court further recognized that "willful blindness is equivalent to actual knowledge for purposes of the Lanham Act," and therefore the flea market owner/operator could be liable for vendors' trademark infringement to which it was willfully blind. *Id.* "To be willfully blind, a person must suspect wrongdoing and deliberately fail to investigate." *Id.* However, the Court clarified that the owner/operator had "no affirmative duty to take precautions against the sale of counterfeits," because "[a]lthough the 'reason to know' part of the standard for contributory liability requires [the owner/operator] (or its agents) to understand what a reasonably prudent person would understand, it does not impose any duty to seek out and prevent violations." *Id.*

Assuming that RNSO's sales of the Accused Products did infringe Plaintiffs' trademarks, Amazon could be contributorily liable to the extent that it knew of, had reason to know of, or was willfully blind to such infringement. Plaintiffs point to three events that they contend could have provided Amazon with sufficient notice of RNSO's alleged infringement: (1) Plaintiffs' 2018 complaints to Amazon relating to products sold by Eden's Garden; (2) the July 2019 cease and desist letter sent by Plaintiffs' counsel to Amazon; and (3) the filing of the Amended Complaint in this action in August 2019.

The 2018 complaints relating to products sold by Eden's Garden were plainly insufficient to provide Amazon with notice of RNSO's alleged infringement. Plaintiffs assert that these complaints "informed Amazon of the '283 and '750 registrations," [Filing No. 136 at 25], and that may be true. However, these complaints did not reference RNSO or any of the Accused Products, and therefore could not have alerted Amazon to the particular infringement alleged in this lawsuit. Amazon had no duty to scour the tens of millions of products on its website for products that infringed Plaintiffs' trademarks, absent some indication that there might be other products that did so.

Turning to the July 2019 cease and desist letter, the Court notes that the letter does not mention any Accused Products or identify with any particularity the products that are alleged to infringe.  The only specific product included in the letter is a product that was not sold by RNSO. The result would be absurd if the Court were to accept such a broad and vague complaint as providing actual knowledge, constructive knowledge, or even a duty to investigate further.  The letter referenced Plaintiffs' registrations, accused Amazon of selling "products that infringe these registrations, including but not limited to products sold in connection with Amazon accounts 'Rise N Shine Online, LLC' and 'E & E Premier Distributors,'" and asked Amazon to "immediately cease and desist all use of the terms Rise N Shine and/or Rise and Shine in connection with the sale, promotion or advertising of products confusingly similar to those that are the subject of either of the above registrations."  [Filing No. 135-14.]  There is no evidence in the record to suggest how many products were associated with the mentioned Amazon accounts, or how many other products on Amazon's website may have used words in their listings that were similar to the RISE 'N SHINE mark.  Plaintiffs also did not provide a helpful description of their own products or the products they believed to be infringing.  Plaintiffs seem to suggest that, in response to this vague letter and without any direction as to the products that were being accused, Amazon should have sorted through an unknown number of potentially relevant product listings, determined which products were "confusingly similar" to Plaintiffs' products, and removed those products from the website. Such suggestion is entirely unreasonable.  The Court concludes that merely mentioning RNSO in a letter containing a vague and extremely broad allegation of infringement was not sufficient to alert a reasonable person to the possibility that the specific infringement alleged in this lawsuit was taking place.  As a result, the July 2019 letter did not provide Amazon with the notice required to support a claim for contributory infringement.

The parties do not dispute that service of the Amended Complaint on November 1, 2019 provided Amazon with sufficient knowledge of the alleged infringement.  Thus, if the factfinder ultimately determines that the Accused Products infringe Plaintiffs' trademarks, then Amazon may be contributorily liable for infringement that occurred after November 1, 2019.  But because the issue of infringement remains unresolved, Plaintiffs' Motion for Summary Judgement is **DENIED** to the extent that they seek judgment on the issue of contributory liability.  Amazon's Cross-Motion for Summary Judgment is **DENIED** to the extent that it seeks judgment that it is not contributorily liable, but **GRANTED** to the extent that it seeks to limit its potential liability to sales that occurred after November 1, 2019.

### 3.  *Willfulness*

Plaintiffs "request that the Court find that Amazon acted willfully" in infringing Plaintiffs' trademarks.  [Filing No. 136 at 27.]  But, as discussed above, the infringement issue remains to be resolved, and in any event, willfulness is a question of fact.  *See Badger Meter, Inc. v. Grinnell Corp.*, 13 F.3d 1145, 1158-59 (7th Cir. 1994).  It would be inappropriate for the Court to decide that question at the summary judgment stage, particularly in light of the evidence presented by Amazon, which suggests that at least some of Amazon's relisting of Accused Products may have been inadvertent.  Accordingly, Plaintiffs' Motion for Summary Judgment is **DENIED** to the extent that it seeks a finding of willfulness, and Amazon's Cross-Motion for Summary Judgment is **DENIED** to the extent that it seeks the opposite finding.  The issue of willfulness must be resolved by the factfinder.

### 4.  *Statute of Limitations and Mitigation of Damages*

Amazon argues that the two-year statute of limitations applies to limit Plaintiffs' potential recovery to profits realized after August 2017.  [Filing No. 151 at 61.]  Amazon also asserts that

Plaintiffs failed to mitigate damages by waiting to assert their claims against Amazon.  [Filing No. 151 at 61-62.]

In light of the Court's determination above that Amazon's potential liability, should the factfinder find that infringement occurred, is limited to the specified warehouse sales and all sales that occurred after November 1, 2019, the Court need not further consider issues relating to the statute of limitations or mitigation of damages.

### 5.  *Permanent Injunctive Relief*

Plaintiffs seek a permanent injunction preventing Amazon from further advertising, marketing, or selling Accused Products or other products in the same class bearing the RISE 'N SHINE mark.  [Filing No. 136 at 29-32.]  However, because Plaintiffs' infringement claims remain unresolved, the Court cannot determine at this time whether injunctive relief is appropriate. Plaintiffs' Motion for Summary Judgment is **DENIED** to the extent that it seeks a permanent injunction.  Amazon's Cross-Motion for Summary Judgment is **DENIED** to the extent that it seeks a judgment that Plaintiffs are not entitled to injunctive relief.

### 6.  *Disgorgement of Profits*

Plaintiffs request that the Court award them Amazon's profits from the sale of Accused Products as a remedy for the alleged infringement.  [Filing No. 136 at 27-29.]  Amazon, on the other hand, contends that the Court should not do so, because there is no evidence that RNSO's sales were driven by the use of the RISE 'N SHINE mark.  [Filing No. 151 at -61.]  Again, the merits of Plaintiffs' claim of infringement remain unresolved.  And whether RNSO's sales were driven by its use of the Mark is a question of fact not appropriate for resolution at this stage of the litigation.  Accordingly, Plaintiffs' Motion for Summary Judgment is **DENIED** to the extent that it seeks disgorgement of Amazon's profits.  Amazon's Cross-Motion for Summary Judgment is

also **DENIED** to the extent that it seeks a judgment that its profits cannot be disgorged.  Whether and to what extent the disgorgement of Amazon's profits is proper shall be determined after the issues of liability are resolved and the equities are weighed.  The Court expresses no opinion at this time concerning whether the equities weigh in favor or against disgorging Amazon's profits in the event that liability is established, and nothing in this discussion should be construed as an indication that disgorgement will or will not be permitted if a finding of infringement is made.  Instead, the Court is merely concluding that, based on the current record and applying the summary judgment standard, no determination on that issue can be made where there are disputed issues of material fact.

   *7.   Corrective Advertising Damages*

   Although the parties' briefs contain arguments relating to Plaintiffs' request for corrective advertising damages, [Filing No. 136 at 20-21; Filing No. 151 at 62-63], the Court has since imposed sanctions against Plaintiffs preventing them from recovering actual damages of any kind, [Filing No. 257 at 31; Filing No. 257 at 39].   Accordingly, Plaintiffs' Motion for Summary Judgment is **DENIED** to the extent that it seeks a finding that Plaintiffs are entitled to corrective advertising damages, and Amazon's Cross-Motion for Summary Judgment is **GRANTED** to the extent that it seeks a finding that Plaintiffs are not entitled to recover such damages.

**V.**

**MOTION TO STRIKE JURY DEMAND**

   Amazon argues that Plaintiffs' demand for a jury trial should be stricken because: (1) the Lanham Act does not create a statutory right to a jury trial; (2) there is no constitutional right to a jury trial on claims of trademark infringement, false designation of origin, or unfair competition (whether asserted under the Lanham Act or common law), where only equitable relief is sought; and (3) the only remaining remedies available to Plaintiffs—injunctive relief and disgorgement of

profits—are purely equitable in nature, as Plaintiffs have been precluded from seeking actual damages in this case.  [Filing No. 252 at 8-15.]

Plaintiffs respond that they are pursuing a claim for common law unfair competition under Indiana law, which entitles them to seek punitive damages, and therefore they are entitled to a trial by jury.  [Filing No. 164 at 1-4.]  According to Plaintiffs, the Court's Order prohibited them from "seeking actual damages," but does not prohibit them from seeking punitive damages, and punitive damages are a legal rather than equitable remedy.  [Filing No. 264 at 1 (citing Filing No. 257 at 39).]  Plaintiffs contend that "[t]he fact that punitive damages are available under Annie Oakley's common law unfair competition claim is a sufficient ground to deny" Amazon's motion, and that the United States and Indiana Constitutions protect their right to a jury trial in this action.  [Filing No. 264 at 4.]

In reply, Amazon argues that "Plaintiffs' interpretation of the Court's orders is strained," but even if Plaintiffs are correct that the Court has not expressly prohibited them from seeking punitive damages, they still may not do so, because "it is black letter law in Indiana that a plaintiff *must recover actual damages* in order to seek punitive damages." [Filing No. 265 at 5 (emphasis in original).]  Accordingly, Amazon argues, because Plaintiffs are indisputably prohibited from recovering actual damages, they are necessarily prohibited from recovering punitive damages. [Filing No. 265 at 5-6; Filing No. 265 at 8-12.]  Amazon further contends that Plaintiffs do not dispute that no statutory right to a jury trial exists or that every other circuit court to address the issue has concluded that no historic right to a jury trial exists for claims under the Lanham Act or for unfair competition where only equitable remedies are sought.  [Filing No. 265 at 6-7.] Moreover, Amazon argues, Plaintiffs do not dispute that if they are not permitted to seek punitive damages, they are not entitled to a jury trial.  [Filing No. 265 at 8.]

Where, as here, a party has demanded a trial by jury, the trial on all issues must be by jury unless the parties stipulate to a nonjury trial or "the court, on motion or on its own, finds that on some or all of those issues there is no federal right to a jury trial." Fed. R. Civ. P. 39(a). To determine whether a right to a jury trial exists, a court must first examine whether the statute under which the claims are brought confers a right to a jury trial, and if not, whether the Seventh Amendment confers such a right. City of Monterey v. Del Monte Dunes at Monterey, Ltd., 526 U.S. 687, 707-08 (1999).

The Seventh Amendment states that "[i]n Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved." U.S. Const. amend. VII. "It is settled law that the Seventh Amendment does not apply" in cases seeking only injunctive or equitable relief. City of Monterey, 526 U.S. at 719 (citing cases). See also Kramer v. Banc of Am. Sec., LLC, 355 F.3d 961, 966 (7th Cir. 2004) ("There is no right to a jury where the only remedies sought (or available) are equitable.").

Plaintiffs do not dispute that the Lanham Act does not create a statutory right to a trial by jury. [See Filing No. 264 at 4 (Plaintiffs' response, stating that "[i]t does not matter that the 'Lanham Act does not expressly create' a right to trial by jury").] See also Chicago Mercantile Exch. Inc. v. Ice Clear US, Inc., 2020 WL 5370625, at *2 (N.D. Ill. Aug. 10, 2020) ("[N]othing in the language of the Lanham Act creates a right to a jury trial.").

It is also clear that Plaintiffs have no Seventh Amendment right to a jury trial on their Lanham Act claims, because the Court's earlier Order imposing sanctions prohibits Plaintiffs from pursuing actual damages and they instead seek only equitable relief in the form of disgorgement of profits and a permanent injunction. The Seventh Amendment does not apply to these claims because Plaintiffs seek only equitable relief and actual damages have been foreclosed. See City of

45

*Monterey*, 526 U.S. at 719; *Kramer*, 355 F.3d at 966.  *See also Hard Candy, LLC v. Anastasia Beverly Hills, Inc.*, 921 F.3d 1343, 1358 (11th Cir. 2019) ("The two Courts of Appeals that have addressed this precise question—the Sixth and Ninth Circuits—have agreed with our conclusion that a claim for an accounting and disgorgement of profits under the Lanham Act is equitable in nature and, therefore, that the Seventh Amendment's guarantee of a jury trial does not apply."); *DR Distributors, LLC v. 21 Century Smoking, Inc.*, 513 F. Supp. 3d 839, 864 n.3 (N.D. Ill. 2021) ("Jury trials are not available for Lanham Act claims that are equitable."); *Chicago Mercantile Exch.*, 2020 WL 5370625, at *2 (concluding that plaintiff "does not have a right to a jury trial on its request for disgorgement" under the Lanham Act).

Plaintiffs' only ground for opposing the Motion to Strike Jury Demand is that they have a right to trial by jury on their Indiana common law claim for unfair competition, for which they seek legal (rather than equitable) relief in the form of punitive damages.  [Filing No. 264 at 1-4.] Plaintiffs rely on both the federal and Indiana Constitutions.  [Filing No. 264 at 1-4.]

"Article I, section 20 of the Indiana Constitution reads, 'In all civil cases, the right of trial by jury shall remain inviolate.'" *Songer v. Civitas Bank*, 771 N.E.2d 61, 63 (Ind. 2002).  "[I]t has long been agreed that Article I, section 20 serves to preserve the right to a jury trial only as it existed at common law." *Id.* (citations omitted).  "[I]t is a well-settled tenet that a party is not entitled to a jury trial on equitable claims." *Id.* (citations omitted).

In addition, under Indiana law, "[a] claim for punitive damages can be sustained only if it is accompanied by a viable claim for compensatory damages." *Cheatham v. Pohle*, 789 N.E.2d 467, 473-74 (Ind. 2003).  *See also Keehr v. Consol. Freightways of Delaware, Inc.*, 825 F.2d 133, 140 (7th Cir. 1987) ("[U]nder Indiana law punitive damages cannot be recovered if compensatory or actual damages have not been awarded."); *Crabtree ex rel. Kemp v. Est. of Crabtree*, 837 N.E.2d

135, 137-38 (Ind. 2005) ("Successful pursuit of a cause of action for compensatory damages is a prerequisite to an award of punitive damages.").

Plaintiffs' contention that they may pursue punitive damages on their common law unfair competition claim is without merit.  Plaintiffs have been prohibited from seeking "actual damages of any kind" in this case, and therefore they are also prohibited from seeking punitive damages.  See *Cheatham*, 789 N.E.2d at 473-74; *Keehr*, 825 F.2d at 140; *Crabtree*, 837 N.E.2d at 137-38.  As a result, Plaintiffs' only remaining viable claims are for equitable relief in the form of disgorgement of profits and an injunction, and neither the Seventh Amendment nor the Indiana Constitution entitle them to a trial by jury.  See *City of Monterey*, 526 U.S. at 719; *Kramer*, 355 F.3d at 966; *Songer*, 771 N.E.2d at 63.

In sum, Amazon's Motion to Strike Jury Demand is **GRANTED**.  This action shall proceed to a bench trial on the remaining issues, to be scheduled by separate order.

## VI.
### CONCLUSION

Based on the foregoing, the Court makes the following rulings:

- Plaintiffs' Motion for Leave to Submit Additional Authority in Support of Motion for Summary Judgment and Permanent Injunction and Response to Cross-Motion for Summary Judgment, [176], is **GRANTED** to the extent that the Court acknowledges the amendment to the Lanham Act made by the Trademark Modernization Act of 2020 and will consider that amendment as appropriate as this litigation moves forward;

- Plaintiffs' Motion for Summary Judgment and Permanent Injunction, [134], is **GRANTED IN PART** and **DENIED IN PART** as follows:

  o The Motion is **GRANTED** to the extent that Plaintiffs seek judgment in their favor on Amazon's affirmative defense of laches;

47

- o The Motion is **GRANTED** to the extent that the Court concludes that the '283 Registration and the '750 Registration are both valid and the RISE N' SHINE mark is protectable as a trademark with respect to the types of goods explicitly covered by those registrations;

- o The Motion is **DENIED** to the extent that it seeks a judgment that the Accused Products infringe Plaintiffs' trademarks;

- o The Motion is **DENIED** to the extent that it seeks a judgment that Amazon directly infringed Plaintiffs' trademarks through warehouse sales;

- o The Motion is **DENIED** to the extent that Plaintiffs intended to pursue a theory of vicarious liability, because that theory has been waived;

- o The Motion is **DENIED** to the extent that it seeks a judgment that Amazon is contributorily liable for trademark infringement;

- o The Motion is **DENIED** to the extent that it seeks a finding of willfulness;

- o The Motion is **DENIED** to the extent that it seeks a permanent injunction;

- o The Motion is **DENIED** to the extent that it seeks disgorgement of Amazon's profits; and

- o The Motion is **DENIED** to the extent that it seeks a finding that Plaintiffs are entitled to recover damages related to corrective advertising.

- • Amazon's Cross-Motion for Summary Judgment, [149], is **GRANTED IN PART** and **DENIED IN PART** as follows:

- o The Motion is **DENIED** as to Amazon's affirmative defense of laches;

- o The Motion is **DENIED** to the extent that Amazon seeks a finding that Plaintiffs' trademark is invalid;

- o   The Motion is **DENIED** to the extent that it seeks a judgment that the Accused Products do not infringe Plaintiffs' trademarks;

- o   The Motion is **DENIED** to the extent that it seeks a judgment that Amazon did not directly infringe Plaintiffs' trademarks, but Amazon's Motion is **GRANTED** to the extent that the Court will limit Amazon's potential liability for direct infringement to the warehouse sales totaling $262.60 in profits;

- o   The Motion is **GRANTED** to the extent that Amazon seeks a determination that Plaintiffs cannot pursue a theory of vicarious liability;

- o   The Motion is **DENIED** to the extent that it seeks a judgment that Amazon is not contributorily liable for trademark infringement, but the Motion is **GRANTED** to the extent that it seeks a judgment that any potential contributory liability shall be limited to sales occurring after November 1, 2019;

- o   The Motion is **DENIED** to the extent that Amazon seeks a finding that any potential infringement was not willful;

- o   The Motion is **DENIED** to the extent that it seeks a judgment that Plaintiffs are not entitled to injunctive relief;

- o   The Motion is **DENIED** to the extent that it seeks a judgment that Plaintiffs are not entitled to disgorgement of Amazon's profits if they prevail on the merits of their claims;

- o   The Motion is **GRANTED** to the extent that it seeks a judgment that Plaintiffs are not entitled to recover damages related to corrective advertising;

- Amazon's Motion to Strike Plaintiffs' Jury Demand, [252], is **GRANTED**.

49

This matter will proceed to a bench trial, to be scheduled by separate order.  The following issues remain for resolution in connection with Plaintiffs' claims for trademark infringement under the Lanham Act and unfair competition under Indiana common law:

- Whether the Accused Products infringe Plaintiffs' trademarks;

- Whether and to what extent Amazon is contributorily liable for trademark infringement in connection with sales that occurred after November 1, 2019;

- If infringement is found, whether such infringement was willful;

- Whether and to what extent Plaintiffs are entitled to disgorgement of Amazon's profits from its direct warehouse sales (up to $262.60) and other sales occurring after November 1, 2019; and

- Whether Plaintiffs are entitled to permanent injunctive relief.

The Court requests that the Magistrate Judge confer with the parties as soon as practicable regarding the possibility of resolving this matter short of trial.

Date: 9/13/2021

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

**Distribution via ECF only to all counsel of record**